UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL GOLDEMBERG on behalf of      :
himself and all others similarly situated,      :
     :
              Plaintiff,      :          13-cv-3073 (NSR)
     -against-      :
     :         MEMORANDUM AND ORDER
JOHNSON & JOHNSON CONSUMER      :
COMPANIES, INC.,      :
     :
              Defendant.      :
-------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

       Plaintiff Michael Goldemberg ("Plaintiff") commenced the instant action against Johnson

& Johnson Consumer Companies, Inc. ("Defendant") seeking monetary damages and injunctive

relief for alleged violations of New York state statutory and common law.  In his complaint,

Plaintiff asserts three causes of action against Defendant: deceptive acts and practices in

violation of General Business Law § 349 ("GBL § 349"), common law breach of express

warranties, and common law unjust enrichment.

       Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), to

dismiss Plaintiff's complaint ("Complaint") for lack of subject matter jurisdiction and for failure

to state a claim upon which relief may be granted.  Defendant asserts that Plaintiff's claims are

preempted by federal law, that the doctrine of primary jurisdiction bars the claims, that its labels

and advertisements are not materially misleading as a matter of law, that Plaintiff failed to

adequately allege causation and injury, that any alleged express warranty was not false or

misleading, that the unjust enrichment claim is duplicative, and that Plaintiff has no standing to

bring claims concerning "other similar varieties" of products not specified in the Complaint and

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2014

which Plaintiff did not purchase.  For the following reasons, Defendant's motion to dismiss the complaint is granted in part and denied in part.

## I. PLAINTIFF'S COMPLAINT

According to the Complaint, Defendant is a New Jersey corporation with its principal executive office in Skillman, New Jersey.  Plaintiff, a resident of White Plains, New York, alleges that Defendant engages in a widespread marketing campaign that misleads consumers into believing that Defendant's Aveeno personal care products are made exclusively from natural ingredients.  Defendant prominently places the phrase "Active Naturals" on the product packaging, the Aveeno website, and advertisements as part of its marketing campaign.  However, Defendant allegedly fails to adequately inform consumers that most of the ingredients are synthetic and unnatural because the ingredients list on the back of the packaging is in small, hard to read print and Defendant does not otherwise inform consumers that most ingredients are synthetic.  Defendant also omits the synthetic ingredients from its website, which touts the benefits of Aveeno's natural ingredients when describing those ingredients and specific products. Defendant's advertising also includes Aveeno's Facebook page, which allegedly states, "[w]e believe nature has the power to make life beautiful—to soothe, heal, and even transform."

Since Defendant portrays Aveeno products as "Active Naturals" and otherwise represents that they are natural, Defendant allegedly prices them higher than equivalent synthetic products, knowing and intending that consumers will pay a premium over the comparable products. According to the Complaint, a reasonable person would be induced to act upon deceptive representations, such as Defendant's advertising, in making purchasing decisions.  Plaintiff allegedly relied on these representations and purchased six Aveeno Active Naturals products— Creamy Moisturizing Oil with Natural Colloidal Oatmeal and Pure Oat Oil, Therapeutic Shave

Gel with Natural Colloidal Oatmeal, Positively Smooth Shave Gel with Natural Soy, Positively Nourishing Comforting Whipped Souffle, Nourish+Moisture Shampoo, and Nourish+Moisture Conditioner—because he wanted natural care products. Plaintiff alleges that he would not have purchased the Aveeno products had they been truthfully advertised and labeled, and that he would not have paid a premium for these unnatural products. Plaintiff allegedly did not obtain the full value of the products due to Defendant's misrepresentations and omissions, thus suffering monetary loss.

Plaintiff claims that Defendant provided him with express warranties, including that the products were "Active Naturals," but that Defendant breached those warranties because the products did not conform to what Defendant promised in its promotion, marketing, advertising, packaging, and labeling, as the products are mostly synthetic. Plaintiff further claims that Defendant's deceptive marketing caused Defendant to be unjustly enriched at Plaintiff's expense when Plaintiff paid the purchase price for the Aveeno products.

Plaintiff also purports to bring the action on behalf of all others similarly situated who purchased in New York any Aveeno Active Naturals products containing synthetic ingredients during the applicable limitations period. Plaintiff alleges that the aggregate claims exceed the sum of $5 million, the number of class members exceeds 100 people, and that the diversity of citizenship requirements of 28 U.S.C. § 1332(d) are satisfied. Plaintiff seeks to enjoin Defendant from advertising the Aveeno products as "Active Naturals" and from using other similar statements, actual and statutory damages under GBL § 349, compensatory and punitive damages, and restitution.

