# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL GOLDEMBERG, ANNIE LE, and HOWARD PETLACK, on behalf of themselves and all others similarly situated,<br><br><br>                              Plaintiffs,<br><br>                  v.<br><br>JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>                            Defendant. | Case No. 7:13-cv-03073-NSR-LMS<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

# Table of Contents

Table of Authorities ........................................................................................................ iii

INTRODUCTION ............................................................................................................1

FACTS COMMON TO THE PROPOSED CLASS.........................................................4

ARGUMENT .....................................................................................................................7

I.    Standards For Determining Whether To Certify A Class Pursuant To Rule 23.................7

II.    The Proposed Class Satisfy The Rule 23(a) Factors.........................................................8

    A.  The Proposed Classes Are Sufficiently Numerous..................................................8

    B.  The Claims Meet The Commonality Requirement ..................................................9

    C.  Plaintiffs' Claims Are Typical Of Those Of The Classes.....................................11

    D.  Plaintiffs Will Adequately Represent The Classes ...............................................12

III.    The Proposed Classes Satisfy The Rule 23(b)(2) Requirements .......................................13

IV.    The Proposed Classes Meet The Rule 23(b)(3) Factors ...................................................15

    A.  Common Questions Of Law Or Fact Predominate Over Any Individual Issues...15

        1.  Common Issues Predominate
The Determination Of Liability For Plaintiff's GBL § 349 Claim............17

        2.  Common Issues Predominate
The Determination Of Liability For Plaintiffs' California Claims ............18

        3.  Common Issues Predominate
The Determination Of Liability For Plaintiff's FDUTPA Claim ..............19

        4.  Damages For All Claims Can Be Determined On A Classwide Basis ......20

    B.  A Class Action Is The Superior Method Of Adjudicating The Controversy.........23

V.    The Proposed Classes Are Easily Ascertainable .............................................................24

CONCLUSION..................................................................................................................25

## Cases

*All Star Carts & Vehicles, Inc. v. BFI Income Fund*,
 280 F.R.D. 78 (E.D.N.Y. 2012) ............................................................................................. 14

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ............................................................................................... 7, 12, 16

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
 133 S. Ct. 1184 (2013) ..................................................................................... 8, 11, 15, 17

*Beck-Ellman v. Kaz USA, Inc.*,
 283 F.R.D. 558 (S.D. Cal. 2012) ............................................................................................ 3

*Broder v. MBNA Corp.*,
 281 A.D.2d 369 (N.Y. App. Div. 2001) .............................................................................. 18

*Brown v. Hain Celestial Grp., Inc.*,
 No. 11-03082, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ............................................. 2

*Butler v. Sears, Roebuck & Co.*,
 727 F.3d 796 (7th Cir. 2013) ............................................................................................... 17

*Carpenters Pension Trust Fund v. Barclays PLC*,
 No. 12-5329, 2015 WL 5000849 (S.D.N.Y. Aug. 20, 2015) .............................................. 22

*Chavez v. Blue Sky Natural Beverage Co.*,
 268 F.R.D. 365 (N.D. Cal. 2010) ........................................................................................... 3

*Civic Ass'n of the Deaf v. Giuliani*,
 915 F. Supp. 622 (S.D.N.Y. 1996) ......................................................................................... 9

*Comcast Corp. v. Behrend*,
 133 S. Ct. 1426 (2013) ......................................................................................................... 20

*Consolidated Rail Corp. v. Hyde Park*,
 47 F.3d 473 (2d Cir. 1995) ..................................................................................................... 8

*Cortigiano v. Oceanview Manor Home for Adults*,
 227 F.R.D. 194 (E.D.N.Y. 2005) ........................................................................................... 7

*Davis v. Powertel, Inc.*,
 776 So. 2d 971 (Fla. Dist. Ct. App. 2000) .................................................................... 16, 20

*Dei Rossi v. Whirlpool Corp.*,
No. 12-00125, 2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) .................................................. 3

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
693 So. 2d 602 (Fla. Dist. Ct. App. 1997) ........................................................................... 19

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980) ................................................................................................................ 7

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................... passim

*Erica P. John Fund, Inc. v. Halliburton Co.*,
131 S. Ct. 2179 (2011) ........................................................................................................... 8

*Fitzpatrick v. General Mills, Inc.*,
635 F.3d 1279 (11th Cir. 2011) ........................................................................................... 20

*Fogarazzao v. Lehman Bros., Inc.*,
232 F.R.D. 176 (S.D.N.Y. 2005) ......................................................................................... 11

*Gorat v. Capala Bros., Inc.*,
2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ....................................................................... 24

*Gorat v. Capala Bros., Inc.*,
257 F.R.D. 353 (E.D.N.Y. 2009) ........................................................................................... 7

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968) ................................................................................................. 11

*Guido v. L'Oreal, USA, Inc.*,
No. 11-01067, 2014 WL 6603730 (C.D. Cal. July 24, 2014) ......................................... 2, 22

*Guido v. L'Oreal, USA, Inc.*,
No. 11-1067, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ............................... 2, 3, 10, 17, 21

*Gulf Oil Co. v. Barnard*,
452 U.S. 89 (1981) ................................................................................................................. 7

*Hughes v. Ester C Co.*,
930 F. Supp. 2d 439 (E.D.N.Y. 2013) ................................................................................... 1

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ............................................................................................. 7

*In re ConAgra Foods, Inc.*,
  No. 11-05379, 2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) ........................................... 2, 22

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) ........................................................................................ 13

*In re Ferrero*,
  278 F.R.D. 552 (S.D. Cal. 2011) .................................................................................. 3, 5

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  209 F.R.D. 323 (S.D.N.Y. 2002) ................................................................................... 24

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................................. passim

*In re Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) ....................................................................................... 19

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) ...................................................................................... 9, 23

*In re Whirlpool Corp. Front–Loading Washer Prods. Liability Litig.*,
  45 F. Supp. 3d 724 (N.D. Ohio 2014) ........................................................................... 22

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) .................................................................................... 9, 17

*Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006) .......................................................................................... 24

*Jermyn v. Best Buy Stores, L.P.*,
  256 F.R.D. 418 (S.D.N.Y. 2009) .................................................................. 14, 15, 17, 18

*Johns v. Bayer Corp.*,
  280 F.R.D. 551 (S.D. Cal. 2012) ................................................................ 3, 12, 14, 19

*Johnson v. General Mills, Inc.*,
  276 F.R.D. 519 (C.D. Cal. 2011) ................................................................................... 3

*Keegan v. American Honda Motor Corp*,
  284 F.R.D. 504, 522 (C.D. Cal. 2012) ..................................................................... 10, 18

*Keilholtz v. Lennox Hearth Prods. Inc.*,
    268 F.R.D. 330 (N.D. Cal. Feb. 16, 2010) ......................................................................... 19

*Khoday v. Symantec Corp.*,
    No. 11-180, 2014 WL 1281600 (D. Minn. Mar. 13, 2014) ................................................ 22

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ................................................................................................... 1, 17

*Latman v. Costa Cruise Lines, N.V.*,
    758 So. 2d 699 (Fla. Dist. Ct. App. 2000) ...................................................................... 20

*Makaeff v. Trump Univ., LLC*,
    No. 10-09402014, WL 688164 (S.D. Cal. Feb. 21, 2014).............................. 16, 18, 19

*Marcus v. AT&T*,
    138 F.3d 46 (2d Cir. 1998)............................................................................................... 16

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)............................................................................................... 7

*Mass. Mut. Life Ins. Co. v. Superior Ct.*,
    97 Cal. App. 4th 1282 (2002) ........................................................................................ 19

*Microsoft Corp. v. Motorola, Inc.*,
    904 F. Supp. 2d 1109 (W.D. Wash. 2012) ..................................................................... 22

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)........................................................................................... 15

*Moreira v. Sherwood Landscaping Inc.*,
    No. 13-2640, 2015 WL 1527731 (E.D.N.Y. Mar. 31, 2015) .................................... 8

*Morrissey v. Nextel Partners, Inc.*,
    72 A.D.3d 209 (N.Y. App. Div. 2010)............................................................................ 18

*Mullins v. Direct Digital, LLC*,
    No. 15–1776, 2015 WL 4546159 (7th Cir. July 28, 2015) ..................................... 25

*Nelson v. Mead Johnson Nutrition Co.*,
    270 F.R.D. 689 (S.D. Fla. 2010) ...................................................................................... 20

*Ortega v. Natural Balance, Inc.*,
    300 F.R.D. 422 (C.D. Cal. 2014) ....................................................................................... 3

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
   85 N.Y.2d 20 (N.Y. 1995) ........................................................................... 16, 17

*Rikos v. Procter & Gamble Co.,*
   No. 14-4088, 2015 WL 4978712 (6th Cir. Aug. 20, 2015)...................................... 2, 10, 20, 25

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993)........................................................................... 11

*Samuels v. King Motor Co.,*
   782 So. 2d 489 (Fla. Dist. Ct. App. 2001) ......................................................... 19

*Seekamp v. It's Huge, Inc.,*
   No. 09- 00018, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ............................... 16

*Seijas v. Republic of Argentina,*
   606 F.3d 53 (2d Cir. 2010)............................................................................. 23

*Spread Enters., Inc. v. First Data Merchant Services Corp.,*
   298 F.R.D. 54 (E.D.N.Y. 2014) ...................................................................... 8

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011)......................................................................... 19

*Stutman v. Chem. Bank,*
   95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608 (N.Y. 2000) ........................... 17

*Super Glue Corp. v. Avis Rent A Car Sys.,*
   132 A.D.2d 604 (N.Y. App. Div. 1987) ........................................................... 18

*Sykes v. Mel Harris & Assocs. LLC,*
   285 F.R.D. 279 (S.D.N.Y. 2012) .................................................................. 14, 16

*Sykes v. Mel S. Harris & Assocs. LLC,*
   780 F.3d 70 (2d Cir. 2015)........................................................................passim

*Tait  v. BSH Home Appliances Corp.,*
   289 F.R.D. 466, 474 (C.D. Cal. 2012) ........................................................... 10, 18

*Taylor v. American Bankers Ins.Gp.,*
   267 A.D.2d 178 (N.Y. App. Div. 1999)............................................................. 18

*Tuckish v. Pompano Motor Co.*,
    337 F. Supp. 2d 1313 (S.D. Fla. 2004) ................................................... 19

*TV Interactive Data Corp. v. Sony Corp.*,
    929 F. Supp. 2d 1006 (N.D. Cal. 2013) ................................................ 22

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .............................................................................. 3, 9

*Wiener v. Dannon Co.*,
    255 F.R.D. 658 (C.D. Cal. 2009) .......................................................... 19

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ................................................................. 18

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ................................................................. 24

*Zeisel v. Diamond Foods, Inc.*,
    No. 10-01192, 2011 WL 2221113 (N.D. Cal. Jun. 7, 2011) ............. 3, 19

## **Statutes**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ................................................... 3

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ................................................... 3

Cal. Bus. & Prof. Code § 17203 ................................................................. 14

Cal. Civ. Code § 1780 ................................................................................. 14

Cal. Civ. Code §§ 1750, *et seq.* .................................................................. 3

Fla. Stat. § 501.202 .................................................................................... 19

N.Y. Gen. Bus. Law § 349 .................................................................. passim

N.Y. Gen. Bus. Law § 349(b) ................................................................... 14

N.Y. Gen. Bus. Law § 349(h) ................................................................... 14

## **Rules**

Fed. R. Civ. P. 23 ............................................................................... passim

## INTRODUCTION

Few actions are as appropriate for class treatment as the one at bar. Plaintiffs' claims brought on behalf of millions of consumers in New York, California and Florida arise from defendant Johnson & Johnson Consumer Companies, Inc.'s ("Defendant" or "J&J") uniform and deceptive branding and labeling of its "Aveeno Active Naturals" products (the "Products").[1] A reasonable consumer would understand and expect that a product labeled "Active Naturals" would in fact be natural. Unfortunately for consumers, however, the Products are not actually "natural." Instead, the vast bulk of the ingredients are synthetic and artificial.

Even though Defendant admits that every Product contains synthetic ingredients, J&J labeled every Product as natural because it knows that labels matter. "'The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source.'" *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 475 (E.D.N.Y. 2013) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 328 (2011). It is not surprising, then, that after J&J obtained the Aveeno brand from SC Johnson and launched the Active Naturals brand, Aveeno ███████████████████████████████████████████

████████████████████████████████ ██ [2]

Plaintiffs are typical members of the proposed Classes. They bought J&J's Aveeno Active Naturals Products at a premium price because they were labeled "Naturals;" precisely as

---

[1] "Products" refers to those listed in Paragraph 1 of the Amended Class Action Complaint, which are listed for the Court's convenience in the Declaration of Todd S. Garber filed herewith ("Garber Decl.") at paragraph 3.

[2] *See* ██████████████████████████ attached as Exhibit 1 to the Garber Decl., at AV0121119, AV0121122. *See also* "██████████████████████████████████" attached as Exhibit 2 to the Garber Decl., at AV0094568 ████████████████████████████

J&J intended.  Unfortunately for Plaintiffs, they were misled because the Products contain synthetic ingredients.  Accordingly, Plaintiffs move to certify the following classes:

> All persons who purchased Defendant's Products in New York during the applicable limitations period.
>
> All persons who purchased Defendant's Products in California during the applicable limitations period.
>
> All persons who purchased Defendant's Products in Florida during the applicable limitations period.[3]

Claims for consumer deception based on uniform labels are well suited for class certification, and courts within this Circuit and across the country routinely certify classes for similar deceptive advertising claims.  *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (labels on grass seed) (Briccetti, J.); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) (labels on olive oil) (Rakoff, J.); *Rikos v. Procter & Gamble Co.*, No. 14-4088, 2015 WL 4978712 (6th Cir. Aug. 20, 2015) (labels on nutritional supplement); *In re ConAgra Foods, Inc.*, No. 11-05379, 2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) (labels on cooking oil); *Brown v. Hain Celestial Grp., Inc.*, No. 11-03082, 2014 WL 6483216, at *2 (N.D. Cal. Nov. 18, 2014) (organic labeling); *Guido v. L'Oreal, USA, Inc.*, No. 11-01067, 2014 WL 6603730, at *19 (C.D. Cal. July 24, 2014) (hair product label); *Guido v. L'Oreal, USA, Inc.*, No. 11-1067, 2013 WL 3353857, at *19 (C.D. Cal. July 1, 2013) (same for New York consumers);

---

[3] In the alternative, Plaintiffs move to certify the New York, California and Florida Classes on behalf of purchasers of "Purchased Products" (*i.e.* those purchased by the respective class representatives). Plaintiff Goldemberg's Purchased Products (New York) can be found at paragraph 18 of the Amended Complaint and paragraph 4 of the Garber Decl., Plaintiff Le's Purchased Products (California) can be found at paragraph 22 of the Amended Complaint and paragraph 5 of the Garber Decl., and Plaintiff Petlack's Purchased Products (Florida) can be found at paragraph 26 of the Amended Complaint and paragraph 6 of the Garber Decl.  Excluded from every proposed class definition are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

*Dei Rossi v. Whirlpool Corp.*, No. 12-00125, 2015 WL 1932484, at \*12 (E.D. Cal. Apr. 28, 2015) (appliance label).[4]

Plaintiffs' and Class members' claims all arise from J&J's uniform course of conduct; all factual issues necessary to resolve Plaintiffs' and Class members' claims against J&J are common; and all allegations can be proven on a class-wide basis using common proof in one trial for each of the proposed classes. Specifically: 1) the Products have uniform labels containing the "Active Naturals" claim; 2) the Products all contain synthetic ingredients; and 3) the "Active Naturals" claim directly results in common injury because consumers pay a price premium for the Products and thus no individualized damage inquiry is required. These facts are "apt to drive the resolution of the litigation" for Plaintiffs' claims. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Class certification is also appropriate because the damages that directly stem from Defendant's deceptive conduct can be measured and assessed at trial. With respect to the New York class, damages under GBL § 349 are statutory and thus "no individualized damages inquiries are necessary for the New York class." *Guido*, 2013 WL 3353857, at \*16. Damages under the California and Florida consumer protection statutes[5] may be measured by the amount class members overpaid as a result of Defendant's deceptive conduct. Plaintiffs can and will

---

[4] *See also, e.g.*, *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422 (C.D. Cal. 2014) (dietary supplement label); *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 564 (S.D. Cal. 2012) (labels on heating pads); *Zeisel v. Diamond Foods, Inc.*, No. 10-01192, 2011 WL 2221113, \*1 (N.D. Cal. Jun. 7, 2011) (food labels); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 369 (N.D. Cal. 2010) (beverage labels); *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 521 (C.D. Cal. 2011) (yogurt label); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 554 (S.D. Cal. 2012) (multivitamins label); *In re Ferrero*, 278 F.R.D. 552, 556 (S.D. Cal. 2011) (Nutella spread label).

[5] Plaintiff Annie Le brings claims on behalf of the California class under three statutes: the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; and the False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.* Plaintiff Howard Petlack brings a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Sta. §§ 501.201 *et seq.*, on behalf of the Florida class.

prove that all consumers pay a price premium as a direct result of J&J's "Active Naturals" misrepresentation, which causes consumers to pay more for the Products than they otherwise would. *See* Garber Decl., Exhibit 3, attaching Expert Report of Jean-Pierre H. Dubé, Sigmund E. Edelstone Professor of Marketing and Director of the Kilts Center for Marketing at The University of Chicago ("Dubé Report").

Class certification of Plaintiffs' claims for injunctive relief is also appropriate because Defendant continues to deceptively label the Products as "Active Naturals," despite the presence of synthetic ingredients, and it has no plans to stop.

Accordingly, Plaintiffs respectfully request that this Court certify the proposed Classes, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel pursuant to Fed. R. Civ. P. 23(g)(1).

## FACTS COMMON TO THE PROPOSED CLASS

Defendant admits that all of the Products are " ████████████████████████████ ████████████████████████████████████████ "[6] ████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████ *See* August 26, 2015 Transcript of Fred Koberna Deposition ("Koberna Dep.") at 116:23-117:5, 138:4-10.[7] Defendant also admits that the Active Naturals trademark is ████████████████████████████ "[8] and that all of the

---

[6] Defendant's Answer, attached as Exhibit 4 to the Garber Decl., ¶¶ 1-3 (responding to Second Amended Class Action Complaint, ¶ 1).

[7] Relevant portions of the Koberna Dep. are attached as Exhibit 5 to the Garber Decl.

[8] *See* August 20, 2015 Transcript of Holly Means Deposition ("Means Dep.") at 103:21-23. Relevant portions of the Means Dep. are attached as Exhibit 6 to the Garber Decl.

Aveeno Active Naturals Products have synthetic ingredients.[9]  Defendant is fully aware that

███████████████████████████████████████████████████████████████████████

██.[10]

     Defendant purchased the Aveeno brand from S.C. Johnson in 1999 ████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██.[11] Defendant's marketing studies confirm that, according to consumers, the "████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████"[12] Aveeno's "████████████████████████████████████

█████████████████████████████████████████████████[13] Defendant takes advantage

of the fact that the term "natural" has not been officially regulated in the U.S., and that this was

---

[9]  Defendant's Responses and Objections to Plaintiffs' First Set of Requests for Admissions Nos. 1-5, attached as Exhibit 7 to the Garber Decl.

[10] *See* ████████████████████████████████████████████████████████████████████████
██████████ attached as Exhibit 18 to the Garber Decl., at AV0057172-74; *see also* footnote 12, *infra.*

[11] *See* Means Dep., attached as Exhibit 6 to the Garber Decl., at 32:24-33:22.  *See also* AV0026962, ██████████████████████," attached as Exhibit 8 to the Garber Decl., at AV0026972 (████████████████).

[12] *See* Means Dep., attached as Exhibit 6 to the Garber Decl., at 48:19-49:23.██████████████████
████████████████████████████████████████████████████ *See, e.g.,* ██████████
███████████████████████████████████████████████████████████████
██" attached as Exhibit 9 to the Garber Decl., at AV0074593 (████████████████
███████████████████████), and "████████████████████████████
███████████████████," attached as Exhibit 10 to the Garber Decl.),  at AV0137546 (███
██████████████████████████████████████████").

[13] Means Dep., attached as Exhibit 6 to the Garber Decl., at 48:3-18 (Q: "███████████████
███████████████████████████████████████████████████████████████████████
█████████████████████████").

"█████████████" in the ████████ "[14] An industry report notes that "███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████" – resulting in "████████████" regarding

whether a product is actually natural.[15] Another report, prepared for Defendant, notes that ████

██████████████████████████████████████████████████████████████

██████,"[16] ██████████████████████████████████████████████████████

██████████████████████████,"[17] ██████████████████████████████████████

██████,[18] ████████████████████████████████████ [19]



[14] *See* Means Dep., attached as Exhibit 6 to the Garber Decl., at 62:13-17.

[15] *See* ████████████████████████████████████████████████████ " attached as Exhibit 11 to the Garber Decl., at AV0051844 (emphasis added).

[16] *See* ████████████████████████████████████████████████████████ " attached as Exhibit 12 to the Garber Decl., at AV0043273.

[17] *See* Means Dep., attached as Exhibit 6 to the Garber Decl., at 48:19-49:23 (stating that the ████ ████████████████████████████████████████████████████ ).

[18] *See* Means Dep., attached as Exhibit 6 to the Garber Decl., at 169:23-170:3 (stating that "████████ ████████████████████████████").

[19] *See* Means Dep., attached as Exhibit 6 to the Garber Decl., at 186:20-187:17 ("███████████████ ████████████████████████████████████████████████████████████████████████████████ ") and 48:19-49:23 (explaining what "████████████ ████: ██████████████████████████ " attached as Exhibit 13 to the Garber Decl., at AV0080994 ("█ ██████████████████████████?"").

# ARGUMENT

## I. Standards For Determining Whether To Certify A Class Pursuant To Rule 23.

The Supreme Court has recognized that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Barnard*, 452 U.S. 89, 99 (1981). "Supreme Court precedent recognizes that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action." *Gortat v. Capala Bros.*, No. 07-3629, 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3, 2012), *aff'd sub nom. Gortat v. Capala Bros., Inc.*, 568 F. App'x 78 (2d Cir. 2014)); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980). "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

Any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the class members. *See Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (Rule 23 should be "given liberal rather than restrictive construction."); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("[W]hen a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward."). Indeed, "'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Gorat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361-62 (quoting *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)).

In determining whether a class should be certified, the question is not whether plaintiff will prevail on the merits, but whether, based on the Court's factual and legal determinations, the requirements of Rule 23 have been established by a preponderance of the evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1195 (2013). "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *Id.* (internal citations omitted). "Although the Court's analysis in the class certification context must be 'rigorous,' courts generally 'take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class.'" *Moreira v. Sherwood Landscaping Inc.*, No. 13-2640, 2015 WL 1527731, at *5 (E.D.N.Y. Mar. 31, 2015) (certifying class and quoting *Spread Enters., Inc. v. First Data Merchant Services Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014)). Plaintiffs satisfy each of the prerequisites of Rule 23(a), (b)(2) and (3).

## II.     The Proposed Classes Satisfy The Rule 23(a) Factors.

### A.     The Proposed Classes Are Sufficiently Numerous.

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." Numerosity is satisfied if the proposed class consists of forty or more members. *See Consolidated Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, ███████████████████████████████████████████████████████████████ in New York, California and Florida. Garber Decl., Exhibit 14. Therefore, numerosity is easily met.

**B.**     <u>The Claims Meet The Commonality Requirement.</u>

As the Supreme Court held in *Dukes*, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. Thus, commonality "is satisfied if there is a common issue that 'drive[s] the resolution of the litigation' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.' Consideration of this requirement obligates a district court to determine whether plaintiffs have 'suffered the same injury.'" *Sykes*, 2015 WL 525904, at *11 (2d Cir. Feb. 10, 2015) (affirming order granting motion for class certification and quoting *Dukes*, 131 S. Ct. at 2551). "Commonality does not mandate that all class members make identical claims and arguments." *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996) (certifying class). Indeed, "[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 131 S. Ct. at 2562; *see also In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) ("We start from the premise that there need be only one common question to certify a class.").

Here, there is a common question the truth or falsity of which will determine each class member's claim, namely whether it is deceptive to label the Products with the very registered trademark by which the Products are known and prominently labeled—"Active Naturals." Courts routinely find commonality when claims arise from a uniform misrepresentation. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("[F]raud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class

certification because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create no need for a series of mini-trials." (internal quotations and citations omitted)); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405 ("A common question with respect to the second theory of liability is whether the [label] claim is false and/or misleading. The answer to this question is common to all class members, and is apt to drive the resolution of this litigation."); *Ebin*, 297 F.R.D. at 565 (common question in a consumer class action is whether a product's manufacturer "defrauded purchasers" by making a specific claim on the product's label); *Guido*, 2013 WL 3353857, at *4 (certifying a class under New York's GBL and finding that commonality is met when the "gravamen of plaintiffs' claims … is that Serum should have, but did not, contain flammability warning" and "[b]ecause Serum was packaged and sold uniformly across the nation").[20] As the Sixth Circuit held last month in affirming the district court's finding of commonality, "Plaintiffs have identified a common question—whether Align is 'snake oil' and thus does not yield benefits to anyone—that will yield a common answer for the entire class and that, if true, will make P&G liable to the entire class." *Rikos*, 2015 WL 4978712, at *5.

Moreover, since materiality is determined by an objective "reasonable consumer" standard, this issue is also common to the class. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 ("[T]he Supreme Court has held materiality 'is a question common to all members of the

---

[20] *C.f., Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012) (certifying class under California, Maryland, Illinois and New York consumer protection laws and holding that commonality is met when the claims of prospective class members involved the same alleged defect in washers sold by defendants containing the same key components); *Keegan v. American Honda Motor Corp.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (certifying class under California's UCL and CLRA, as well as New York's GBL § 349, and holding that commonality requirement was met in products liability action against automobile manufacturer because the claims of all prospective class members involved same alleged defect in vehicles of same make and model).

class' when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard." (citing *Amgen*, 133 S. Ct. at 1191)).

Plaintiffs have therefore met the commonality requirement because there are common questions of law and fact with respect to Plaintiffs' and prospective Class members' claims against Defendant.

## C.    Plaintiffs' Claims Are Typical Of Those Of The Classes.

Rule 23(a)(3) requires Plaintiffs' claims to be "typical" of the class.  Fed. R. Civ. P. 23(a)(3).  "The typicality requirement is not demanding."  *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (granting motion for class certification; citation omitted). Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (reversing denial of class certification). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Id.* at 936-37; *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) ("[To deny class certification] because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle . . . would destroy much of the utility of Rule 23.").

Typicality is met here as Plaintiffs and the proposed Classes assert exactly the same claims, arising from the same course of conduct, namely that J&J acted deceptively by uniformly labeling the Products as "Active Naturals" when they contain synthetic ingredients, and that they were injured because they paid a premium price for a product that was not as advertised.  These circumstances are essentially identical to *Ebin*, where Judge Rakoff found that plaintiffs who had

purchased mislabeled olive oil products were typical of a nationwide class of purchasers, despite alleged differences with respect to their individual purchasing decisions. *See Ebin*, 297 F.R.D. at 566-67. *Johns v. Bayer Corp.* is also instructive:

> [T]he Men's Vitamin packages purchased by Plaintiffs and all class members prominently and repeatedly featured the identical 'supports prostate health' claim. Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and advertisements. The Court therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements.

*Johns*, 280 F.R.D. at 557 (holding that typicality is met because plaintiffs and the proposed class "assert exactly the same claim, arising from the same course of conduct—[Defendant's] marketing campaign.").

Plaintiffs' interests align with the Class members' interests in that all Class members seek relief for being deceived by J&J when they purchased the Products. Therefore, Plaintiffs' claims are typical of the Classes they seek to represent.

### D. Plaintiffs Will Adequately Represent The Classes.

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes*, 780 F.3d at 90 (citation omitted); *see also Amchem*, 521 U.S. at 625-26 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (citations omitted)). "Class representatives must have a sufficient interest in the outcome of the case to ensure vigorous advocacy." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406 (citation omitted). "Plaintiffs must also have attorneys who are 'qualified, experienced, and generally

able to conduct the litigation.'" *Id.* (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, each of the named Plaintiffs has responded to written discovery requests, has produced documents to the extent they exist, and has sat for a deposition. Each also demonstrated an understanding of both the basis of the claims and the role of a class representative. *See* Garber Decl., Exhibits 15, 16, and 17. Nor is there any basis to contend that the interests of the named Plaintiffs are antagonistic to the classes; to the contrary, they all share the same statutory claims and are due damages accordingly. As such, Plaintiffs are more than adequate class representatives. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406-07 ("Lead plaintiffs have each demonstrated their commitment to pursuing these claims by responding to extensive written discovery requests and sitting for lengthy depositions. Further, each lead plaintiff testified he or she understands the requirements of serving as lead plaintiff, and wishes to move forward. Finally, nothing in the record suggests lead plaintiffs' interests are antagonistic to those of other class members.").

Plaintiffs' counsel are also qualified to represent the class. In fact, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG") and The Richman Law Group are at the forefront of class action litigation concerning false and misleading labeling cases. *See* Garber Decl. ¶¶ 25-28; *see also* Richman Decl. ¶¶ 5-8. Moreover, FBFG has also been appointed class counsel in numerous cases. *See* Garber Decl. ¶ 28.

### III.   The Proposed Classes Satisfy The Rule 23(b)(2) Requirements.

Rule 23(b)(2) provides for class certification when "the party opposing the class has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief." Fed. R. Civ. P. 23(b)(2). Injunctive relief is expressly authorized for

Plaintiffs' statutory claims under New York's GBL § 349, California's UCL and CLRA, and Florida's FDUTPA. *See* N.Y. GBL § 349(h); Cal. Bus. & Prof. Code § 17203; Cal. Civ. Code § 1780; Fla. Sta. § 501.211(1). Certification pursuant to Fed. R. Civ. P. 23(b)(2) is appropriate where the defendant "has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief." Fed.R.Civ.P. 23(b)(2). "That plaintiffs are seeking substantial monetary damages is of no concern given [that Plaintiffs seek] certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively." *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012). *See also All Star Carts & Vehicles, Inc. v. BFI Income Fund*, 280 F.R.D. 78, 86 (E.D.N.Y. 2012) (same).

This action qualifies as a class under Rule 23(b)(2) because Defendant's uniform deceptive labeling generally applies to all Class members, the requested injunctive relief will be reasonably necessary and appropriate after Plaintiffs succeed on the merits, and the restitution sought is incidental to the requested injunctive relief. *See Sykes*, 780 F.3d at 97 (affirming (b)(2) certification based on the "defendants' uniform filing of false affidavits in state court to fraudulently procure default judgments against putative class members").

In *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009), the court certified a similar class seeking injunctive relief under New York GBL § 349 relating to Best Buy's deceptive disclosures relating to its price-match guarantee, reasoning that:

> If plaintiff's allegations are true, there is overwhelming positive value to the injunctive relief that the class seeks. Such an injunction would prevent Best Buy from continuing to perpetrate its alleged deceptive Anti-Price Matching Policy on all New York consumers in violation of New York law. The state of New York placed a high value on this type of injunctive relief; indeed, section 349 expressly provides for it: "Any person who has been injured by reason of any violation of this section may bring an action in his own name *to enjoin such unlawful act or practice* . . . ." N.Y. Gen.

> Bus. Law § 349(b) (emphasis added). . . .  Accordingly, the class
> meets the requirements of Rule 23(b)(2).

256 F.R.D. at 433-34.  The court's reasoning in *Jermyn* is equally applicable here.

Plaintiffs request injunctive relief prohibiting Defendant from continuing the unlawful practice of making deceptive "Active Naturals" representations.  Such request can be satisfied with "indivisible" equitable relief that benefits all Class members at once, namely a prohibition on Defendant using the "Active Naturals" representation on its labels.  For the reasons set forth above, the Court should certify the Classes under Rule 23(b)(2) because injunctive relief for Plaintiffs and Class members is appropriate.

**IV.     The Proposed Classes Meet The Rule 23(b)(3) Factors.**

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both requirements are met here.

**A.     Common Questions Of Law Or Fact Predominate Over Any Individual Issues.**

Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen*, 133 S. Ct. at 1191 (emphasis in original).  "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  "[T]he Supreme Court has also instructed that Rule 23(b)(3) does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof . . . individual questions need not be absent.  The text of Rule 23(b)(3) itself

contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Sykes*, 780 F.3d at 81 (citations and internal alterations omitted). The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. Predominance is also "readily met in certain cases alleging consumer . . . fraud." *Id.* at 625. Rule 23(b)(3) demands only predominance of common questions, not exclusivity or unanimity of them.

Common issues unquestionably predominate in this litigation. Indeed, the overriding common question is whether labeling the Products as "Active Naturals" despite the presence of synthetic ingredients is deceptive. This is a binary issue, the resolution of which will be outcome determinative for the entire class because deceptiveness is evaluated under the objective reasonable consumer standard. *See Marcus v. AT&T*, 138 F.3d 46, 64 (2d Cir. 1998) (N.Y. GBL § 349); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (N.Y. 1995) (same); *Makaeff v. Trump Univ., LLC*, No. 10-09402014, WL 688164, at **11, 13 (S.D. Cal. Feb. 21, 2014) (UCL, FAL, CLRA); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000) (FDUTPA). Thus, a jury will decide for each class, in its entirety, whether the "Active Naturals" label is deceptive or not for all the Products. *See Sykes*, 285 F.R.D. at 293 (certifying GBL § 349 claim where "[e]very potential class member's claim arises out of defendants' uniform, widespread practice" and therefore whether this practice violates GBL § 349 "does not depend on individualized considerations"), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d at 81 (2d Cir. 2015); *Seekamp v. It's Huge, Inc.*, No. 09- 00018, 2012 WL 860364, at *10 (N.D.N.Y. Mar. 13, 2012) (certifying GBL § 349 claim where the alleged legality of the representation was the "'gravamen of every class member's claim, and so may be

proven on a class-wide level'" (quoting *Jermyn*, 256 F.R.D. at 435)). Indeed, label

representations are presumed to be material. *See Kwikset*, 51 Cal. 4th at 327. Thus, as in *Amgen*,

the Classes here are "entirely cohesive: [They] will prevail or fail in unison. In no event will the

individual circumstances of particular class members bear on the inquiry." *Amgen*, 133 S. Ct. at

1191; *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("There is a

single, central, common issue of liability: whether the Sears washing machine was defective.");

*In re Whirlpool Corp.*, 722 F.3d at 859 ("Following *Amgen's* lead, we uphold the district court's

determination that common questions predominate as evidence will either prove or disprove

liability as to all class members").

## 1. Common Issues Predominate The Determination Of Liability For Plaintiff's GBL § 349 Claim.

Because common proof can be used to prove each element of Plaintiffs and the proposed

Class' claim, common issues predominate over any individual concerns. In order to show that a

plaintiff is entitled to relief for violation of GBL § 349, a plaintiff must show: (1) that the act,

practice, or advertisement was consumer-oriented; (2) that the act, practice or advertisement was

misleading in a material respect; and (3) that the plaintiff was thereby injured. *See In re Scotts

EZ Seed Litig.*, 304 F.R.D. at 409; *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892,

731 N.E.2d 608 (N.Y. 2000). The standard for whether an act or practice is misleading is an

objective one, requiring a showing that a reasonable consumer would have been misled by the

defendant's conduct. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *Oswego Laborers'*, 85

N.Y.2d at 26. As Judge Briccetti held, "Plaintiffs' GBL claims thus depend on generalized

evidence. Classwide evidence will be used to establish whether Scotts's labeling of EZ Seed was

false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under

the circumstances." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *see also Guido*, 284 F.R.D. at

483 (finding common issues predominate as to injury on plaintiffs' GBL claims because "the issue of whether plaintiffs and class members would have purchased [the product] had they known" advertising was false "can be established with common proof"); *Tait*, 289 F.R.D. at 485 (certifying GBL § 349 class when manufacturer of front-loading washing machines failed to disclose washers' propensity to develop biofilm, mold, mildew and foul odors); *Keegan*, 284 F.R.D. at 552 (certifying New York GBL § 349 claims and finding predominance when defendants allegedly provided the "same information to the entire class, *i.e.*, no information, concerning the possibility of excessive negative camber"); *Jermyn*, 256 F.R.D. at 435 (certifying GBL § 349 class and holding that "[c]ourts have repeatedly held that that section 349 claims based upon omissions, non-disclosures and deceptive corporate policy are well suited to class certification").[21]  As such, predominance is easily satisfied here.

### 2. Common Issues Predominate The Determination Of Liability For Plaintiff's California Claims.

While pled under various legal theories, Plaintiff Le's claims under the UCL, FAL and CLRA boil down to a single issue that is susceptible to common proof; whether Defendant's deceptive label is likely to mislead a reasonable consumer.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  As with N.Y. G.B.L. § 349, this is an objective test that is subject to common proof.  *See Makaeff*, 2014 WL 688164, at *11.

---

[21] *See also Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 216 (N.Y. App. Div. 2010) (certifying GBL §349 claim and holding that the predominant common issue presented was whether the location and typeface of spending limit fee increase disclosure received by all class members was deceptive); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371 (N.Y. App. Div. 2001) (granting motion for class certification with respect to GBL § 349 claims based on identical written solicitations); *Taylor v. American Bankers Ins. Gp.*, 267 A.D.2d 178 (N.Y. App. Div. 1999) (affirming certification of claim for violation of GBL § 349 based on defendants' uniform offers of insurance coverage); *Super Glue Corp. v. Avis Rent A Car Sys.*, 132 A.D.2d 604, 607 (N.Y. App. Div. 1987) (reversing denial of class certification of unfair trade practices claim where claims were based on defendant's "standardized rental agreements").

While reliance is an element of a CLRA claim, it may be inferred as to the entire class if the representations were objectively material. *See In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010); *Mass. Mut. Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th 1282, 1293 (2002). Stated differently, "reliance on the alleged misrepresentations may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to the class members." *Makaeff*, 2014 WL 688164, at *13 (internal quotations and citations omitted). Under California law, a misrepresentation is material:

> If a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable mind would have been influenced by it.

*Id.* (citing *Stearns*, 655 F.3d at 1022). The fact that the statement prominently appeared on every label is evidence of its materiality. *See, e.g.*, *Johns*, 280 F.R.D. at 558-59; *Wiener*, 255 F.R.D. at 669-70. Numerous courts have applied this inference of reliance to certify CLRA claims. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410; *Zeisel*, 2011 WL 2221113, at *11; *Johns*, 280 F.R.D. 551; *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 340-43 (N.D. Cal. Feb. 16, 2010). As such, predominance is easily satisfied for the California claims.

### 3. Common Issues Predominate The Determination Of Liability For Plaintiff's FDUTPA Claim.

FDUTPA is "a consumer protection law intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004); *see also* Fla. Stat. § 501.202. The "FDUTPA is to be liberally construed" to protect consumers. *See Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001); *Delgado v. J.W. Courtesy*

*Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 605 (Fla. Dist. Ct. App. 1997) (same).  Similar to a claim under New York or California law, a "claim under FDUTPA has three elements: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages."  *Rikos*, 2015 WL 4978712, at *13.  Causation is proven objectively and actual reliance is not required under FDUTPA. "[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstance."  *Davis*, 776 So. 2d at 974; *see also Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) (affirming reasoning of lower court, 263 F.R.D. 687, 695 ("[T]o satisfy FDUTPA's causation requirement, each plaintiff is required to prove only that the deceptive practice would – in theory – deceive an objective reasonable consumer")); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010) (certifying FDUTPA claims for deceptive advertising of health benefits of baby formula products).

If Defendant's "Active Naturals" claim is "likely to deceive" a reasonable consumer, then Defendant is liable under FDUTPA and as such common issues predominate Plaintiff Petlack's FDUTPA claim.  *See Fitzpatrick*, 635 F.3d at 1282-83; *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 702 (Fla. Dist. Ct. App. 2000) (finding class in FDUTPA action should be certified). As such, predominance is easily satisfied for the Florida claim.

### 4.     Damages For All Claims Can Be Determined On A Classwide Basis.

At class certification, Plaintiffs must "establish[] that damages are capable of measurement on a classwide basis."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Plaintiffs' method for calculating damages on a classwide basis must be consistent with their theory of liability by "measur[ing] only those damages attributable to that theory."  *Id.*  Plaintiff Goldemberg and New York Class members were injured due to their purchases of Defendant's

Products containing the deceptive "Active Naturals" misrepresentation.  In *Guido*, the Court held that the plaintiffs had sufficiently shown that common issues predominated their GBL § 349 claim: "[B]ecause awarding classwide relief only requires that a fixed amount of statutory damages be granted to each class member, no individualized damages inquiries are necessary for the New York class.  These considerations show that the predominance requirement is satisfied for the New York class."  *Guido*, 2013 WL 3353857, at *16.  The New York class's damages will simply be a matter of multiplying the number of units sold times the $50 statutory damages.

In addition to statutory damages for the New York Class, all members of the three classes were injured because they paid a price premium caused by Defendant's deceptive "Active Naturals" label, and that price premium is also subject to common proof.  Plaintiffs' expert, Jean-Pierre H. Dubé, Sigmund E. Edelstone Professor of Marketing and Director of the Kilts Center for Marketing at The University of Chicago, describes the generally accepted Characteristic Approach, which can measure the impact of placing an "Active Naturals" claim on Aveeno labels on consumers' willingness to pay ("WTP") for those products, and how that WTP underlies common damages.  In the Characteristics Approach, damages consist of the expected incremental WTP created by the use of the "Active Naturals" claim on Aveeno packaging.  Garber Decl., Exhibit 3 (Dubé Report), at ¶ 21.  Professor Dubé details two well-known empirical methodologies available for implementing the Characteristics Approach here:

1.      Random Coefficients Demand Estimation (RCDE), which when applied to available data will estimate consumers' marginal utilities from the bundle of characteristics associated with the Products (*id.* at ¶ 27); and

2.       Conjoint Analysis, which can decouple the effect of the Aveeno name from the "Active Naturals" claim (*id.* at ¶ 37).

The price premium that Professor Dubé details, once calculated, may be applied to New York, California and Florida sales of the Products in order to arrive at the amount members of

the Classes were overcharged.  This approach provides an efficient and accurate means of

calculating class-wide damages in this case.  Thus, damages common to the Classes, which result

from a common misrepresentation, may be calculated using common evidence.  Other courts

have approved the use of Professor Dubé's proposed methodologies or similar methodologies.

*See Guido*, 2014 WL 6603730, at *6 (certifying class where expert proposed using conjoint

analysis and/or random coefficient demand estimation); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at

413 (certifying class where expert proposed "hedonic regression, a contingent valuation study, or

a conjoint analysis"); *In re ConAgra Foods, Inc.*, 2015 WL 1062756, at *67 (certifying class

where expert proposed hedonic regression combined with conjoint analysis).[22]

    As such, "Plaintiffs' model survives the minimal scrutiny required under *Comcast* and

Rule 23(b)(3) — their theory of liability matches their theory of damages and individualized

damages issues will not predominate."  *See Carpenters Pension Trust Fund  v. Barclays PLC*,

No. 12-5329, 2015 WL 5000849, at *21 (S.D.N.Y. Aug. 20, 2015).  That Professor Dubé has yet

to perform his analysis is of no moment at the class certification stage, particularly with

discovery ongoing.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 413 ("[N]othing in *Comcast*

---

[22] *See also In re Whirlpool Corp. Front–Loading Washer Prods. Liability Litig.*, 45 F. Supp. 3d 724, 750-53 (N.D. Ohio 2014) (finding conjoint analysis survey as to customers' "willingness to pay" for various product attributes to be "reasonably reliable"); *Khoday v. Symantec Corp.*, No. 11-180, 2014 WL 1281600, at *33 (D. Minn. Mar. 13, 2014) (ruling that "conjoint analysis" was appropriate evidence for a "means to isolate the value for specific" features of a good; and that "disputes about the precision of the particular model . . . do[] not indicate that damages will not be measureable on a classwide basis"); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1020–27 (N.D. Cal. 2013) (admitting conjoint analysis over defendant's Daubert objection as to unreliability, where expert testimony used the analysis to identify a "value" for specific product attributes); *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012) (ruling that conjoint analysis to "determine what value a customer places on a particular feature of a product" was based on sufficiently sound evidence to survive Daubert challenge).

requires an expert to perform his analyses at the class certification stage.").  As such, the Classes are appropriate for certification.

**B.      A Class Action Is The Superior Method Of Adjudicating The Controversy.**

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy."  The Court must consider (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  *See* Fed. R. Civ. P. 23(b)(3).  Here, each of the factors weighs in favor of certification.

Each class member's interest in bringing his or her own case is negligible if not economically irrational, given that the fees and other litigation costs would quickly outstrip any potential recovery.  When, as here, "proceeding individually would be prohibitive for class members with small claims . . . the class action device is frequently superior to individual actions."  *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415 (citing *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("Where proceeding individually would be prohibitive due to the minimal recovery, the class action device is frequently superior to individual actions.")); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130-31 ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery.  Here, substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'") (quoting Fed. R. Civ. P. 23 advisory committee's notes)).

Plaintiffs are unaware of any other litigation concerning class members' claims, and it is desirable to concentrate litigation of the claims in one forum.

## V.    **The Proposed Classes Are Easily Ascertainable.**

Though it does not appear in the text of Rule 23, courts in this circuit have recognized an "implied requirement of ascertainability." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 (citing *Ebin*, 2014 WL 737960, at *4). Ascertainability turns on the definition of the proposed class. *See Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006). The class must be "identifiable" such that "its members can be ascertained by reference to objective criteria." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002). "The standard for ascertainability is 'not demanding' and is 'designed only to prevent the certification of a class whose membership is truly indeterminable.'" *Ebin*, 2014 WL 737960, at *5 (quoting *Gorat*, 2010 WL 1423018, at *2). Thus, the class is "identifiable" if "its members can be ascertained by reference to objective criteria." *MTBE Prods. Liab. Litig.*, 209 F.R.D. at 337; *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (requiring only that class definition describe objective criteria that allow prospective class members to identify themselves). Here, the class definitions are imminently objective as they are simply comprised of every person who purchased one of the Products in New York, Florida or California during the applicable periods.

That not all class members kept receipts or are otherwise identifiable from documentary proof is of no moment. In *Ebin* an ascertainable class was defined as "persons in the United States who purchased Capatriti packed before March 1, 2013 . . ." 297 F.R.D. at 567. The defendant contended that lack of proof of purchase precluded ascertainability, but Judge Rakoff found that defendant's proposed definition of ascertainability "would render class actions against

producers almost impossible to bring." *Id.*; *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 ("The Court agrees with Judge Rakoff's reasoning in *Ebin*. Declining to certify classes when consumers are likely to lack proof of purchase would render class actions against producers almost impossible to bring.") (internal quotations omitted)).

Here, as in *Ebin* and *Scotts EZ Seed*, the Classes are defined by objective criteria: those who purchased one or more of the Products during the class period. There is nothing subjective about these definitions – individuals either purchased one of the Products, or they did not. As such, the Classes are ascertainable.[23]

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully move this Court for an Order certifying the above-identified class and appointing Plaintiffs and their counsel as Class Representatives and Class Counsel respectively.[24]

---

[23] Both the Sixth and Seventh Circuit have recently agreed. *See Rikos*, 2015 WL 4978712, at *22 (citing *Mullins v. Direct Digital, LLC*, No. 15–1776, 2015 WL 4546159, at *7 (7th Cir. July 28, 2015) (declining to follow *Carrera* because "[t]he Third Circuit's approach in *Carrera*, which is at this point the high-water mark of its developing ascertainability doctrine, goes much further than the established meaning of ascertainability and in our view misreads Rule 23").

[24] Plaintiffs do not move for certification of their breach of warranty claims and are no longer pursuing those causes of action.

Date: September 18, 2015

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

 */s/ Todd S. Garber*
Todd S. Garber
1311 Mamaroneck Avenue, Suite 220
White Plains, New York 10605
Telephone: (914) 298-3283
tgarber@fbfglaw.com

Kim E. Richman
**THE RICHMAN LAW GROUP**
195 Plymouth Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
krichman@richmanlawgroup.com

*Counsel for Plaintiffs and the Proposed Class*