UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL GOLDEMBERG, ANNIE LE, and HOWARD PETLACK, on behalf of themselves and all others similarly situated,<br><br>                               Plaintiffs,<br><br>    v.<br><br>JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>                               Defendant. | No. 7:13-cv-03073-NSR-LMS |

# **DECLARATION OF KEITH R. UGONE, PH.D.**

# **November 13, 2015**

REFERS TO HIGHLY CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER

# DECLARATION OF KEITH R. UGONE, PH.D.

## November 13, 2015

| | | |
|---|---|---|
| I. | OVERVIEW OF ASSIGNMENT | 1 |
| II. | SUMMARY OF OPINIONS | 4 |
| | A. Claimed Injury And/Or Claimed Damages Cannot Be Reliably Evaluated On A Class-Wide Basis | 4 |
| | B. Evaluation Of The Dubé Report | 9 |
| III. | QUALIFICATIONS AND EXPERIENCE | 17 |
| IV. | FACTS, DATA, AND INFORMATION RECEIVED | 19 |
| V. | OVERVIEW OF PARTIES | 20 |
| | A. Named Plaintiffs | 20 |
| |    1. Michael Goldemberg | 20 |
| |    2. Annie Le | 21 |
| |    3. Howard Petlack | 22 |
| |    4. Differences In Named Plaintiffs' Attributes | 23 |
| | B. Johnson & Johnson Consumer Companies, Inc. | 25 |
| VI. | OVERVIEW OF CHALLENGED PRODUCTS AND CHALLENGED CLAIM | 25 |
| VII. | WHETHER AND TO WHAT EXTENT ANY PUTATIVE CLASS MEMBER WAS INJURED AS A RESULT OF THE CHALLENGED CLAIM DEPENDS UPON INDIVIDUALIZED INQUIRY | 29 |
| | A. Individual Inquiry is Required To Determine Putative Class Members' Reasons For Purchasing The Challenged Products | 29 |
| |    1. Aveeno Documents, Deposition Testimony, And Label Information | 30 |
| |    2. Named Plaintiffs' Deposition Testimony | 33 |
| | B. Individual Inquiry is Required To Determine Putative Class Members' Knowledge And Perceptions Relating To The Challenged Claim | 36 |
| | C. Individual Inquiry Is Required To Determine The Specific Prices Paid For The Challenged Products By Each Putative Class Member | 42 |
| |    1. Variability Across Named Plaintiffs' Purchases Of The Challenged Products | 43 |
| |    2. Analyses Performed Regarding Online Retail Prices Of The Challenged Products | 44 |
| | D. Individual Inquiry Is Required To Determine At What Price, If Any, Putative Class Members Would Have Purchased Challenged Products | 47 |
| VIII. | LACK OF ECONOMIC EVIDENCE TO DETERMINE INDIVIDUAL PUTATIVE CLASS MEMBERS' ALLEGED ECONOMIC INJURY | 48 |
| IX. | DR. DUBÉ'S PROPOSED WILLINGNESS-TO-PAY MEASURES ARE NOT APPROPRIATE OR RELEVANT MEASURES OF CLASS-WIDE DAMGES | 49 |

    A. Dr. Dubé's Proposed Willingness-To-Pay Measures Are Not Equivalent To A Price Premium Attributable To The Challenged Claim.......................................... 50

    B. Dr. Dubé Fails To Isolate Value Attributable To Plaintiffs' Alleged Misleading Interpretation Of The Challenged Claim ................................................................. 53

    C. Dr. Dubé's Proposed Measures Of Economic Damages Are Based Upon An Incorrect Description Of Aveeno Products That Would Exist Absent An "Active Naturals" Claim ........................................................................................................ 58

    D. Dr. Dubé Proposes To Calculate A Single Average Value That Ignores Individual Factors............................................................................................................................ 60

X.   **DR. DUBÉ'S RANDOM COEFFICIENTS DEMAND ESTIMATION LACKS NUMEROUS DETAILS AND LIKELY WILL NOT YIELD ANY DETERMINATION OF CLASS-WIDE DAMAGES .................................................... 62**

    A. Dr. Dubé Fails To Specify Numerous Details Necessary To Execute An RCDE Model In Practice ......................................................................................................... 63

        1. Treatment Of Various Categories Of Challenged Products................................. 63

        2. Identification Of Competitor Products.................................................................. 65

        3. Identification Of Product Characteristics............................................................. 67

        4. Identification Of Relevant Markets ........................................................................ 69

    B. The Data Necessary To Reliably Estimate Dr. Dubé's Proposed Model Likely Is Not Available ............................................................................................................... 70

        1. Plaintiffs' Subpoena To IRI Will Not Yield All Data Necessary To Reliably Execute An RCDE Analysis ................................................................................... 71

        2. Historical Labeling Claims For Competitor Products Unlikely To Be Available .................................................................................................................. 72

        3. Data On Product Features Not Represented On Labels May Not Be Available In A Usable Format For An RCDE Model........................................... 74

        4. Data On Unit Costs Likely Is Not Available ......................................................... 76

    C. Dr. Dubé Fails To Provide Any Substantive Analysis To Show His Method Likely Will Yield A Reliable Measure Of Class-Wide Damages......................................... 77

    D. Dr. Dubé's Proposed Estimation Depends Upon Assumptions That Are Not Applicable And May Yield Unreliable Results ....................................................... 78

        1. Assumption That Consumers Purchase A Single Product At One Time Is Not Reasonable ..................................................................................................... 79

        2. Assumption That Consumers Face The Same Purchase Price (And Other Features) For Products Within A Market Is Not Reasonable ............................. 81

        3. Assumption That The Products Available To Consumers Will Be Able To Be Specified Is Not Reasonable............................................................................ 82

XI.   **DR. DUBÉ'S CONJOINT ANALYSIS LACKS NUMEROUS DETAILS AND LIKELY WILL NOT YIELD ANY DETERMINATION OF CLASS-WIDE DAMAGES ........................................................................................................................ 83**

    A. Dr. Dubé Fails To Specify Numerous Details For His Proposed Conjoint Analysis . 84

B. Dr. Dubé Has Not Analyzed The Challenged Products To Ascertain Whether Other Features Will Need To Be Isolated Using Conjoint Analysis ........................... 86

C. Conjoint Analysis Has Numerous Drawbacks That Dr. Dubé Has Not Demonstrated Could Be Overcome ........................................................................... 87

    1. Dr. Dubé Has Failed To Acknowledge Or Describe How To Overcome Practical Issues Related To Executing His Conjoint Analysis In Light Of The Facts Of This Matter ..................................................................................... 87

    2. Overemphasis Of Certain Product Features ............................................................ 88

    3. Inability To Measure Variation In Value Of Features Over Time ......................... 89

D. Dr. Dubé Fails To Provide Any Substantive Analysis To Show His Conjoint Analysis Likely Will Yield Reliable Inputs Into His Proposed Damages Analysis ... 91

**XII. DR. DUBÉ'S PROPOSED COMBINATION OF RCDE AND CONJOINT ANALYSIS LACKS SUFFICIENT DETAILS AND WILL NOT REMEDY THE FLAWS OF EACH INDIVIDUAL ANALYSIS ................................................. 92**

# DECLARATION OF KEITH R. UGONE, PH.D.

## November 13, 2015

I.  **OVERVIEW OF ASSIGNMENT**

1.  I am an economist and have been retained by counsel for Johnson & Johnson Consumer Companies, Inc. ("J&JCC" or the "Defendant") to offer my opinions regarding various economic and associated class certification issues relevant to the matter of *Michael Goldemberg et al. vs. Johnson & Johnson Consumer Companies, Inc.* I understand that Michael Goldemberg, Annie Le, and Howard Petlack ("Named Plaintiffs" or "Plaintiffs") allege that J&JCC has engaged in misleading marketing, labeling, and advertising relating to 90 Aveeno brand personal care products ("Challenged Products" or "Products").[1] Generally, the Named Plaintiffs have made the following claims (which are denied by J&JCC).

    a.  The Named Plaintiffs claim that the phrase "Active Naturals" ("Challenged Claim") allegedly "creates the impression amongst reasonable consumers that the Products are natural."[2] According to the Named Plaintiffs, "a reasonable consumer believes that Defendant's Products do not contain harmful, synthetic, unnatural ingredients; in fact, however, the Products do contain such ingredients."[3, 4]

    b.  The Named Plaintiffs claim that "Plaintiffs and the other Class members purchased, purchased more of, or paid more for, the Products than they would have had they known the truth about the Products' unnaturalness. Thus, Plaintiffs and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct."[5]

---

[1] The list of the 90 Challenged Products is contained in the Declaration of Todd S. Garber in Support of Plaintiffs' Motion for Class Certification ("Garber Declaration"), pp. 2 – 4. I also discuss the 90 Challenged Products later in my declaration. (*See* **Section VI** and **Exhibit 5**.)

[2] Second Amended Class Action Complaint, p. 11.

[3] Second Amended Class Action Complaint, pp. 18 – 19.

[4] Dr. Dubé has not produced any methodology to measure damages associated with Plaintiffs' claims that the Aveeno products contain harmful ingredients.

[5] Second Amended Class Action Complaint, p. 20.

REFERS TO HIGHLY CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER

Declaration of Keith R. Ugone, Ph.D.
November 13, 2015

___

2. It is my understanding that the Named Plaintiffs seek three state Classes to be certified based upon one of two different Challenged Products' compositions:[6]

   a. purchasers of the Challenged Products in (i) New York during the applicable limitations period, (ii) California during the applicable limitations period, and (iii) Florida during the applicable limitations period;[7] or

   b. purchasers of the "Purchased Products" (i.e., those Challenged Products <u>purchased by the respective class representatives</u>) in (i) New York during the applicable limitations period, (ii) California during the applicable limitations period, and (iii) Florida during the applicable limitations period.[8]

3. Dr. Jean-Pierre Dubé ("Dr. Dubé) submitted an expert report on September 17, 2015 in support of class certification in this matter (the "Dubé Declaration"). Dr. Dubé proposed to use a "characteristics approach" to measure the additional willingness to pay ("WTP") allegedly created by the use of the Active Naturals claim on Aveeno packaging.[9] Dr. Dubé identified two methodologies he plans to combine into a single approach to making this measurement.[10]

___

[6] Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, p. 2.

[7] I understand that the Class Periods extend as far back as May 7, 2009 (i.e., four years prior to the filing of the Class Action Complaint in the Southern District of New York). (Class Action Complaint, *Michael Goldemberg v. Johnson & Johnson Consumer Companies, Inc.* filed May 7, 2013.)

[8] I understand that the Class Periods extend as far back as May 7, 2009 (i.e., four years prior to the filing of the Class Action Complaint in the Southern District of New York). (Class Action Complaint, *Michael Goldemberg v. Johnson & Johnson Consumer Companies, Inc.* filed May 7, 2013.)

[9] Expert Report of Dr. Jean-Pierre Dubé submitted September 17, 2015 ("Dubé Report"), pp. 5 and 7. According to Dr. Dubé:

> The Characteristics Approach is the standard conceptual model used to evaluate the economic value to a consumer from a product feature or attribute. Hereafter, I [Dr. Dubé] will refer to product features and attributes broadly as characteristics. The term "Characteristics Approach" is used to denote the assumption that consumers perceive products as an underlying bundle of characteristics that constitute the product. A consumer obtains marginal utility (or a "part-worth") from each of the underlying characteristics. The total utility (or "total worth") from the product is the sum of the marginal utilities from each of the underlying characteristics, net of the price paid.

Dubé Report, p. 5. (Bracketed text added for clarification.)

[10] As I explain later in my report, Dr. Dubé intends to use his <u>one</u> proposed combined approach in <u>two applications</u> to potentially quantify two different damages measures: (a) a WTP measure assuming the prices of all products are unchanged before and after the Challenged Claim is removed from the Challenged Products and (b) a WTP measure

a. <u>Random Coefficients Demand Estimation ("RCDE")</u>. Dr. Dubé stated that the RCDE part of his approach "can be used to estimate marginal utility of product characteristics and consumer price sensitivities when appropriate data are available."[11]

b. <u>Conjoint Analysis</u>. Dr. Dubé stated that a Conjoint Analysis "can be used to decompose the utility derived from an Aveeno product into a marginal utility from the brand name and a marginal utility from the [Challenged Claim]."[12]

4. I have been requested by counsel for J&JCC to independently evaluate from an economic perspective:

a. whether standard economic analyses and common proof can be used to evaluate and quantify on a Class-wide basis the economic damages that may be claimed in this matter; and

b. whether Dr. Dubé's proposed methodologies for evaluating Class-wide damages using common proof provide adequate assurances to the Court that the proposals are workable and will yield reliable results.

---

assuming the prices of all products can adjust following the removal of the Challenged Claim from the Challenged Products.

[11] Dubé Report, p. 7. The concept of a RCDE model is explained more fully later in my declaration. (*See*, for example, **Section X**.) Also, as a prelude to the conclusions I offer in this declaration and as explained later in my declaration, Dr. Dubé did not investigate whether "appropriate data are available." (*See, for example,* **Section X.B.** *See also*, Dubé Deposition, p. 52.) Consequently, Dr. Dubé cannot provide assurances to the court that his proposed RCDE portion of his approach is workable.

[12] Dubé Report, p. 10. (Bracketed text added for clarification.) A conjoint analysis is explained more fully later in my declaration. (*See*, *for example*, **Section XI**.) According to Dr. Dubé:

> Choice-based Conjoint Analysis proceeds by asking consumers to respond to a sequence of choice tasks. In each task, the consumer is presented with a choice between a finite number of product alternatives. Each alternative is described by a set of characteristics chosen by the analyst, including the price. Often, a no-purchase alternative is included in the choice set. For each task, the consumers must make a single choice. Across each task, the analyst changes the set of products, the levels of the characteristics and the prices in the choice set. This allows the analyst to observe how the consumer trades-off characteristics and prices. The data consist of the choices and the corresponding characteristics of the product alternatives from each task.

Dubé Report, p. 11. Also, as a prelude to the conclusions I offer in this declaration and as explained later in my declaration, Dr. Dubé did not investigate "the set of products", "the levels of the characteristics", "the prices in the choice set", or "the corresponding characteristics of the product alternatives." (*See, for example,* **Section XI.A**. *See also*, Dubé Deposition, p. 203 – 204, 207, 220.) Consequently, Dr. Dubé cannot provide assurances to the court that his proposed Conjoint Analysis part of his approach is workable.

## II. SUMMARY OF OPINIONS[13]

5. My evaluation of the Named Plaintiffs' assertion that Class-wide damages can be evaluated and quantified using common proof is based upon (a) my economics and damage quantification training and experience, (b) documentary evidence, (c) my review of the Dubé Report, and (d) deposition testimony from the Named Plaintiffs, Aveeno personnel, and Dr. Dubé, *inter alia*. Based upon the detailed analyses presented throughout my declaration (and summarized here), I have concluded that:

   a. the claimed injury and/or claimed damages suffered by putative Class members is not amenable to evaluation and quantification using Class-wide (or common) proof; and

   b. Dr. Dubé has not provided adequate assurances to the court that his proposed methodologies (i) are workable as a means to evaluate and calculate claimed damages on a Class-wide basis using common proof or (ii) will provide a reliable or relevant measure of the injury (if any) suffered by putative Class members.

   ### A. **Claimed Injury And/Or Claimed Damages Cannot Be Reliably Evaluated On A Class-Wide Basis**

6. As presented throughout my declaration (and summarized here), individual inquiry is required to determine whether any putative Class member <u>suffered injury</u> attributable to the alleged message communicated by the Challenged Claim. In addition, individual inquiry is required <u>to evaluate and quantify</u> the claimed injury and/or damages suffered by the putative Class members, if any. Common proof measures fail to overcome the various hurdles present to isolating any price premium attributable to the alleged message communicated by the Challenged Claim, if any. Immediately below, from an economic perspective, are the individual inquiry considerations that need to be evaluated in this matter.

---

[13] This Summary of Opinions is intended to be an overview. A full description of my opinions is contained throughout my declaration (i.e., narrative and associated exhibits).

a. <u>Reasons For Purchase</u>.  (Section VII.A.)

i. 

ii. 

iii. Challenged Products' labels include numerous claims and information about the products – including the Challenged Claim, other non-challenged natural ingredient claims, and unrelated claims. As an illustrative example, the packaging of Aveeno Active Naturals Daily Moisturizing Body Wash includes the following label statements on the front of the bottle: the Aveeno brand name, the Active Naturals phrase, "helps replenish the skin's natural moisture," "for visibly healthier skin," "dermatologist recommended," and "nourishing oatmeal."

iv. Named Plaintiff Mr. Goldemberg testified that he repurchased the Challenged Products because "they worked" and he was satisfied with how they worked.[17]

v. Named Plaintiff Ms. Le testified that the products worked well and so she continued to purchase them. She testified, "[the Challenged Products] worked fine. I didn't have a reaction to them. So I really -- once I have something that I really like to use, I continue using it."[18]

vi. Named Plaintiff Mr. Petlack testified that he purchased the Aveeno Active Naturals Body Wash because he needed a body wash and he trusted the Aveeno brand. He stated, "I purchased [the Challenged Product] because I was looking

---

[14] Deposition of Holly Means taken August 20, 2015 ("Means Deposition"), p. 70.

[15] Means Deposition, p. 164.

[16] Means Deposition, p. 36.

[17] Deposition of Michael Goldemberg taken on May 21, 2015 ("Goldemberg Deposition"), pp. 74 – 75, and 90 – 91.

[18] Deposition of Annie Le taken August 10, 2015 ("Le Deposition"), p. 89. (Bracketed text added for clarification.)

Declaration of Keith R. Ugone, Ph.D.
November 13, 2015

_____

for a body wash. After I decided because I've always known the Aveeno name -- in my mind to represent quality and that was the reason why I bought them."[19]

Consumers who purchased the Challenged Products for these (and other) reasons were not injured (or were not injured to the same degree) as consumers who purchased in substantial part because of the Challenged Claim. Individual inquiry would be required to evaluate each putative Class member's reasons for purchasing the Challenged Products.

b. <u>Knowledge And Perceptions Related To The Challenged Claim</u>. The knowledge and perceptions of individual putative Class members may affect the determination of whether that individual purchaser suffered injury <u>attributable to the alleged message communicated by the Challenged Claim</u>. For example, the front and back labels of the Challenged Products contain various representations as to the specific Active Naturals ingredients contained in the Challenged Products. Such labeling allows putative Class members to determine that the Challenged Claim pertains to these identified listed ingredients, not all ingredients. (**Section VII.B.**)

  i. Based upon a review of the most recent label versions of the 90 Challenged Products, each Challenged Product label contains one or more representations as to the specific Active Naturals ingredient(s) contained in the product. These representations can be classified into the following non-exclusive categories: (1) front-facing claims specifying "Active Naturals" followed by the specific ingredient(s) in the product; (2) front-facing claims specifying natural ingredients without specifically mentioning "Active Naturals"; and (3) back-facing claims specifying "Active Naturals" followed by the specific ingredient(s) in the product.

  ii. Two of the Named Plaintiffs admitted that there can be different interpretations of the Challenged Claim. Mr. Goldemberg acknowledged that some people may read the Active Naturals statement and recognize that it was referring only to the Active Naturals ingredients listed on the product labels, not the entire product.[20] Mr. Petlack acknowledged that some consumers might understand that the Active Naturals ingredients listed on the bottle were the only natural ingredients in the product.[21]

A person who (i) read the product and/or ingredient label, (ii) understood that not all the ingredients in the Challenged Products were natural, and (iii) purchased the Challenged Products anyway, made the purchase for attributes other than the Challenged Claim and was not harmed by the Challenged Claim. Any determination of damages absent an individualized inquiry into consumers' knowledge and perceptions of the Challenged Claim would result in a windfall gain to putative Class

---

[19] Deposition of Howard Petlack taken May 21, 2015 ("Petlack Deposition"), pp. 94 – 95.

[20] Goldemberg Deposition, pp. 57, 59 – 61, 79, and 92 – 93.

[21] Petlack Deposition, pp. 83 – 84, 87 – 88, and 115.

REFERS TO HIGHLY CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER