**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GOLDEMBERG, ANNIE LE, and HOWARD PETLACK, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>      Defendant. | Civil Action No. 7:13-cv-3073-NSR-LMS<br><br>Hon. Nelson S. Román |

## MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

Table Of Authorities……………………………………………………………………...iii

I.      Introduction.....................................................................................................1

II.     Background Of The Action.............................................................................5

III.    Summary Of The Settlement .........................................................................8

IV.     Standards For Approval Of A Class Action Settlement ................................12

V.      The Court Should Grant Preliminary Approval To The Settlement Agreement ...............14

        A.      The Action Is Complex And Will Be Expensive And Lengthy............................14

        B.      The Reaction Of The Class Will Likely Be Positive .............................................15

        C.      The Current Stage Of The Instant Litigation And
                The Extensive Discovery That Has Occurred Favor Preliminary Approval.......15

        D.      Plaintiffs Face Substantial Hurdles In Establishing Liability…………………….16

        E.      Factors Related To Difficulties In Proving Damages, Maintaining The
                Class Action Through Trial, And The Ability Of Defendant To Pay
                A Judgment Are The Only Factors That Do Not Heavily Weigh In
                Favor Of Approving The Proposed Class Settlement…………………….....…...16

        F.      The Settlement Amounts Are Reasonable In Light Of The Best
                Possible Recovery And In Light Of All The Attendant Risks Of Litigation……...17

VI.     The Proposed Class Notice Is Appropriate .......................................................19

VII.    The Court Should Conditionally Certify The Class…………………………………...21

        A.      The Class Satisfies Rule 23(A)………………………….....………………….....22

                1.      The Class Is So Numerous That Joinder Of All Members Is
                        Impracticable………………………………………………….……….22

                2.      There Are Questions Of Law Or Fact Common To The Class……...…..22

                3.      Plaintiffs' Claims Are Typical Of The Claims Of The Class……………24

                4.      Plaintiffs Will Fairly And Adequately Protect The Interests
                        Of The Class…………………………………………………....……..25

B.       The Class Satisfies Rule 23(B)(2)…………………………………………………..26

C.       The Class Satisfies Rule 23(B)(3)…………………………………………………..27

       1.       Common Questions Predominate Over Individual Issues………………27

       2.       A Class Action Is A Fair And Efficient Method For
                 Adjudicating This Controversy…………………………...…………..……..29

VIII.   Plaintiffs' Counsel Should Be Appointed Class Counsel ...................................................30

IX.     Conclusion ........................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*In re Platinum and Palladium Commodities Litig.*, No. 10-3617,
No. 10-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................... 19

*All Star Carts & Vehicles, Inc. v. BFI Income Fund*,
280 F.R.D. 78 (E.D.N.Y. 2012) ............................................................................................ 27

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................. 27

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds.*,
133 S. Ct. 1184 (2013) .......................................................................................................... 24

*Ayzelman v. Statewide Credit Services Corp.*,
238 F.R.D. 358 (E.D.N.Y. 2006) ......................................................................................... 21

*Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*,
No. 11-6690, 2012 WL 5438849 (S.D.N.Y. Nov. 7, 2012) ................................................. 26

*Cagan v. Anchor Sav. Bank FSB*,
No. 88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) .................................................... 18

*Chambery v. Tuxedo Junction, Inc.*,
No. 12-6539, 2014 WL 3725157 (W.D.N.Y. July 25, 2014) ............................................... 18

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................................................................... 14, 17

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ................................................................................................... 22

*D'Alauro v. GC Services Ltd. P'ship*,
168 F.R.D. 451 (E.D.N.Y. 1996) ......................................................................................... 24

*Danieli v. IBM*,
No. 08-3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ............................................... 13

*Davis v. J.P. Morgan Chase & Co.*,
775 F. Supp. 2d 601 (W.D.N.Y. 2011) ................................................................................ 13

*Davis v. Powertel, Inc.*,
776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ........................................................................... 28

*deMunecas v. Bold Food, LLC,*
No. 09-440, 2010 WL 2399345 (S.D.N.Y. Apr. 19, 2010) ...................................................... 30

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) ...................................................... 21

*Dornberger v. Metro. Life Ins. Co.,*
203 F.R.D. 118 (S.D.N.Y. 2001) ...................................................... 20

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
89 F.R.D. 87 (S.D.N.Y. 1981) ...................................................... 25

*Ebin v. Kangadis Food, Inc.,*
297 F.R.D. 561 (S.D.N.Y. 2014) ...................................................... 23, 25

*Goldemberg v. Johnson & Johnson Consumer Cos.,*
317 F.R.D. 374 (S.D.N.Y. 2016) ...................................................... 5, 7

*Guido v. L'Oreal, USA, Inc.,*
No. 11-1067, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ...................................................... 23

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................... 14, 15, 17

*In re Currency Conversion Fee Antitrust Litig.,*
MDL No. 01-1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ...................................................... 15

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
No. 05-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................................... 13

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................... 16

*In re MetLife Demutualization Litig.,*
262 F.R.D. 205 (E.D.N.Y. 2009) ...................................................... 20

*In re Michael Milken & Assocs. Sec. Lit.,*
150 F.R.D. 57 (S.D.N.Y. 1993) ...................................................... 17

*In re Nasdaq Market-Makers Antitrust Litig.,*
176 F.R.D. 99 (S.D.N.Y.1997) ...................................................... 13

*In re PaineWebber Ltd. P'ships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................... 16

*In re Scotts EZ Seed Litig.*,
 304 F.R.D. 397 (S.D.N.Y. 2015)........................................................ 23, 24, 26, 29

*In re Toys R Us Antitrust Litig.*,
 191 F.R.D. 347 (E.D.N.Y. 2000)........................................................ 20

*In re U.S. Foodservice Inc. Pricing Litig.*,
 729 F.3d 108 (2d Cir. 2013) ............................................................ 23, 29

*In re Visa Check/MasterMoney Antitrust Litig.*,
 280 F.3d 124 (2d Cir. 2001) ............................................................ 28

*Jermyn v. Best Buy Stores, L.P.*,
 256 F.R.D 418 (S.D.N.Y. 2009).......................................................... 28

*Johns v. Bayer Corp.*,
 280 F.R.D 551 (S.D. Cal. 2012)......................................................... 25

*Keegan v. Am. Honda Motor Co., Inc.*,
 284 F.R.D. 504 (C.D. Cal. 2012) ....................................................... 24

*Makaeff v. Trump Univ., LLC*,
 No. 10-9402014, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ................ 24

*Marcus v. AT&T*,
 138 F.3d 46 (2d Cir. 1998) .............................................................. 28

*Marisol A. v. Giuliani*,
 126 F.3d 372 (2d Cir. 1997) ............................................................ 21

*Martens v. Smith Barney, Inc.*,
 181 F.R.D. 243 (S.D.N.Y. 1998)......................................................... 16

*Morris v. Affinity Health Plan, Inc.*,
 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................. 18

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972) ............................................................ 17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
 85 N.Y.2d 20 (N.Y. 1995)................................................................ 28

*Plummer v. Chemical Bank*,
 668 F.2d 654 (2d Cir. 1982) ............................................................ 15

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) .................................... 21

*Rikos v. Procter & Gamble Co.*,
  No. 14-4088, 2015 WL 4978712 (6th Cir. Aug. 20, 2015) ..................... 24

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) .................................... 24

*Seekamp v. It's Huge, Inc.*,
  No. 09-18, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ..................... 28

*Seijas v. Republic of Argentina*,
  606 F.3d 53 (2d Cir. 2010) .................................... 29

*State of N.Y. by Vacco v. Reebok Intern. Ltd.*,
  903 F. Supp. 532 (S.D.N.Y. 1995) .................................... 20

*Sykes v. Mel Harris & Assocs. LLC*,
  285 F.R.D. 279 (S.D.N.Y. 2012) .................................... 27, 28

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) .................................... 27, 28

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) .................................... 23

*Teachers' Ret. Sys. v. A.C.L.N.*, Ltd.,
  No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................. 18

*Thompson v. Metropolitan Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .................................... 17

*Traffic Executive Ass'n*,
  627 F.3d 631 (2d Cir. 1980) .................................... 13

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) .................................... 23

*County of Suffolk v. Long Island Lighting Co.*,
  907 F.2d 1295 (2d Cir. 1990) .................................... 14

*Wal-Mart Stores v. Visa U.S.A.*,
  396 F.3d 96 (2d Cir. 2005) .................................... 12, 13

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ................................................................. 12

**Statutes**

Cal. Bus. & Prof. Code § 17200 .......................................................... 2, 6

Cal. Bus. & Prof. Code § 17203 ............................................................ 26

Cal. Bus. & Prof. Code § 17500 .......................................................... 2, 6

Cal. Civ. Code § 1750 ........................................................................... 2, 6

Cal. Civ. Code § 1780 ........................................................................... 2, 6

Fla. Stat. § 501.201 .............................................................................. 2, 6

N.Y. GBL § 349 ............................................................................... passim

**Rules**

Fed. R. Civ. P. 23 ............................................................................ passim

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632 (2004) ..................... 5, 12

Manual for Complex Litigation (Third) § 30.42 (1995) ........................... 13

Newberg on Class Actions § 11.25 (4th ed. 2002) ............................. 12, 13

Newberg on Class Actions § 11.41 (4th ed. 2002) .................................. 12

Newberg on Class Actions § 3.13 (4th ed. 2002) .................................... 25

Plaintiffs Michael Goldemberg ("Goldemberg"), Annie Le ("Le"), and Howard Petlack ("Petlack") (collectively, "Plaintiffs"), individually and on behalf of the class (the "Class"), submit this Memorandum of Law in support of their uncontested motion for preliminary approval of a Joint Stipulation of Settlement ("Settlement Agreement") with Defendant Johnson & Johnson Consumer Companies, Inc. ("Defendant" or "J&JCC") (Plaintiffs and Defendant, collectively, the "Parties"), in this action, captioned above (the "Litigation").

To facilitate the settlement ("Settlement") and pursuant to the provisions of Federal Rule of Civil Procedure 23, Plaintiffs also ask the Court to schedule a Final Approval Hearing and direct that notice of the proposed Settlement Agreement and hearing be provided to Settlement Class members ("Settlement Class Members") in a manner consistent with the agreed-upon notice provisions in the Settlement Agreement.

As detailed below, the Court should preliminarily approve the Settlement Agreement because, among other things, it provides substantial benefits to Settlement Class Members, includes a comprehensive Notice Plan, and satisfies the requirements of Fed. R. Civ. P. 23(e).

## I.     INTRODUCTION

Plaintiffs allege that Defendant has engaged in labeling, marketing, and/or advertising its Aveeno Active Naturals brand of personal-care products (the "Product(s)") with prominent representations that the Products are "Active Naturals," as well as imagery and other representations that communicate a message to consumers that the Products have a natural quality. As alleged in the Second Amended Complaint ("Compl.," Dkt. 42), Defendant's labeling, marketing, and advertising of the Products is false and misleading, because the Products, far from being "natural," contain numerous synthetic, unnatural ingredients. Compl., ¶¶ 1-14.

Plaintiffs allege that J&JCC charges a premium for the Products over competing personal-care products based upon Defendant's false and misleading labeling, advertising, and pervasive representations that the Products are "natural." As alleged in the Second Amended Complaint, as a result of seeing these false and misleading representations, Plaintiffs and consumers bought the Products, paid more for the Products than they otherwise would have paid absent the wrongful conduct, and have been damaged as a result of the wrongful conduct. Compl. ¶¶ 19, 23, 27, 43, 47, 48, 75. Plaintiffs assert causes of action for violations of various state consumer fraud acts.[1] Compl., ¶¶ 63-146. Defendant denies that it has violated the applicable consumer-protection statutes and asserts that it has no liability to Plaintiffs.

After extensive and hard-fought litigation, which included motion practice and substantial discovery, and after a full-day mediation before Professor Eric D. Green of Resolutions, LLC, and significant following negotiations through Professor Green, Plaintiffs, on behalf of themselves and the Class, and Defendant have agreed to a proposed Settlement of the Litigation pursuant to the terms of the Settlement Agreement, dated May 22, 2017. In exchange for the release of all claims asserted in the Litigation by Plaintiffs and the Settlement Class, Defendant has agreed to establish a non-reversionary settlement fund ("Settlement Fund") in the amount of $6,750,000.00 by depositing into escrow within 10 days of the Preliminary Approval Order, funds sufficient to cover the Notice and Claims Administration Expenses, and within 10 days of the Final Approval Order, the entire Settlement Fund, less any amount previously

---

[1] The Second Amended Complaint asserts claims under New York General Business Law ("GBL") § 349; the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201, *et seq.*, as well as a claim for breach of express warranty under New York common law, breach of express warranty under California common law, and intentional misrepresentation under New Jersey common law.

funded. Defendant has agreed to pay those Settlement Class Members who submit valid Claim Forms $2.50 for each purchase of a Covered Product for up to 20 Covered Products purchased during the Class Period defined in the Agreement, without the need to present Proof of Purchase. Settlement Class Members must provide valid Proof of Purchase for all Covered Products claimed that exceed 20 Covered Products. There is no maximum number of Covered Products for which any Settlement Class Member may claim with Proof of Purchase. Thus, the proposed Settlement offers substantial benefits to millions Settlement Class members and avoids the delay, expense, and risks inherent in litigating claims through trial and appeal. Defendant has also agreed, subject to court approval, that a service award to each named Plaintiff of up to $10,000 and attorney's fees and expenses of up to 33% of the Settlement Fund may be paid from the Settlement Fund.

In addition to monetary relief, J&JCC agrees to remove the term "Active Naturals" from the front label of all in-market Covered Products and, if the term "Active Naturals" remains on the back or side of the label and if the product is not comprised entirely of naturally-derived ingredients, to include language on the back or side of the label that the Covered Products contain both naturally derived and non-naturally derived ingredients.

The proposed Settlement also provides for payment of any residual amount (*i.e.*, after paying valid claims, including any *pro rata* increase in payments to class members with valid claims, Notice and Administration Expenses, Attorneys' Fees and Expenses, Service Awards, and any other claim, cost, or fee specified by the proposed Settlement) to the Rose Foundation for Communities and the Environment (https://rosefdn.org) as a *cy pres* recipient.

The Parties conducted extensive formal discovery relating to representations made by Defendant in labeling, advertising, and marketing the Covered Products. They served and

responded to numerous sets of interrogatories and document requests, which resulted in the production of thousands of pages of documents from parties and non-parties. Seven witnesses were deposed, including two J&JCC employees, the three Plaintiffs, and two experts. Plaintiffs' counsel have analyzed the evidence obtained during discovery and have researched the applicable law with respect to the claims of Plaintiffs and the other Class members against J&JCC and the potential defenses thereto.

Information Plaintiffs obtained through formal and informal discovery guided their assessment of the strength of the claims and defenses asserted, the potential damages incurred by the Class, as well as the fairness of the Settlement. Following numerous, detailed discussions, as well as a full-day mediation session and follow-up before a third-party mediator, the Parties entered into the Settlement Agreement (attached as Exhibit A to the Declaration of Todd S. Garber ("Garber Decl.")) to resolve all claims asserted in this Litigation.

Plaintiffs therefore respectfully seek entry of an order that will (1) preliminarily approve the Settlement; (2) direct that notices be given to all Settlement Class members of the Settlement in the form, method, and manner set forth in the proposed Preliminary Approval Order (attached as Exhibit 2 to the Settlement Agreement); (3) find that such notices constitute the best notices practicable under the circumstances; (4) schedule various dates by which the Parties and Settlement Class members must take certain action (*e.g.*, submit proof of claims, request exclusion from the Settlement Class, and object to the Settlement) as more fully described in the proposed Preliminary Approval Order; and (5) set a hearing date for the final approval of the proposed Settlement, an award of attorneys' fees and expenses, and the grant of service awards to Plaintiffs.

Plaintiffs submit that the Court has good cause to grant preliminary approval of this Settlement, which is the product of arm's-length negotiations by experienced counsel aided by an

independent mediator. The resulting Settlement is a fair, reasonable, and adequate resolution of all claims. Preliminary approval of the Settlement will allow the Parties to notify Settlement Class members of the Settlement and of their rights, among others, to submit a claim, object to the Settlement, or request to be excluded from the Settlement Class. Preliminary approval does not require the Court to rule on the ultimate fairness of the proposed Settlement, but only to make a "preliminary determination" of the "fairness, reasonableness, and adequacy" of the proposed Settlement. *See* Federal Judicial Center, Manual for Complex Litigation (Fourth) § 21.632 (2004). The Court should order notice of the Settlement to be sent to Settlement Class members, as the Settlement, for the reasons discussed further below, is fair, reasonable, and adequate, and the proposed form and distribution of the notices is the best notice practicable under the circumstances and comports with due process.

## II. BACKGROUND OF THE ACTION

Plaintiff Goldemberg filed a putative class action complaint (Dkt. 1) on May 7, 2013, docketed as Case No. 7:13-cv-3073-NSR-LMS, against J&JCC in the United States District Court for the Southern District of New York. The Complaint raised a cause of action against Defendant for deceptive acts or practices in violation of New York GBL § 349, as well as claims for breach of express warranty and unjust enrichment under New York common law.

On October 9, 2013, pursuant to the Court's briefing schedule, Defendant filed its Motion to Dismiss for Failure to State a Claim (Dkt. 9), and Goldemberg filed his Opposition to Defendant's Motion to Dismiss (Dkt. 12).

On March 27, 2014, with the exception of Goldemberg's unjust enrichment claim, this Court issued an Order denying Defendant's Motion to Dismiss (Dkt. 20). *See Goldemberg v. Johnson & Johnson Consumer Cos.*, No. 13-3073 at 9 (S.D.N.Y. Mar. 27, 2014).

On June 26, 2014, the Court appointed Goldemberg as Interim Lead Plaintiff and appointed FBFG and Reese Richman LLP as Interim Co-Lead Class Counsel (Dkt. 34). On July 16, 2014, Goldemberg, joined by Plaintiffs Le and Petlack, filed an Amended Complaint (Dkt. 37) in the United States District Court for the Southern District of New York. In addition to the three claims arising under New York GBL § 349 and common law, the Amended Complaint raised six causes of action against Defendant:

   a.    intentional misrepresentation under New Jersey common law;

   b.    false advertising in violation of the California FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*;

   c.    unfair and unlawful business acts or practices in violation of the California UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*;

   d.    unfair methods of competition and unfair or deceptive acts or practices in violation of the California CLRA, Cal. Civ. Code § 1750 *et seq.*;

   e.    breach of express warranty under California common law; and

   f.    unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the FDUPTA, Fla. Stat. § 501.201 *et seq.*

On August 29, 2014, Plaintiffs Goldemberg, Le, and Petlack filed a Second Amended Complaint (Dkt. 42), which raised the same causes of action as the Amended Complaint, with the exception of the claim for intentional misrepresentation under New Jersey common law, and with the addition of a claim for breach of express warranty under Florida common law.

On December 18, 2015, following fact discovery (including depositions of all three named plaintiffs), expert discovery, and extensive briefing, Plaintiffs filed their Notice of Motion for Class Certification (Dkt. 69) and Memorandum of Law in Support (Dkt. 70), and Defendant filed its Opposition (Dkt. 73). Plaintiffs sought to certify three statewide classes of individuals who purchased products in New York, California, and Florida during the class period. In support of certification, Plaintiffs proffered a damages model proposal prepared by damages expert Dr.

Jean-Pierre H. Dubé. On January 19, 2016, Defendant filed a Motion in Limine To Exclude The Expert Report of Dr. Jean-Pierre H. Dubé, which Plaintiffs opposed. (Dkt. 80-84).

On October 4, 2016, the Court issued a 47-page opinion certifying this case for class treatment and denying Defendant's *Daubert* motion. (Dkt. 98). *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 (S.D.N.Y. 2016).

On October 18, 2016, Defendant filed a Second Circuit petition to appeal the class certification ruling pursuant to Federal Rule of Civil Procedure 23(f), which Plaintiffs opposed. On January 18, 2017, the Second Circuit denied the petition for leave to appeal.

Throughout this Action, the Parties engaged in extensive motion practice. Aside from the motion to dismiss the Action, the Parties fully briefed Plaintiffs' motion for appointment of interim lead counsel and their motion for class certification and J&JCC's opposition thereto.

Plaintiffs have been actively protecting claims in the interests of the class. Each of the three named Plaintiffs has responded to written discovery requests. They have produced documents relating to their purchases of Defendant's Products, and they each sat for depositions. Each also demonstrated an understanding of both the basis of the claims and the role of a class representative.

On January 6, 2017, the Parties engaged in a full-day mediation session before Professor Eric D. Green of Resolutions, LLC. That mediation was followed by weeks of continued negotiation through the mediator. It was only after extended arm's-length negotiations under the auspices of Professor Green that the Parties reached an agreement in principle with respect to a compromise and settlement of the claims raised in the Litigation. This agreement (Exhibit A to the Garber Decl.) is before this Court for preliminary approval.

## III.  SUMMARY OF THE SETTLEMENT

The gravamen of the Litigation is that J&JCC has engaged in a widespread, uniform marketing campaign to mislead consumers about the nature of the ingredients of its personal-care products sold under the "Aveeno" brand and labeled as "Active Naturals." Compl. ¶ 1-2. Plaintiffs allege that Defendant has used advertising and representations on its website, www.aveeno.com, to reinforce the message that the Covered Products are "natural" when, in fact, they contain unnatural, synthetic ingredients. *Id*.

As part of the consideration for the Settlement Agreement, J&JCC will establish a non-reversionary Settlement Fund in the amount of $6,750,000.00, which Defendant will deposit into escrow as follows: by depositing within 10 days of the Preliminary Approval Order funds sufficient to cover the Notice and Claims Administration Expenses, and depositing within 10 days of the Final Approval Order the entire Settlement Fund, less any amount previously funded. Any and all service awards, attorneys' fees and expenses, and escrow charges and taxes related to the Settlement Fund will be paid out of the Settlement Fund. Defendant has agreed to take no position on an application by Plaintiffs' counsel to the Court for an award of fees and costs up to 33% of the Settlement Fund, and to pay Plaintiffs of service awards of $10,000 each in recognition of their time and effort in this Litigation, subject to Court approval.

Pursuant to the Settlement Agreement, a Settlement Class Member is eligible to receive $2.50 for each purchase of a Covered Product for up to 20 Covered Products purchased during the Class Period defined in the Settlement Agreement, without the need to present Proof of Purchase. Proof of Purchase is required for all Covered Products claimed that exceed 20 Covered Products. There is no maximum number of Covered Products for which any Settlement Class Member may claim with Proof of Purchase. To receive a payment award, each claimant must

submit a valid and timely Claim Form (Exhibit 5 of the Settlement Agreement) either by mail or electronically. The actual amount paid to individual claimants will depend upon the number of valid claims made. The total value of the proposed Settlement is $6,750,000.00.

If, after the Claim Period has ended and all Claims have been calculated, the total amount of the timely, valid, and approved eligible claims submitted by Settlement Class Members exceeds the available relief, considering any fees, payments, and costs set forth in the Settlement Agreement that must also be paid from the Settlement Fund, each eligible Settlement Class Member's initial claim amount will be proportionately reduced on a *pro rata* basis, such that the aggregate value of the cash payments does not exceed the Settlement Fund balance. If the total amount of the timely, valid, and approved eligible claims submitted by Settlement Class Members results in there being any remaining value in the Settlement Fund, it will be used to increase eligible Settlement Class Members' relief on a *pro rata* basis such that Settlement Class Members will receive an additional increased payment of up to 100% of the eligible class Members' initial claim amount. Thus, if the Settlement Class Member submitted an initial claim of $50.00 and sufficient funds are remaining, the Settlement Class Member could receive up to a $100.00 payment from the Settlement Fund. The Settlement Administrator will determine each authorized Settlement Class Member's *pro rata* share based upon each Settlement Class Member's Claim Form and the total number of valid claims.

If the Settlement Fund is not exhausted after paying all valid Claims, including any *pro rata* increase in such payments, Notice and Administration Expenses, Attorneys' Fees and Expenses, Service Awards, and any other claim, cost, or fee specified by the proposed Settlement, the residual amount shall be distributed to the Rose Foundation for Communities and the Environment (https://rosefdn.org) as a *cy pres* recipient.

As additional consideration for the Settlement Agreement, J&JCC agrees to remove the term "Active Naturals" from the front label of all in-market Covered Products, where applicable, and if the term "Active Naturals" remains on the back or side of the label and if the product is not comprised entirely of naturally-derived ingredients, J&JCC agrees to include language on the back or side of the label that the Covered Products contain both naturally derived and non-naturally derived ingredients.

The Settlement Agreement and proposed Preliminary Approval Order envision two different forms of notice to inform Settlement Class members of the proposed Settlement:

1) a Short-form Notice, which will provide the web address of the Settlement Website (described below) and a telephone number for the Settlement Administrator; include the class definition; briefly describe the relief available to the Settlement Class members; and inform Settlement Class members of the right to object and/or opt-out of the Settlement Class and the deadlines to exercise these rights. The Short-form Notice will be published via internet notice, directed website notice, and national publication notice, including on the Settlement Website.

2) a Long-form Notice, to be posted on the Settlement Website, which will describe the Litigation and the Settlement; inform Settlement Class members that they may be eligible to receive relief; state that any award to Settlement Class members is contingent on the Court's final approval of the Settlement Agreement; explain that any judgment or orders entered in the Litigation, whether favorable or unfavorable to the Settlement Class, will include and be binding on all Settlement Class members who have not been excluded; state the identity of Class Counsel and the amount sought in attorneys' fees and expenses; and describe the procedures for participating

in, opting out of, or objecting to the Settlement.

Forms of these notices are attached as Exhibits 3 and 4 to the Settlement Agreement. *See* Garber Decl., Exhibit A. Settlement Class members can also request paper copies of the Class Notice and a claim form ("Claim Form").

The claims procedure is simple and convenient. Each Settlement Class Member will sign and submit a Claim Form (Exhibit 5 to the Settlement Agreement) that states, to the best of his or her knowledge, the total number and type of purchased Covered Products, and location of the claimant's purchases. The claimant will sign the Claim Form under an affirmation.

Claim Forms will be distributed as part of the Notice Program described above and available for download from the Settlement Website, where claimants will also be able submit completed Claim Forms. In addition, the Settlement Administrator will mail or email Claim Forms to Settlement Class Members upon request.

In return for making these Settlement benefits available to all Settlement Class members, the Class Representatives' claims against Defendant will be dismissed with prejudice, and all Settlement Class members (other than those who properly request to be excluded from the Class) will release and be permanently barred from pursuing any "Released Claims" against Defendant and other "Released Parties" in accordance with the provisions of the Settlement Agreement and the proposed Order and Judgment to be entered upon final approval of the Settlement. A copy of the proposed Order and Judgment is attached as Exhibit 1 to the Settlement Agreement.

All Parties have investigated the facts and analyzed the relevant legal issues. While Plaintiffs believe the claims asserted have merit, Defendant disputes the factual allegations made by Plaintiffs and denies liability with respect to any of the claims alleged by Plaintiffs. Plaintiffs have weighed the costs and benefits to be obtained under the Settlement Agreement, including

revision of the Covered Products' labels, as balanced against the costs, risks, and delays associated with the continued prosecution of this complex and time-consuming Litigation and the likely appeals of any rulings in favor of either the Class or Defendant. As a result, Plaintiffs believe that the Settlement Agreement provides substantial benefits to the Class and is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class. Against this backdrop, and in the interest of avoiding protracted and costly litigation, the Parties have agreed to the proposed Settlement.

## IV.  STANDARDS FOR APPROVAL OF A CLASS ACTION SETTLEMENT

Compromise and settlement of class actions suits is favored. *See Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (affirming approval of class action settlement and emphasizing "strong judicial policy in favor of settlements, particularly in the class action context") (quotation omitted); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate. There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (affirming approval of class settlement (citation omitted).

At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the settlement may be given to the class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the settlement. *See* Newberg § 11.25; Manual for Complex Litigation §21.632. The Court's responsibility is to find that there is "'probable cause' to submit the

[settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.3d 631, 634 (2d Cir. 1980); Newberg § 11.25 (stating that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and [it] appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members). Moreover, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Therefore, "[a] proposed settlement of a class action should . . . be preliminarily approved where it 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval'." *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (granting preliminary approval and quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997) (granting preliminary approval)); *see also Danieli v. IBM*, No. 08-3688, 2009 WL 6583144, at *4-5 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where settlement "has no obvious defects" and proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted."); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) (where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement").

## V. THE COURT SHOULD GRANT PRELIMINARY
## APPROVAL TO THE SETTLEMENT AGREEMENT

The Second Circuit has identified nine factors that should be considered in determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted); *see also County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323-24 (2d Cir. 1990). As applied here, these factors weigh heavily in favor of preliminarily approving the Settlement.

### A. The Action Is Complex And Will Be Expensive And Lengthy.

The Settlement Agreement provides substantial monetary, and non-monetary, benefits to the Class while avoiding the significant expenses, delays, and risks attendant to motion practice related to summary judgment, not to mention trial. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). While Plaintiffs are confident that they will defeat any summary judgment motions, Defendant believes otherwise. The ultimate outcome of the Litigation, if litigated further, is not certain. Moreover, a fact-intensive trial would require the Court's time and resources, and would result in significant expenses to the Parties as well. Any final judgment would likely be appealed, further increasing the expense and duration of the Litigation. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Class. Thus, this factor weighs in

favor of settlement.

**B.      The Reaction Of The Class Will Likely Be Positive.**

While the reaction of absent Class members cannot be conclusively gauged until notice has

been sent, the fact that Plaintiffs and their experienced counsel support the Settlement Agreement is a

strong indication that members of the Class will also view it positively.

**C.      The Current Stage Of The Instant Litigation And The Extensive Discovery That Has Occurred Favor Preliminary Approval.**

The Litigation has been pending for almost four years. Numerous legal issues in this

Litigation have been thoroughly vetted through motions to dismiss that were fully briefed. The

Parties also fully briefed other motions, such as Plaintiffs' motion for appointment of interim

lead counsel and motion for class certification. Aside from engaging in extensive motion

practice, the Parties also obtained substantial discovery in the Action (as noted above).

Given the extent of motion practice and discovery that preceded and informed the

settlement negotiations, preliminary approval of the proposed Settlement is warranted. *See In re*

*Currency Conversion Fee Antitrust Litig.*, MDL No. 01-1409, 2006 WL 3247396, at *5

(S.D.N.Y. Nov. 8, 2006) (granting preliminary approval where "[t]he parties have developed a

familiarity with the details of the case by conducting significant discovery and engaging in

motion practice . . . ."); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d

at 176 ("'To approve a proposed settlement, the Court need not find that the parties have

engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient

investigation of the facts to enable the Court to intelligently make . . . an appraisal of the

Settlement.' Additionally, 'the pretrial negotiations and discovery must be sufficiently

adversarial that they are not designed to justify a settlement  . . . [but] an aggressive effort to

ferret out facts helpful to the prosecution of the suit'.") (citing *Plummer v. Chemical Bank*, 668

F.2d 654 (2d Cir. 1982), and quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

**D.    Plaintiffs Face Substantial Hurdles In Establishing Liability.**

The Settlement Agreement should be preliminarily approved, because Plaintiffs face substantial hurdles establishing liability. Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (approving settlement). Among other issues, J&JCC contends that individual understandings of "Active Naturals" and causation dominate. J&JCC further contends that Plaintiffs cannot establish damages by class-wide proof. J&JCC further contends that Plaintiffs are inadequate class representatives. Based on these and other defenses raised by J&JCC, whether the claims asserted herein meet the prerequisites of Rule 23(a) and (b)(3), including whether the lawsuit would be manageable for purposes of a trial on the merits, is contested. While Plaintiffs' counsel are confident in their ability to prove Plaintiffs' (and the Class's) claims, the Settlement Agreement nonetheless avoids the risks inherent in further litigation, and therefore this factor weighs in favor of preliminary approval.

**E.    Factors Related To Difficulties In Proving Damages, Maintaining The Class Action Through Trial, And The Ability Of Defendant To Pay A Judgment Are The Only Factors That Do Not Heavily Weigh In Favor Of Approving The Proposed Class Settlement.**

Putting aside the substantial difficulties that Defendant contends Plaintiffs face in establishing liability, Plaintiffs do not expect significant hurdles in proving each Class member's damages or in maintaining the class action through trial. Nor are Plaintiffs concerned that Defendant cannot pay a substantial judgment. However, "[i]n finding that a settlement is fair, not every [*Grinnell*] factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances'." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456

(S.D.N.Y. 2004) (approving settlement and quoting *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (approving settlement)). Moreover, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178 n.9.

**F.  The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation.**

Settlement Class members stand to receive $2.50 for each purchase of a Covered Product for up to 20 Covered Products purchased during the Class Period defined in the Settlement Agreement, without the need to present Proof of Purchase. Settlement Class Members must provide valid Proof of Purchase for all Covered Products claimed that exceed 20 Covered Products. There is no maximum number of Covered Products for which any Settlement Class Member may claim with Proof of Purchase. Such a substantial recovery merits approval of the proposed Settlement, particularly in light of the time and uncertainty involved in continued class litigation and inevitable appeals.

Judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken & Assocs. Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972) (approving settlement for $5 million where potential liability was $35 million). Even where a settlement is for substantially less than the maximum potential recovery, approval may be appropriate. *See Grinnell Corp.*, 495 F.2d at 455 n. 2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even an thousandth part of a single percent of the potential recovery."); *see also*

*Chambery v. Tuxedo Junction, Inc.*, No. 12-6539, 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) ("[A] $200,000 settlement is reasonable where the potential recovery is $3 million, especially when taking into consideration Defendant's financial position and the risks of litigation."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (approving settlement of $2.5 million over objection that best possible recovery was $125 million); *Cagan v. Anchor Sav. Bank FSB*, No. 88-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where maximum potential recovery was approximately $121 million).

Here, Settlement Class members who submit valid claims without Proof of Purchase stand to receive $2.50 for each purchase of a Covered Product for up to 20 Covered Products purchased during the Class Period defined in the Agreement. Claimants who provide valid Proof of Purchase for all Covered Products claimed that exceed 20 Covered Products stand to receive $2.50 for each purchase of a Covered Product. There is no maximum number of Covered Products for which any Settlement Class Member may claim with Proof of Purchase. The individual amounts Settlement Class members will receive may be substantial depending on how many Covered Products a Settlement Class member claims and whether the claimant can produce Proof of Purchase. On the other hand, Defendant could prevail on its legal arguments to defeat liability, resulting in no recovery for Settlement Class members. Given this broad range of possible damages, the Settlement Agreement falls well within the range that courts have traditionally found to be fair and adequate under the law.

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to

Class members now, not some speculative payment of a hypothetically larger amount years down the road. Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility—little or no recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)).

Therefore, evaluated collectively, these nine factors militate in favor of preliminarily approving the Settlement Agreement.

## VI.     THE PROPOSED CLASS NOTICE IS APPROPRIATE

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule also requires that any such notice clearly and concisely state, in plain and easily understood language, the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(b)(2)(B).

As described in the Notice Program set forth in Exhibit 6 to the Settlement Agreement, Plaintiffs propose to effect notice to the Settlement Class via internet notice, directed website notice, and national publication notice. These are the best notices practicable in the circumstances *See In re Platinum and Palladium Commodities Litig.*, No. 10-3617, 2014 WL 3500655, at *14 (S.D.N.Y. July 15, 2014) ("Given the greater difficulties in contacting Physical Class members, the proposed publication notice is the best practicable notice plan under the

circumstances."); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118,123–24 (S.D.N.Y. 2001) (S.D.N.Y. 2001) (finding publication notice to "lapsed policy" subclass in policyholders' class action against life insurer reasonable and sufficient because insurer had determined that 85% of applications for lapsed policies were irretrievable, illegible, or destroyed, and only half of total notifiable lapsed policyholders were class members anyway); *State of N.Y. by Vacco v. Reebok Intern. Ltd.*, 903 F. Supp. 532, 533 (S.D.N.Y. 1995) (holding, in *parens patriae* anti-trust action, that publication notice "was plainly the best notice practicable under the circumstances given the enormous number of potential class numbers who had purchased products, the lack of warranty cards to identify customers, and the high costs of individual notice"); *In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y. 2009) ("The best practicable notice under the circumstances is notice by publication in newspapers. In view of the millions of members of the class, notice to class members by individual postal mail, email, or radio or television advertisements, is neither necessary nor appropriate."); *In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 350–51 (E.D.N.Y. 2000) (holding that notice published in national magazines and newspapers and on internet "met the requirements of Rule 23 and of due process under all of the circumstances, including the unusual context of the joint litigation and proposed settlement involving private plaintiffs and the States, the inordinate expense of providing individual notice, the unfeasibility of individual actions or recoveries by consumers, and the joint interests of the class members").

Further, the proposed Settlement requires the Settlement Administrator to create a Settlement website which will, among other things, contain the Class Notice (Exhibit 3 to the Settlement Agreement). The Class Notice, which Settlement Class members can also obtain directly from the Settlement Administrator, provides a detailed description of the proposed

Settlement, the requests by Class Counsel and the Class Representatives for an award of fees and expenses and service awards, respectively, and Settlement Class members' various rights and options.

Plaintiffs respectfully submit that, under the circumstances, the Notice Program constitutes the best practicable notice under Federal Rule of Civil Procedure 23(c)(2)(B). Therefore, Plaintiffs respectfully request that the Court approve the form of each notice attached as Exhibits 3 and 4 to the Settlement Agreement (Garber Decl., Exhibit A).

## VII.   THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS

The Court issued an opinion on October 4, 2016 that certified this matter for class treatment in regard to the specific Aveeno Active Naturals Products purchased by Plaintiffs. However, the Parties have stipulated that the Settlement will include all of the Aveeno "Active Naturals" products sold nationwide and in U.S. territories. *See* Settlement Agreement ¶ 36. Accordingly, the Court should conditionally certify the class.

Under Federal Rule 23(c)(1), "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Ayzelman v. Statewide Credit Services Corp.*, 238 F.R.D. 358, 362 (E.D.N.Y. 2006) (citation and quotation marks omitted). "Certification of a class for settlement purposes only is permissible and appropriate." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citation omitted). Where a class is proposed in connection with a motion for preliminary approval, "a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). Courts employ a "'liberal rather than restrictive construction' of Rule 23, 'adopt[ing] a standard of flexibility' in deciding . . . certification." *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997).

Plaintiffs seek the conditional certification of the following Class under Rules 23(a) and 23(b)(3) for purposes of effectuating the Settlement:

> all persons who purchased Covered Products during the Class Period within the United States, including the District of Columbia, and all U.S. territories, including Puerto Rico, Guam, and the Virgin Islands and each of their respective spouses, executors, representatives, heirs, successors, bankruptcy trustees, guardians, wards, agents, and assigns, and all those who claim through them or who assert duplicative claims for relief on their behalf, from May 7, 2007 to the date the Court enters the Preliminary Approval Order. Excluded from the Settlement Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

Because all of the certification requirements for settlement purposes are met and Defendant consents to conditional certification of a class action for settlement purposes only, Plaintiffs respectfully request that the Court conditionally certify the Class.

**A.      The Class Satisfies Rule 23(a).**

There are four Rule 23(a) requirements (numerosity, commonality, typicality, and adequacy).

**1.      The Class Is So Numerous That Joinder Of All Members Is Impracticable.**

As the proposed Settlement Class is broader than the Class the Court previously certified under Rule 23, numerosity is satisfied here. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members." (citation omitted)).

**2.      There Are Questions Of Law Or Fact Common To The Class.**

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class" for a suit to be certified as a class action. Fed. R. Civ. P. 23(a)(2). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues

of fact or law affect all class members. Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citations omitted).

Here, Plaintiffs contend that there is at least one overriding issue common to every Class member, namely whether it is deceptive to label the Covered Products with the very registered trademark by which the Products are known and prominently labeled — "Active Naturals" — or to use that phrase elsewhere on the label. Courts routinely find commonality when claims arise from a uniform misrepresentation. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("[F]raud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create no need for a series of mini-trials." (internal quotations and citations omitted)); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) ("A common question with respect to the second theory of liability is whether the [label] claim is false and/or misleading. The answer to this question is common to all class members, and is apt to drive the resolution of this litigation."); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (common question in a consumer class action is whether a product's manufacturer "defrauded purchasers" by making a specific claim on the product's label); *Guido v. L'Oreal, USA, Inc.*, No. 11-1067, 2013 WL 3353857, at 4* (C.D. Cal. July 1, 2013) (certifying a class under New York's GBL and finding that commonality is met when the "gravamen of plaintiffs' claims … is that Serum should have, but did not, contain flammability warning" and "[b]ecause Serum was packaged and sold uniformly across the nation").[2] As the Sixth Circuit has held in

---

[2] *C.f., Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012) (certifying class under California, Maryland, Illinois and New York consumer protection laws and holding

affirming the district court's finding of commonality, "Plaintiffs have identified a common question—whether Align is 'snake oil' and thus does not yield benefits to anyone—that will yield a common answer for the entire class and that, if true, will make P&G liable to the entire class." *Rikos v. Procter & Gamble Co.*, 2015 WL 4978712, at *5 (6th Cir. Aug. 20, 2015).

Moreover, since materiality is determined by an objective "reasonable consumer" standard, this issue is also common to the class. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 ("[T]he Supreme Court has held materiality 'is a question common to all members of the class' when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard." (citing *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013))).

Plaintiffs have therefore met the commonality requirement because there are questions of law and fact common to all members of the Settlement Class.

### 3. Plaintiffs' Claims Are Typical Of The Claims Of The Class.

Rule 23(a)(3) provides that the claims of the class representative must be "typical of the claims of . . . the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citation omitted). "When the same 'unlawful conduct was directed at both the named Plaintiffs and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims'." *D'Alauro v. GC Services Ltd. P'ship*,

---

that commonality is met when the claims of prospective class members involved the same alleged defect in washers sold by defendants containing the same key components); *Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (certifying class under California's UCL and CLRA, as well as New York's GBL § 349, and holding that commonality requirement was met in products liability action against automobile manufacturer because the claims of all prospective class members involved same alleged defect in vehicles of same make and model).

168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) (approving settlement and citing Newberg § 3.13 and *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)).

Typicality is met here, as Plaintiffs and the proposed Settlement Class assert exactly the same claims, arising from the same course of conduct, namely that J&JCC acted deceptively by uniformly labeling the Covered Products as "Active Naturals" when they contain synthetic ingredients, and that they were injured because they paid a premium price for a product that was not as advertised. These circumstances are essentially identical to *Ebin*, where Judge Rakoff found that plaintiffs who had purchased mislabeled olive oil products were typical of a nationwide class of purchasers, despite alleged differences with respect to their individual purchasing decisions. *See Ebin*, 297 F.R.D. at 566-67. *Johns v. Bayer Corp.* is also instructive:

> [T]he Men's Vitamin packages purchased by Plaintiffs and all class members prominently and repeatedly featured the identical 'supports prostate health' claim. Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and advertisements. The Court therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements.

*Johns*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (holding that typicality is met because plaintiffs and the proposed class "assert exactly the same claim, arising from the same course of conduct— [Defendant's] marketing campaign.").

Plaintiffs' interests align with the Class members' interests in that all Class members seek relief for being deceived by J&JCC when they purchased the Products. Therefore, Plaintiffs' claims are typical of the Classes they seek to represent.

### 4. Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class.

Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy, the Court must inquire as to whether "1) plaintiff's interests are antagonistic to the interest of other members of the class

{00285185 }

and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*, No. 11-6690, 2012 WL 5438849, at *8 (S.D.N.Y. Nov. 7, 2012) (quotation omitted).

Here, each of the named Plaintiffs has responded to written discovery requests, has produced documents to the extent they exist, and has sat for a deposition. Each has also demonstrated an understanding of the basis of the claims and the role of a class representative. *See* Garber Decl. ¶ 11. Nor is there any basis to contend that the interests of the named Plaintiffs are antagonistic to the classes; to the contrary, they all share the same statutory claims and are due damages accordingly. Therefore, Plaintiffs are more than adequate class representatives. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406-07 ("Lead plaintiffs have each demonstrated their commitment to pursuing these claims by responding to extensive written discovery requests and sitting for lengthy depositions. Further, each lead plaintiff testified he or she understands the requirements of serving as lead plaintiff, and wishes to move forward. Finally, nothing in the record suggests lead plaintiffs' interests are antagonistic to those of other class members.").

Accordingly, the Court should conclude that Plaintiffs will adequately represent the Class.

## B. The Class Satisfies Rule 23(b)(2).

Rule 23(b)(2) provides for class certification when "the party opposing the class has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief." Fed. R. Civ. P. 23(b)(2). Injunctive relief is expressly authorized for Plaintiffs' statutory claims under New York's GBL § 349, California's UCL and CLRA, and Florida's FDUTPA. *See* N.Y. GBL § 349(h); Cal. Bus. & Prof. Code § 17203; Cal. Civ. Code § 1780; Fla. Sta. § 501.211(1). "That plaintiffs are seeking substantial monetary damages is of no concern given [that Plaintiffs seek] certification of separate Rule 23(b)(2) and (b)(3) classes addressing

equitable relief and damages, respectively." *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012). *See also All Star Carts & Vehicles, Inc. v. BFI Income Fund*, 280 F.R.D. 78, 86 (E.D.N.Y. 2012) (same).

This Litigation qualifies as a class action under Rule 23(b)(2) because Defendant's uniform deceptive labeling generally applies to all Class members, the requested injunctive relief will be reasonably necessary and appropriate after Plaintiffs succeed on the merits, and the restitution sought is incidental to the requested injunctive relief. *See Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 97 (2d Cir. 2015) (affirming (b)(2) certification based on the "defendants' uniform filing of false affidavits in state court to fraudulently procure default judgments against putative class members").

Plaintiffs request injunctive relief prohibiting Defendant from continuing the unlawful practice of making deceptive "Active Naturals" representations. Such request can be satisfied with "indivisible" equitable relief that benefits all Class members at once, namely a prohibition on Defendant using the "Active Naturals" representation on its labels without additional disclosures. For the reasons set forth above, the Court should certify the Classes under Rule 23(b)(2) because injunctive relief for Plaintiffs and Class members is appropriate.

## C.     The Class Satisfies Rule 23(b)(3).

Rule 23(b)(3) provides that questions of law or fact common to class members must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In addition, Plaintiffs must demonstrate that "[a] class action is superior to other methods for fairly and efficiently adjudicating the controversy." *Id.*

### 1.     Common Questions Predominate Over Individual Issues.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521

U.S. 591, 623 (1997). Predominance thus requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds).

Common issues unquestionably predominate in this litigation. Indeed, the overriding common question is whether labeling the Covered Products as "Active Naturals" despite the presence of synthetic ingredients is deceptive. This is a binary issue, the resolution of which will be outcome-determinative for the entire Class, because deceptiveness is evaluated under the objective reasonable consumer standard. *See Marcus v. AT&T*, 138 F.3d 46, 64 (2d Cir. 1998) (N.Y. GBL § 349); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (N.Y. 1995) (same); *Makaeff v. Trump Univ., LLC*, No. 10-9402014, 2014 WL 688164, at **11, 13 (S.D. Cal. Feb. 21, 2014) (UCL, FAL, CLRA); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000) (FDUTPA). Thus, a jury would have decided for each Class, in its entirety, whether the "Active Naturals" label is deceptive or not for all the Products. *See Sykes*, 285 F.R.D. at 293 (certifying GBL § 349 claim where "[e]very potential class member's claim arises out of defendants' uniform, widespread practice" and therefore whether this practice violates GBL § 349 "does not depend on individualized considerations"), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d at 81 (2d Cir. 2015); *Seekamp v. It's Huge, Inc.*, No. 09-18, 2012 WL 860364, at *10 (N.D.N.Y. Mar. 13, 2012) (certifying GBL § 349 claim where the alleged legality of the representation was the "'gravamen of every class member's claim, and so may be proven on a class-wide level'" (quoting *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D 418, 435 (S.D.N.Y. 2009))).

Accordingly, the Court should find that the Class satisfies the commonality requirement of Rule 23(b)(3).

### 2. A Class Action Is A Fair And Efficient Method For Adjudicating This Controversy.

Rule 23(b)(3) also requires a determination as to whether a class action is the superior means to adjudicate the Class's claims. The Rule sets forth a list of relevant factors: class members' interest in bringing individual actions; the extent of existing litigation by class members; the desirability of concentrating the litigation in one forum; and potential issues with managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D). Here, each of the factors weighs in favor of certification.

Each Class member's interest in bringing his or her own case is negligible if not economically irrational, given that the fees and other litigation costs would quickly outstrip any potential recovery. When, as here, "proceeding individually would be prohibitive for class members with small claims . . . the class action device is frequently superior to individual actions." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415 (citing *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("Where proceeding individually would be prohibitive due to the minimal recovery, the class action device is frequently superior to individual actions.")); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130-31 ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery. Here, substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of 'time, effort and expense, and promote uniformity of decision'.") (quoting Fed. R. Civ. P. 23 advisory committee's notes)).

## VIII. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG") and The Richman Law Group ("RLG") should be appointed as Class Counsel. Rule 23(g) enumerates four factors for evaluating the adequacy of proposed counsel:

> (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).[3] All of these factors militate in favor of appointing FBFG and RLG as Class Counsel. FBFG and RLG are at the forefront of class action litigation concerning false and misleading labeling cases. *See* Garber Decl. ¶ 15; *see also* Richman Decl. ¶¶ 18-20. Moreover, FBFG has been appointed class counsel in numerous cases. *See* Garber Decl. ¶¶ 17-18; *see also id.*, Exhibit B. Finally, FBFG has more than sufficient resources to represent the Class. Garber Decl. ¶ 15. Therefore, Plaintiffs respectfully asks that this Court appoint FBFG and RLG as Class Counsel.

## IX. CONCLUSION

Plaintiffs respectfully request that the Court preliminarily approve the Settlement Agreement, approve the proposed notices and Claim Form, and enter the contemporaneously filed proposed Preliminary Approval Order.

---

[3] *See also deMunecas v. Bold Food, LLC*, No. 09-440, 2010 WL 2399345, at *3 (S.D.N.Y. Apr. 19, 2010) ("The work that [Plaintiff' counsel] has performed both in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests.").

Dated:    White Plains, New York
          May 26, 2017

                              **FINKELSTEIN, BLANKINSHIP, FREI-**
                              **PEARSON & GARBER, LLP**

                    By:       */s/ Todd S. Garber*
                              Todd S. Garber
                              D. Greg Blankinship
                              Jeremiah Frei-Pearson
                              Antonino B. Roman
                              445 Hamilton Ave, Suite 605
                              White Plains, New York 10601
                              Telephone: (914) 298-3290
                              tgarber@fbfglaw.com
                              gblankinship@fbfglaw.com
                              jfrei-pearson@fbfglaw.com
                              aroman@fbfglaw.com

                              Kim E. Richman
                              **RICHMAN LAW GROUP**
                              81 Prospect Street
                              Brooklyn, New York 11201
                              Telephone: (212) 687-8291
                              Facsimile: (212) 687-8292
                              krichman@richmanlawgroup.com

                              *Attorneys for Plaintiffs and the Settlement Class*