3

## II. MOTION TO DISMISS STANDARDS

### A. Lack of Subject Matter Jurisdiction

On a motion to dismiss for "lack of subject matter jurisdiction," Fed. R. Civ. P. 12(b)(1), dismissal of a case is proper "when the district court lacks the statutory or constitutional power to adjudicate it," *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A plaintiff has the burden of proving subject matter jurisdiction by preponderance of the evidence. *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012); *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). "'[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison*, 547 F.3d at 170 (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

### B. Failure to State a Claim

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

4

A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. PREEMPTION OF STATE LAW CLAIMS

Defendant asserts that the Complaint fails to state a claim because Plaintiff's claims are expressly preempted by the Food, Drug, and Cosmetic Act of 1938 ("FDCA"). When determining whether state law claims are preempted, Courts must "'start with the assumption that the historic police powers of the States [a]re not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)); *accord Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) ("[W]e assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." (internal quotation marks omitted)). Where a statute expressly preempts state law, courts must determine the extent of that preemption based on "a fair understanding of *congressional purpose*." *Medtronic*, 518 U.S. at 486 (internal quotation marks and citation omitted). Courts look primarily to the text of the statute and the surrounding statutory framework, and also at the "structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic*, 518 U.S. at 485–86 (internal quotation marks and citation omitted); *accord U.S. Smokeless Tobacco Mfg. Co. v. City of New*

5

*York*, 703 F. Supp. 2d 329, 336 (S.D.N.Y. 2010).

> The FDCA states in pertinent part:
>
> [N]o State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter.

21 U.S.C. § 379s(a).  In other words, for a state law to be preempted it must be (1) a requirement for labeling or packaging, and (2) not identical with a specific FDCA requirement.  *See Bates*, 544 U.S. at 444.  "A requirement is a rule of law that must be obeyed," *id.* at 445, whether created by statute, regulation, or a duty imposed by common law, *id.* at 443.  Here, state law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce," GBL § 349, prohibits usage of false or misleading express warranties that cause loss, *see generally CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496 (1990), and proscribes inequitable benefit at another's expense, *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

In its preemption argument, Defendant asserts that Plaintiff seeks a court order to cease using its brand name "Active Naturals" on the packaging because the label does not disclose which ingredients are synthetic in a manner *different from* what FDA regulations require: namely, that all ingredients be listed on the package in descending order of predominance, 21 C.F.R. § 701.3(a), that the list use ingredient names specified by regulation or by reference, *id.* § 701.3(c), and that the list be "likely to be read and understood by ordinary individuals under normal conditions of purchase," *id.* § 701.3(b).  The list may appear "on any appropriate information panel in letters not less than 1/16 of an inch in height." *Id.*  When adopting § 701.3, the FDA concluded

> that cosmetic ingredient labeling [was] necessary to prevent the deception of consumers and to facilitate value comparisons . . . by precluding product claims that are unreasonable in relation to the ingredients present and by providing consumers with additional information that can contribute to a knowledgeable judgment regarding the reasonableness of the price of the product.

Cosmetic Ingredient Labeling, 38 Fed. Reg. 28,912 (Oct. 17, 1973).  As Defendant complies with the ingredient labeling regulations, Defendant argues that Plaintiff attempts to establish a different judge-made labeling requirement that is preempted.

Defendant relies upon *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 503–04 (D.N.J. 2012), for the proposition that claims regarding the misleading use of a brand name on products are preempted when a defendant manufacturer complies with the FDA's ingredient listing requirements.  *Crozier* dealt with over-the-counter medications, for which the FDA requires that manufacturers identify the active ingredients prominently to avoid potential confusion when a manufacturer produces multiple products with the same brand name.  *Id.* at 504; *see* 21 C.F.R. § 201.66(c)(2)–(3), (8) (active ingredient must be listed separately from inactive ingredients, using its established name, its quantity per dose, and its principal intended action).  The plaintiff in *Crozier* alleged that Defendant's use of its Neosporin yellow and green color scheme, Signature Gold Mark, trade dress, and goodwill and reputation in a portable spray misled consumers to believe that the spray contained the same antibiotics as in regular Neosporin products even though Defendant listed its ingredients as required by FDA regulations.  901 F. Supp. 2d at 497.  According to the *Crozier* court, the regulations for active ingredients were meant to "help to ensure proper product selection [by consumers], especially for product line extensions [of well-known brands]."  *Id.* at 504 (quoting Over-The-Counter Human Drugs; Labeling Requirements, 64 Fed. Reg. 13,254-01, at 13,260 (Mar. 17, 1999)).  The district court held that the portion of the plaintiff's complaint alleging that the package labeling was

7

misleading under New Jersey law was preempted by the FDCA, *id.* at 503–04, under which states cannot establish a requirement relating to nonprescription drugs that is "different from or in addition to, or is otherwise not identical with, a requirement under [the FDCA]," 21 U.S.C. § 379r(a). However, the allegations concerning advertising and marketing were not preempted. *Crozier*, 901 F. Supp. 2d at 503.

Here, Defendant asserts that just like the Neosporin Signature Gold Mark and trade dress in *Crozier* are part of Neosporin's brand, the term "Active Naturals" is part of the Aveeno brand name, as evinced by the exhibits submitted. Yet in *Crozier*, the brand name and trade dress were relevant only because a new product with different ingredients carried the same brand name, whereas the validity of the brand name itself was not questioned for all Neosporin products. By contrast, Plaintiff alleges that "Active Naturals" is misleading in and of itself, and there is nothing to suggest that the FDA affirmatively requires Defendant to name its brand in a particular way. Plaintiff argues that GBL § 349 does not add any new requirements because the FDCA seeks to prohibit misbranding, 21 U.S.C. § 362(a) (cosmetic deemed misbranded if "labeling is false or misleading in any particular"); *cf.* 21 C.F.R. § 701.1(b) (labeling "may be misleading" where it designates the cosmetic "by a name which includes or suggests the name of one or more but not all . . . ingredients"), which would amount to a deceptive act or practice under the GBL. The Court notes that the "designation" (i.e., name) of the products in question, "Aveeno® Active Naturals®," arguably suggests one or two natural ingredients instead of all, if not by name then by description, 21 C.F.R. § 701.1(b); that the parties agree there is no FDA regulation or guidance governing the usage of the word "natural" on cosmetics labels, (Def.'s Decl. Ex. G (HHS letter of Mar. 7, 2013, declining to make administrative determination of the meaning of "natural" when used in cosmetic labeling)); and that the preemption clause is limited

to state requirements "relating to the same aspect of such cosmetic as a requirement specifically applicable to that particular cosmetic or class of cosmetics . . . for packaging or labeling," 21 U.S.C. § 379s(c).  Plaintiff asserts that an injunction requiring the removal of "Active Naturals" from the Aveeno labels (and from other advertising) would not relate to the same aspect of the labeling as the ingredient list and would therefore not constitute a "requirement" under the preemption clause.

The Court finds Plaintiff's reasoning persuasive, considering there is no federal requirement limiting brand name usage for cosmetics beyond the general prohibition of misbranding, *contra Crozier*, 901 F. Supp. 2d at 503–04, that GBL § 349 is a statute of general applicability prohibiting deceptive business practices, and that Plaintiff does not seek an injunction to change the ingredients list.  The same reasoning applies to the unjust enrichment and breach of express warranty claims.  Moreover, the Court notes that, according to the congressional record explaining the text of 21 U.S.C. § 379s, "advertising issues relating to . . . misleading or deceptive claims are outside the scope of preemption."  H.R. Rep. No. 105-399, at 103 (1997) (Conf. Rep.).  Accordingly, Plaintiff's claims are not preempted by 21 U.S.C. § 379s(a), and the Court declines to dismiss the instant action on this basis.

## IV. DOCTRINE OF PRIMARY JURISDICTION

Defendant asserts that the case should be dismissed based on the doctrine of primary jurisdiction.  This doctrine "is concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'"  *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)).  Primary jurisdiction is properly applied "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed

within the special competence of an administrative body." *Id.* (quoting *W. Pac. R.R. Co.*, 352 U.S. at 64). When applicable, "a court defers to the agency for advisory findings and either stays the pending action or dismisses it without prejudice," being careful not to disadvantage either party. *Johnson v. Nayack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996). However, the doctrine's application does not mean a court lacks subject matter jurisdiction, as would be the case where a plaintiff failed to exhaust administrative remedies, since the claim must be "originally cognizable in the courts." *W. Pac. R.R. Co.*, 352 U.S. at 64; *see also Reiter v. Cooper*, 507 U.S. 258, 268– 69 (1993); *Johnson*, 86 F.3d at 11. Thus, Rule 12(b)(1) concerning lack of subject matter jurisdiction is inapplicable.

Though courts must make a case-by-case determination, they generally focus on the following factors:

(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

(2) whether the question at issue is particularly within the agency's discretion;

(3) whether there exists a substantial danger of inconsistent rulings; and

(4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82–83 (citing *Nat'l Commc'ns Ass'n v. AT&T*, 46 F.3d 220, 222 (2d Cir. 1995)).

Regarding the first factor, the main issue Plaintiff raises in the instant case is whether the use of the term "Active Naturals" is deceptive or misleading, a question which courts are "eminently well suited" to entertain. *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013) (citing *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012) ("This case is far less about

science than it is about whether a label is misleading.")).  This weighs against applying the

primary jurisdiction doctrine, as it is usually not applied "when the issue at stake is legal in

nature and lies within the traditional realm of judicial competence."  *Goya Foods, Inc. v.*

*Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988), *quoted in In re Frito-Lay*, 2013 WL

4647512, at *8.  Determining whether "Active Naturals" misleads consumers into believing that

all ingredients in a product are "natural" may involve the Court in a technical consideration of

the meaning of "natural" in the context of cosmetics, which is within the FDA's expertise.

However, as Plaintiff does not dispute that at least one ingredient in each Aveeno product is

arguably natural, the case turns on whether the fact that most of the ingredients are synthetic

means using the term "natural" is deceptive.

Regarding the second factor, the decision whether to define "natural" as used in

cosmetics labeling is undeniably within the FDA's discretion, as the agency is charged with

ensuring product safety, 21 U.S.C. § 393(b)(1)–(2), and may promulgate regulations accordingly,

*id.* § 371(a).  It is also within the FDA's discretion to determine whether a label is "misleading in

any particular."  *Id.* § 632(a).  Thus, the factor weighs in favor of applying the primary

jurisdiction doctrine.

Regarding the third factor, the danger of inconsistent rulings, Defendant identifies three

similar cases filed in other federal district courts concerning purported violations of state

consumer fraud statutes by the use of the word "natural" in connection with a cosmetic—*Fagan*

*v. Neutrogena Corp.*, No. CV 13-01316 (SVW), 2014 WL 92255 (C.D. Cal. Jan. 8, 2014)

(declining to dismiss based on primary jurisdiction doctrine) (filed July 29, 2013), *Virgil v.*

*Johnson & Johnson Consumer Cos.*, No. 3:13-CV-00524 (AET) (D.N.J.) (filed Jan. 25, 2013),

and *Langan v. Johnson & Johnson Consumer Cos.*, No. 3:13-CV-00570 (D.N.J.) (filed Jan. 29,

2013)—and argues that "[t]he increasing volume of . . . litigation [implicating the same or similar issues] creates the potential for inconsistent judicial rulings," *Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1135 (D. Minn. 2012) (dismissing case without prejudice and directing parties to initiate proceedings with FDA to determine the permitted ingredients in Greek yogurt); *see also Coyle v. Hornell Brewing Co.*, No. 08-02797 (JBS), 2010 WL 2539386, at *4, *7 (D.N.J. June 15, 2010) (staying case and referring to FDA for determination of whether particular ingredient in food was "natural" because danger of inconsistent rulings present where same defendant being sued in separate putative class action on same claim).  In *Taradejna*, the FDA had begun revising its rules for yogurt ingredients but had not yet held a public hearing, whereas multiple similar lawsuits concerning the proper ingredients under FDA regulations were then pending, including two others against the same defendant.  909 F. Supp. 2d at 1131, 1135 & n.5.  Thus, it was appropriate to defer to the FDA due to the potential for inconsistent rulings.  Here, however, the FDA has not begun to promulgate a rule concerning the term "natural" in cosmetics.  Instead, it recently declined to make such a determination.  (Def.'s Ex. G (letter from FDA stating that definition of "natural" not a priority).)  Thus, as the agency is *not* simultaneously contemplating the same issue, *contra Ellis*, 443 F.3d at 88, this factor weighs against applying the primary jurisdiction doctrine, especially considering that decisions from various district and appellate courts regularly conflict.

Regarding the fourth factor, generally where a prior application to the agency has been made, deferral to the agency is appropriate, but where no prior application has been made the factor may weigh against deferral.  *Id.* at 89.  However, a court need not apply the doctrine where "'resort to the agency would plainly be unavailing in light of its manifest opposition or because it has already evinced its "special competence" in a manner hostile to petitioner.'"  *Id.* at 90

(quoting *Bd. of Educ. v. Harris*, 622 F.2d 599, 607 (2d Cir. 1979)).  Defendant here argues that

although no prior application has been made, this fact "is not dispositive" because courts have

sometimes applied the doctrine even without such application.  *E.g.*, *Bernhardt v. Pfizer, Inc.*,

Nos. 00 Civ. 4042 (LMM), 00 Civ. 4379 (LMM), 2000 WL 1738645, at *3 (S.D.N.Y. Nov. 22,

2000).  Plaintiff, on the other hand, argues that because the FDA was requested to determine the

meaning of "natural" after the dismissal of *Astania v. Hain Celestial Group, Inc.*, 905 F. Supp.

2d 1013, yet declined to do so, (Def.'s Ex. G), resort to the agency at this time would be

unavailing.  Upon reviewing the FDA's reasons for choosing not to define the term, the Court

determines that it would in fact be unavailing to defer to the agency, *see Ellis*, 443 F.3d at 90, as

"proceedings to define 'natural' do not fit within [its] current health and safety priorities" in light

of the FDA's limited resources and its duty to ensure the safety of cosmetics, (Def.'s Ex. G).

Thus, this factor weighs against application of the primary jurisdiction doctrine.

Accordingly, as most factors weigh against applying the doctrine of primary jurisdiction,

the Court declines to dismiss the instant case on that basis.

## V. GENERAL BUSINESS LAW § 349

New York law proscribes "[d]eceptive acts or practices in the conduct of any business,

trade or commerce or in the furnishing of any service in th[e] state."  GBL § 349(a).  To state a

claim, a plaintiff must allege (1) that the defendant's acts were consumer oriented, (2) that the

acts or practices are "deceptive or misleading in a material way," and (3) that the plaintiff has

been injured as a result.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,

N.A.*, 85 N.Y.2d 20, 25 (1995); *accord Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009);

*City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 621 (2009); *Goshen v. Mut. Life

Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002).  Defendant argues that the Complaint fails to satisfy

the second and third elements of this claim because the labels and advertisements are not misleading as a matter of law and because Plaintiff failed to properly allege causation and injury.

### A. Materially Deceptive or Misleading Practices

The New York Court of Appeals has established an objective standard for determining whether acts or practices are materially deceptive or misleading "to a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26. A court may make this determination as a matter of law, *id.*; *accord Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2012), *aff'g* 837 F. Supp. 2d 279 (S.D.N.Y. 2011), although usually such a determination is a question of fact, *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) (citing *Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288, 289 (1st Dep't 2003)); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010).

The Complaint alleges that the term "Active Naturals" is deceptive because it conveys to consumers that the Aveeno products are completely natural, yet the products contain synthetic ingredients. Plaintiff also alleges that Defendant knows a claim of "natural" on a product is a purchase motivator for consumers, and that Defendant uses "Active Naturals" on the labels and in advertising to entice consumers to purchase Defendant's mostly unnatural products. Conversely, Defendant argues that the plain language of the phrase "Active Naturals" conveys to consumers that the products contain active, natural ingredients—not that they are "100% Natural" and contain no synthetic ingredients. Defendant further asserts that the front label of each product and the Aveeno website identify the particular "Active Natural" ingredients contained therein, whereas all synthetic ingredients are disclosed on the back label as required by the FDA.

14

### 1. The Product Labels

In asserting the product labels are misleading, Plaintiff relies on a recent case in the Eastern District of New York holding that plaintiffs stated a claim under GBL § 349 by alleging product labels for the drink "vitaminwater" could mislead consumers into thinking it contained only vitamins and water, despite the fact that an FDA-mandated ingredients list accurately stated the sugar content of the product. *Ackerman*, 2010 WL 2925955, at *16.  In so holding, the *Ackerman* court found that the sugar content being accurately stated did not eliminate the possibility that reasonable consumers might be misled by, *inter alia*, the name of the product and the in-store representation that "vitamins + water = what's in your hand." *Id.* at *15–16 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008) (holding ingredient identification on FDA-mandated panel did not bar claim that reasonable consumers could be misled by label to believe "Fruit Juice Snacks" actually contained juice from fruits pictured)). The court stated that "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* at *16 (quoting *Williams*, 552 F.3d at 939).

Defendant avers that Plaintiff's reliance on the language in *Williams* is misplaced.  It argues that *Williams* actually stands for the proposition that product manufacturers cannot rely on ingredient lists to correct potential misrepresentations of *contrary* information on the front label.  By contrast, Defendant asserts that here the back label is *consistent* with the front label, which states "Active Naturals" and specifically identifies which ingredient is natural.  Relying on *Red v. Kraft Foods, Inc.*, No. CV-10-1028-GW (AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25,

2012),[1] Defendant asserts that a reasonable consumer cannot (1) "read a true statement on a package," *id.* at *3, i.e., the "Active Naturals" trademark, (2) yet "disregard 'well-known facts of life,'" *id.*, i.e., that cosmetics are "by their nature artificial and/or synthetic," *Astania v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1016 (N.D. Cal. 2012), (3) "and assume things about the products *other than* what the statement actually says," *Red*, 2012 WL 5504011, at *3.  In other words, Defendant argues it is unreasonable to assume each Aveeno product contains exclusively natural ingredients when its labeling affirmatively identifies its one or two natural ingredients as well as the synthetic ingredients.

The instant case is similar to *Ackerman*.  Both involve potentially misleading product trademarks, not merely claims about the products placed on the labels.  Both also involve advertising that exclusively touts one particular aspect of the particular products.  Although "the presence of a disclaimer or other clarifying language *may* defeat a claim of deception," *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (emphasis added) (affirming dismissal of GBL § 349 claim where defendant's advertisements touted, *inter alia*, internet connections at "blazing speed" up to 3 times faster than standard DSL and up to 100 times faster than dial-up), the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer.

---

[1] *Red v. Kraft Foods, Inc.* held that a complaint did not state a claim because no reasonable consumer would believe crackers in a package with the statement "made with real vegetables" and a picture of vegetables on the label were healthy or contained a significant amount of vegetables, as a reasonable consumer would be familiar with the fact that a cracker is not composed primarily of fresh vegetables.  2012 WL 5504011, at *3.

### 2. Quotations from the Aveeno Website and Facebook Page

Seen in tandem with the product labels, the website and Facebook page plausibly support Plaintiff's contention that a reasonable consumer could be misled.  The website focuses exclusively on the natural ingredients found in Aveeno products and the Facebook page touts the "power" of nature.  Although "a party does not violate General Business Law § 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information," *Gomez-Jimenez v. New York Law School*, 103 A.D.3d 13, 17 (1st Dep't 2012), *aff'g* 36 Misc. 3d 230 (Sup. Ct. N.Y. Cnty. 2010), here the published information emphasizes the plausibly misleading trademark.  Thus, the Court cannot find as a matter of law that no reasonable consumer could be misled by these advertisements into believing the products contain exclusively natural ingredients.

### B. Causation and Injury

In addition to alleging the labels or advertising are materially misleading, Plaintiff also must properly allege actual injury caused by Defendant's statements.  Defendant challenges the allegations of causation only as to the alleged statements on Defendant's website and Facebook page, but does not dispute that Plaintiff saw the Aveeno labels prior to purchasing the products.  Accordingly, the motion to dismiss the GBL § 349 claim as to the product labels must be denied.  The Court considers causation and injury only for the website and Facebook page.

To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased.  *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004), *cited in Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11 Civ. 6546 (JPO), 2013 WL 93636, at *6 n.3 (S.D.N.Y. Jan. 9, 2013).  Of course, if Plaintiff did not see the website and Facebook page

17

beforehand, he could not have been injured by them.  *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 263 (E.D.N.Y. 2012) (citing *Gale*, 9 A.D.3d at 447).  Here, Plaintiff describes in particular the allegedly misleading advertising and other statements, then alleges that "Defendant's false, misleading, and deceptive misrepresentations and omissions, as described herein . . . have already deceived and misled Plaintiff . . . ."  (Compl. ¶ 32.)  The reasonable inference to be drawn from these allegations, *see Iqbal*, 556 U.S. at 678, is that Plaintiff saw the Aveeno website and Facebook page described previously in the Complaint, and was thus deceived into purchasing the products in question.  Accordingly, causation is sufficiently pled.

With respect to allegations of actual injury suffered, Plaintiff articulates two theories: first, that Plaintiff would not have purchased the Aveeno products had they been truthfully advertised and labeled, and second, that Plaintiff paid a premium price for the products.  As to the first theory, the New York Court of Appeals has rejected the idea that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349."  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999); *see also Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676 (S.D.N.Y. 2012); *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007).  Yet a plaintiff may properly allege the second theory in conjunction with the first, claiming that "the price of the product was inflated as a result of [the] defendant's deception."  *Baron*, 42 A.D.2d at 629; *accord Small*, 94 N.Y.2d at 56; *see also Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) ("Injury is adequately alleged under GBL [§] 349 . . . by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.") (citations omitted).

18

Defendant asserts that Plaintiff merely alleging he paid a premium price, without making any other factual allegations, is insufficient to properly allege the injury element.  For support, Defendant cites only one case dealing with New York law, wherein former law school students alleged that their law degrees were worth less than the amount they paid and purported to suffer as damages "the difference in value between a degree where a high paying, full-time, permanent job was highly likely and . . . [a] degree where full-time, permanent legal employment at any salary, let alone a high salary, is scarce, as is the case in the legal market."  *Gomez-Jimenez v. N.Y. Law Sch.*, 36 Misc. 3d 230, 246 (Sup. Ct. N.Y. Cnty. 2010), *aff'd* 103 A.D.3d 13 (2012).  The *Gomez-Jimenez* motion court held this measure of damages to be speculative, as it would have been difficult to place a value on the "intrinsic[] worth" of the law degrees.  *Id.* at 247 n.9, 248–50 (rejecting plaintiffs' argument that expert testimony could establish the value of a degree with 30-to-40 percent chance of landing a job versus 90 percent chance).  By contrast, here it would not be particularly difficult to identify similar products on the market and determine their retail prices, with or without expert testimony.

Defendant also relies on *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 541–42 (D.N.J. 2011), wherein allegations that the defendant charged a premium of at least $1.00 while comparable products cost at least 25% less were found to be insufficient without identifying the comparators or the actual prices of the defendants' and competitors' products.  However, *Lieberson* dealt with the New Jersey Consumer Fraud Act, under which plaintiffs must satisfy the heightened pleading standard of Rule 9(b), *id.* at 538–42, whereas no such heightened standard applies to GBL § 349 claims, *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).  Thus, *Lieberson* is inapplicable.  Moreover, other post-*Iqbal* cases have found valid § 349 claims despite plaintiffs not identifying competitors or prices.

19

*See, e.g.*, *Lynch v. Tropicana Prods., Inc.*, No. 2:11-cv-07382, 2013 WL 2645050, at *8 (D.N.J. June 12, 2013) ("Plaintiffs contend that Tropicana extracts a premium price for the product in question, based on the fact that the product is represented as fresh-squeezed."); *Guido v. L'Oreal USA, Inc.*, 284 F.R.D. 468, 483 (C.D. Cal. 2012) (plaintiffs alleged "that they paid a premium for the product based on marketing representations"); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) (plaintiffs alleged that "[d]efendants command a premium price for vitaminwater by distinguishing it from soft drinks (including their own), and by marketing and advertising it as a fortified beverage, a dietary supplement in liquid form").  Therefore, while identifying the prices of competing products in the Complaint would strengthen Plaintiff's allegation of injury, *see, e.g.*, *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *1 (S.D.N.Y. Dec. 11, 2013) (defendant's product allegedly selling for 16.3 cents per fluid ounce while identified competitor's product selling for only 9.8 cents per fluid ounce), the failure to do so is not fatal to Plaintiff's claim. Accordingly, dismissal of the GBL § 349 claim as to representations on Defendant's website and Facebook page must also be denied.

## VI. BREACH OF EXPRESS WARRANTY

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  *Avola v. La.-Pac. Corp.*, No. 11-CV-4053 (PKC), 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013) (quoting N.Y. U.C.C. § 2-313(1)(a)); *accord Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010) (describing express warranty as affirmation of fact or promise naturally tending to induce buyer to purchase and upon which buyer relies to his detriment).  To state a claim for

20

breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Avola*, 2013 WL 4647535, at *6 (citing *CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 502–04 (1990); *accord Liberty Media Corp. v. Vivendi Universal, S.A.* (*In re Vivendi Universal, S.A. Sec. Litig.*), Nos. 02 Civ. 5571 (RJH), 03 Civ. 2175 (RJH), 2004 WL 876050, at *10 (S.D.N.Y. Apr. 21, 2004) (citing *Rogath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997); *CBS Inc.*, 75 N.Y.2d 496) (plaintiffs must allege "the existence of an express warranty, reliance on that warranty as part of the agreement between the parties, and that the warranties were false or misleading when made, proximately causing plaintiff's loss"). A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty "may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies." *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 51 A.D.3d 1114, 1116 (3d Dep't 2008) (citing *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y. 5, 14 (1962) (no privity requirement where manufacturer made express representations to induce reliance by remote purchasers)); *accord Daniels v. Forest River, Inc.*, No. 07-4227, 2013 N.Y. Misc. LEXIS 2915, at *10 (Sup. Ct. Suffolk Cnty. June 28, 2013). However, a plaintiff complaining of breach of express warranty must "set forth the terms of the warranty upon which he relied." *Parker v. Raymond Corp.*, 87 A.D.3d 1115, 1117 (2d Dep't 2011).

Plaintiff alleges that Defendant promised on the labels and in advertising that the products were "Active Naturals," yet the products contained mostly synthetic ingredients. Defendant contends that the website-based allegations do not identify particular misleading

statements, and that instead Plaintiff improperly rests this claim on "entire advertisements or other collections of information that are allegedly misleading when viewed in the aggregate." *DiBartolo v. Abbot Labs.*, 914 F. Supp. 2d 601, 626 (S.D.N.Y. 2012). However, Plaintiff alleges that the website itself promises the products are "Active Naturals" which are "trusted . . . by dermatologists for the efficacy and safety of [their] natural ingredients." (Compl. ¶ 24.) Plaintiff also quotes various passages from Defendant's website which specify, *inter alia*, that "AVEENO®, the leader in ACTIVE NATURALS®, continues to develop breakthrough product formulations with new and existing natural ingredients, many that are clinically proven to deliver real skin care benefits leaving you with healthier-looking, beautiful skin." (*Id.*) Thus, Plaintiff affirmatively alleges specific misleading statements. Although the Facebook page quotation may not constitute an express warranty, this failure is insufficient to show Plaintiff fails to state a claim. In any event, Defendant makes no argument that Plaintiff does not point to a specific statement on the label that would constitute a warranty.

Defendant reiterates its GBL § 349 argument that none of the above statements are false and misleading as a matter of law. However, as the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the warranty claim. Finally, just like for the GBL § 349 claim, Plaintiff sufficiently alleged reliance on Defendant's statements and causation of injury. Thus, Defendant's motion to dismiss the breach of express warranty claim must be denied.

## VII. UNJUST ENRICHMENT

To state a claim for unjust enrichment, a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) under the circumstances of such enrichment equity and good conscience require the defendant to make restitution. *Hughes v. Ester C Corp.*, 930 F.

Supp. 2d 439, 471 (E.D.N.Y. 2013); *accord Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which 'in equity and good conscience' should be paid to the plaintiff.").  Unjust enrichment is available as a cause of action "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*, 18 N.Y.3d at 790.  This claim is "not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.*  A complaint must satisfy the particularity requirement of Rule 9(b) only where the alleged unjust enrichment is premised on fraudulent acts.  *Hughes*, 930 F. Supp. 2d at 471 (citing *Welch v. TD Ameritrade Holding Corp.*, No. 07-CV-6904 (RJS), 2009 WL 2356131, at *21 (S.D.N.Y. July 27, 2009)).

Here, Plaintiff alleges that Defendant committed actionable wrongs, namely, the use of deceptive, fraudulent and misleading labeling, advertising, marketing, and sales.  (Compl. ¶ 59); *cf. Corsello*, 18 N.Y.3d at 791.  Plaintiff uses express warranty language in arguing that he states a claim for unjust enrichment, averring that Defendant profited "by falsely promising the Products were 'Active Naturals'" and that Plaintiff and others were induced into buying Aveeno products at a premium.  (Pl.'s Br. 21.)  Plaintiff then asserts that Rule 8(d) allows him to plead unjust enrichment in the alternative, (*id.* (citing *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 183–84 (E.D.N.Y. 2010)), disregarding the fact that federal courts must defer to state courts as to substantive state common law, *see generally Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).  Certainly, if in New York courts the instant claim for unjust enrichment would be unavailable— as here, where Plaintiff simply restates elements of other claims—it must equally be unavailable in the Federal courts.  Accordingly, the motion to dismiss this claim must be granted.

## VIII. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the Complaint is GRANTED in part, only to the extent of dismissing Plaintiff's unjust enrichment claim, and otherwise DENIED. Defendant's argument that Plaintiff lacks standing to represent a class including persons who purchased Aveeno Active Naturals products which he did not purchase is properly considered at the class certification stage. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541–42 (S.D.N.Y. 2013) (citing *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 889–92 (N.D. Cal. 2012)); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012); *Astania v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910 EMC, C-11-3161 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012); *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 243 (D.N.J. 2008)). The Clerk of Court is respectfully directed to terminate the motion (Doc. 9). Defendant is directed to file an answer to the Complaint within 30 days of the date of this order.

Dated: March   27ᵗʰ, 2014
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge