**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GOLDEMBERG, ANNIE LE, and HOWARD PETLACK, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>        v.<br><br>JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>               Defendant. | Civil Action No. 7:13-cv-3073-NSR-LMS<br><br>Hon. Nelson S. Román |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF UNCONTESTED MOTION FOR**
**ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD PAYMENTS**

{00287992 }

## <u>TABLE OF CONTENTS</u>

**Page No.**

TABLE OF AUTHORITIES ....................................................................................... ii

I.   INTRODUCTION ............................................................................................1

II.  THE COURT SHOULD APPROVE THE REQUESTED
     AWARD OF ATTORNEYS' FEES AND EXPENSES ....................................3

     A.   Class Counsel Is Entitled To Compensation
          Under Either The Percentage Method Or The
          Lodestar Method, But The Percentage Method Is Preferred ...................3

     B.   The Requested Fee Is Justified Under The Percentage Method ............6

          1.   The Time And Labor Expended By Counsel....................................7

          2.   The Magnitude And Complexity Of The Litigation .........................8

          3.   The Risk Of The Litigation...........................................................8

          4.   The Quality Of Representation .....................................................10

          5.   The Requested Fee In Relation To The Settlement .........................12

          6.   Public Policy Considerations .......................................................13

     C.   The Fee Is Justified Under The Lodestar/Multiplier Method ...............14

     D.   The Reaction Of The Class Is Overwhelmingly Favorable ...................17

III. THE EXPENSES INCURRED ARE REASONABLE AND
     WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED .............18

IV.  PLAINTIFFS ARE ENTITLED TO THE REQUESTED SERVICE AWARD...............19

V.   CONCLUSION...............................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adler v. Bank of America, N.A.*,
  No. 13-4866, Dkt. No. 89-1 (S.D.N.Y. Jan. 29, 2016)………………………………………...16

*Aros v. United Rentals, Inc.*,
  No. 10-73, 2012 WL 3060470 (D. Conn. July 26, 2012)...........................................................5

*Asare v. Change Grp. of New York, Inc.*,
  No. 12-3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)....................................................21

*Ault v. J.M. Smucker Co.*,
  310 F.R.D. 59 (S.D.N.Y. 2015)................................................................................................10

*Becher v. Long Island Lighting Co.*,
  64 F. Supp. 2d 174 (E.D.N.Y. 1999).......................................................................................12

*Beckman v. KeyBank, N.A.*,
  No. 12-7836, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013).......................................................6

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...................................................................................................................3

*Brazil v. Dole Packaged Foods, LLC*,
  660 Fed. Appx. 531 (9th Cir. 2016).........................................................................................9

*Bowman v. Wells Fargo Bank, N.A.*,
  No. 14-648, Dkt. No. 126 (S.D.N.Y. Feb. 13, 2017)..............................................................16

*Chin v. RCN Corp.*,
  No. 08-7349, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010)......................................................16

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)......................................................................................................8

*Clark v. Ecolab Inc.*,
  No. 04-4488, 2010 WL 1948198 (S.D.N.Y. May 11, 2010).....................................................21

*Comverse Tech., Inc. Sec. Litig.*, No. 06-1825,
  No. 06-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010).....................................................16

*deMunecas v. Bold Food, LLC*,
  No. 09-440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010).......................................................15

*Desai v. ADT Sec. Sys., Inc.*,
  No. 11-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) ............................................................ 13

*Dornberger v. Metropolitan Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001).......................................................................................... 21

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ...................................................... 6

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000)......................................................................................... 3, 6, 14

*Guippone v. BH S & B Holdings, LLC*,
  No. 09-1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) .................................................... 20

*Hageman v. AT & T Mobility LLC*,
  No. 13-50, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) ....................................................... 13

*Hairston v. South Beach Beverage Co.*,
  No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................................... 10

*Hayes v. Harmony Gold Mining Co.*,
  No. 08-03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ................................................ 6, 12

*Hernandez v. Merrill Lynch & Co., Inc.*,
  No. 11-8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ............................................... 6, 12

*Hicks v. Morgan Stanley*,
  No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................................ 4, 5

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................................................... 8

*In re China Sunergy Sec. Litig.*,
  No. 07-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011)............................................... 18, 19

*In re Crazy Eddie Securities Litig.*,
  824 F. Supp. 320 (E.D.N.Y. 1993)......................................................................................... 13

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  No. 02-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................Passim

*In re Gilat Satellite Networks, Ltd.*,
  No. 02-1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)................................................... 12

*In re HIKO Energy LLC Litigation,*
   No. 14-1771, Dkt. No. 93 (S.D.N.Y. May 9, 2016) ................................................ 16

*In re Hi-Crush Partners L.P. Securities Litig.,*
   No. 12-8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................ 10, 16, 19

*In re Lloyd's Am. Tr. Fund Litig.,*
   No. 96-1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ...................................... 9

*In re Marsh Erisa Litig.,*
   265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................... 6, 12

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
   No. 02-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................................ 19

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
   187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................... 15

*In re Nissan Radiator/Transmission Cooler Litig.,*
   No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ...................................... 16

*In re PaineWebber Ltd. P'ships Litig.,*
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................... 8

*In re Polaroid,*
   No. 03-8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) .................................... 5, 6, 7, 21

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
   912 F. Supp. 97 (S.D.N.Y. 1996) ...................................................................... 17

*In re Rite Aid Corp. Sec. Litig.,*
   396 F.3d 294 (3d Cir. 2005) .......................................................................... 18

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.,*
   No. 09-2102, 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) .................................... 18

*In re Sumitomo Copper Litig.,*
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................ 4

*In re Telik, Inc. Sec. Litig.,*
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..............................................................Passim

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
   724 F. Supp. 160 (S.D.N.Y. 1989) .................................................................. 15

*In re Veeco Instruments Inc. Sec. Litig.,*
  No. 05-01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............................................. 4, 9, 19

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.,*
  364 F. Supp. 2d 980 (D. Minn. 2005) ..................................................................... 17

*Johnson v. Brennan,*
  No. 10-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .................................................. 21

*Kosta v. Del Monte Foods, Inc.,*
  308 F.R.D. 217 (N.D. Cal. 2015) .......................................................................... 10

*Masters v. Wilhelmina Model Agency, Inc.,*
  473 F.3d 423 (2d Cir. 2007) .............................................................................. 5

*Matheson v. T-Bone Rest., LLC,*
  No. 09-4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) .................................................. 21

*McDaniel v. County of Schenectady,*
  595 F.3d 411 (2d Cir. 2010) .............................................................................. 5

*Missouri v. Jenkins,*
  491 U.S. 274 (1989) ..................................................................................... 15

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
  No. 06-4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ................................................... 6

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.,*
  No. 11-520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ..................................................... 15

*Randolph v. J.M. Smucker Co.,*
  303 F.R.D. 679 (S.D. Fla. 2014) ......................................................................... 10

*Reed v. Friendly's Ice Cream, LLC,*
  No. 15-298, Dkt. No. 105 (M.D. Pa. Jan. 31, 2017) ...................................................... 16

*Reyes v. Altamarea Grp., LLC,*
  No. 10-6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ................................................... 21

*Reyes v. Buddha-Bar NYC,*
  No. 08-2494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) .................................................... 21

*Ries v. Arizona Beverages USA LLC,*
  No. 10-1139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ................................................... 8

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ................................................................ 20

*Rooney v. Cumberland Packing Corp.*,
   No. 12-33, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ........................... 10

*Spicer v. Pier Sixty LLC*,
   No. 08-10240, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) .................... 15

*St. Joseph Health System Medical Information Cases*,
   JCCP No. 4716 (Cal. Sup. Ct. Feb. 3, 2016) ........................................... 16

*Steiner v. Williams*,
   No. 99-101186, 2001 WL 604035 (S.D.N.Y. May 31, 2001) ...................... 4

*Sukhnandan v. Royal Health Care of Long Island LLC*,
   No. 12-4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ................. 13, 20

*Taft v. Ackermans*,
   No. 02-7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...................... 8, 10

*Maley v. Del. Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..........................................Passim

*Torres v. Gristede's Operating Corp.*,
   519 Fed. Appx. 1 (2d Cir. 2013) ................................................................ 5

*Torres v. Gristede's Operating Corp.*,
   No. 04-3316, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ...................... 20

*Viafara v. MCIZ Corp.*,
   No. 12 7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ........................ 19

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ...................................................... 10

*Villanueva v. Wells Fargo Bank, N.A.*,
   No. 13-5429 (S.D.N.Y. Feb. 13, 2017) .................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..................................................................... 5, 8

*Whittenburg v. Bank of America, N.A.*,
   No. 14-947 (S.D.N.Y. July 20, 2016) ...................................................... 16

*Wright v. Stern,*
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ..................................................................... 21

*Yuzary v. HSBC Bank USA, N.A.*, No.,
   No. 12-3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ....................................... 20

*Yoeckel v. Marriott International, Inc.*,
   No. 703387/2015 (N.Y. Sup. Ct. May 3, 2017) ...................................................... 16

*Zeltser v. Merrill Lynch & Co., Inc.,*
   No. 13-1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)..................................... 15

Plaintiffs Michael Goldemberg ("Goldemberg"), Annie Le ("Le"), and Howard Petlack ("Petlack") (collectively, "Plaintiffs"), on behalf of the class (the "Class"), submit this Memorandum of Law in support of their uncontested motion for Attorneys' Fees, Expenses, and Service Award Payments.

## I.   <u>INTRODUCTION</u>

This action alleges that Defendant engages in false labeling, marketing, and/or advertising by using the term "Active Naturals" and other such representations and imagery to depict its personal care products ("Products") as comprised entirely of natural ingredients. As alleged in the Second Amended Complaint ("Compl.," Dkt. No. 42), these representations are false and misleading because the Products contain numerous synthetic, unnatural ingredients. Compl., ¶¶ 1-14. Defendant disputes all allegations in the Complaint.

Before taking on the case, Class Counsel exhaustively investigated the viability of the claims against Defendant, identified the relevant Products, and obtained copies of false and misleading Product labels and advertisements. After filing the Complaint, Plaintiff's counsel engaged in hard-fought litigation with Defendant for nearly four years before exploring settlement with the help of a mediator. During that period, Class Counsel engaged in extensive motion practice, defeating Defendant's motions to dismiss the Complaint (*see* Dkt. Nos. 9-20) and to exclude the expert report of Plaintiffs' expert Dr. Jean-Pierre Dubé ("*Daubert* Motion") (*see* Dkt. Nos. 80-85, 98), and successfully moving for the appointment of Interim Lead Plaintiff and Co-Lead Class Counsel (*see* Dkt. Nos. 28-31) and for class certification (*see* Dkt. Nos. 69-79, 98). Class Counsel also opposed Defendant's petition for leave to appeal the class certification ruling, which the Second Circuit denied. *See* Dkt. No. 104. Class Counsel also engaged in substantial discovery, serving and responding to requests for production, serving

interrogatories and requests for admission, deposing two employees of Defendant, and defending each Plaintiff's deposition. Moreover, Class Counsel reviewed Defendant's production consisting of hundreds of thousands of pages, and conferred with Plaintiffs' experts concerning the status of the case, the Complaint and amendments thereto, discovery requests and responses, and the class certification motion. Thus, Class Counsel engaged in significant and effective work on behalf of the Class, and it is fair to say the proposed Settlement would not have come about but for these successful efforts.

As detailed in Plaintiffs' Memorandum in Support of Uncontested Motion for Final Approval of Class Action Settlement, the Settlement provides for a non-reversionary $6,750,000.00 common fund (the "Settlement Fund").

Class Counsel respectfully requests an award of $2,250,000.00 in attorneys' fees and expenses, or 33% of the Settlement Fund. The attorneys' fees (exclusive of costs) included in this request represents only 31.42% of the fund, or a lodestar multiplier of 1.15 (because Class Counsel's lodestar is $1,952,780.75, a number that will increase as Class Counsel effectuates the Settlement). Pursuant to the Settlement, Defendant has agreed not to contest the amount requested.

The Court should award the amount requested because it falls well within the range of attorneys' fees and expenses awarded by courts within this Circuit using either the percentage of the fund or lodestar methodology. Moreover, the fee request was disclosed in advance to the Class pursuant to the notice program approved by the Court, and it met with only two objections.[1]

---

[1] These objections are addressed in detail in the accompanying Plaintiffs' Memorandum of Law in Opposition to the Objections of Ashley Hammack and Pamela Sweeney to Final Approval of the Proposed Class Action Settlement ("Plaintiffs' Response to Objections").

Class Counsel also requests that the Court approve the payment of a $10,000 service award to each Plaintiff for the time and effort spent assisting the prosecution of the action on behalf of the Class. Plaintiffs demonstrated an understanding of both the basis of the claims and the role of a class representative.  They conferred with Class Counsel concerning the status of the case, the Complaint and amendments thereto, discovery responses, the class certification motion, and the Settlement. They responded to written discovery requests, produced documents relating to their purchases of Defendant's Products, provided crucial declarations in support of the class certification motion, and prepared and sat for lengthy depositions. The requested service award was also subject to arm's length negotiations, and it is comparable to other service awards in other class actions. The requested service award was also disclosed in advance to the Class, and none objected.

## II.    THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES

Class Counsel have spent substantial time and resources investigating the matter and actively litigating against Defendant for more than four years. It is only fair that they be compensated commensurately for their hard work, the outstanding results they have achieved, and the expenses they have incurred. As shown below, an award of $2,250,000.00, representing one-third of the Settlement Fund, for both attorneys' fees and expenses is reasonable.

### A.    Class Counsel Is Entitled To Compensation Under Either The Percentage Method Or The Lodestar Method, But The Percentage Method Is Preferred.

For more than a century, the Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Trustees v. Greenough*, 105 U.S. 527 (1881); *Boeing Co. v. Van*

*Gemert*, 444 U.S. 472 (1980)). Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims." *Steiner v. Williams*, No. 99-101186, 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001). Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "to discourage future misconduct of a similar nature." *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (citation omitted); *see In re Veeco Instruments Inc. Sec. Litig.*, No. 05-01695, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same).

Indeed, the contingency fee awarded to class counsel should be greater than the fees that the same attorneys would charge their clients in non-contingency cases. "No one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6 (same).[2] Compensating plaintiff's counsel for the risks assumed in bringing this action is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

---

[2] *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) (citing *Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ("Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.")).

District courts in the Second Circuit may award attorneys' fees to prevailing class counsel under either a "percentage of the fund" or "lodestar" method to compute fees in common fund cases. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). However, the Second Circuit disfavors the lodestar method because it "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.* at 122 (internal citation omitted). The percentage method is considered preferable "because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition." *Hicks*, 2005 WL 2757792, at *9 (citation omitted). Thus, "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *see also In re Polaroid*, No. 03-8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010). In addition, the award must be based on "the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *see also Torres v. Gristede's Operating Corp.*, 519 Fed. Appx. 1, 5 (2d Cir. 2013) (unpublished) (calculating fees "on the basis of the total funds made available."); *Aros v. United Rentals, Inc.*, No. 10-73, 2012 WL 3060470 (D. Conn. July 26, 2012) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to class members who do not file claims will revert to the Defendants.").

Here, pursuant to the Settlement, Class Counsel seeks attorneys' fees and expenses in the amount of $2,250,000.00, or one-third of the Settlement Fund. Of that amount, $128,882.93 constitutes actual litigation expenses (as of October 9, 2017), and $2,121,117.07, or 31.42% of

the Settlement Fund, constitutes attorneys' fees. *See* Declaration of Todd S. Garber ("Garber Decl.") ¶ 19. Class Counsel's fee request falls well within the range of class counsel fees approved in comparable cases. *See, e.g.*, *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-8472, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (awarding attorneys' fees in the amount of "$2,310,000 which is 33% of the settlement fund," plus costs); *Beckman v. KeyBank, N.A.*, No. 12-7836, 2013 WL 1803736, at *12 (S.D.N.Y. Apr. 29, 2013) (awarding attorneys' fees equal to 33% of $4.9 million settlement fund, plus costs); *Hayes v. Harmony Gold Mining Co.*, No. 08-03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding attorneys' fees equal to 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *In re Marsh Erisa Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (awarding attorneys' fees equal to 33.33% of $35 million settlement, plus costs); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit") (citing cases).

### B. The Requested Fee Is Justified Under The Percentage Method.

A court applying the percentage method "sets some percentage of the recovery as a fee." *Goldberger*, 209 F.3d at 47 (citation omitted). In doing so, the court considers six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id.* at 50 (internal citations and quotation marks omitted). *Accord Polaroid*, 2007 WL 2116398, at *2. Courts consider the same factors in

applying the lodestar method. *Id.* All of the *Goldberger* factors argue for approval of Class
Counsel's fee request.

### 1.      The Time And Labor Expended By Counsel

The time and labor expended by Class Counsel are set forth in detail in the accompanying
Declaration. Class Counsel devoted more than 3,294.84 hours over the course of more than four
years prosecuting the case. Garber Decl. ¶ 13; Declaration of Kim E. Richman ("Richman
Decl.") ¶ 34. Before bringing this action, Class Counsel exhaustively investigated the viability of
the claims against Defendant, identified the relevant Products, and obtained copies of the false
and misleading Product labels and advertisements. Garber Decl. ¶ 3; Richman Decl. ¶ 9. After
filing the Complaint, they engaged in hard-fought litigation with Defendant's counsel for nearly
four years before exploring settlement with the help of a mediator. Garber Decl. ¶ 4. During that
period, Class Counsel engaged in extensive motion practice, defeating Defendant's motion to
dismiss the Complaint (*see* Dkt. Nos. 9-20) and *Daubert* Motion (*see* Dkt. Nos. 80-85, 98), and
successfully moving for the appointment of Interim Lead Plaintiff and Co-Lead Class Counsel
(*see* Dkt. Nos. 28-31) and for class certification (*see* Dkt. Nos. 69-79, 98). Garber Decl. ¶ 4;
Richman Decl. ¶ 14. They also opposed Defendant's petition for leave to appeal the class
certification ruling, which the Second Circuit denied. Garber Decl. ¶ 4; Dkt. No. 104. Class
Counsel also engaged in substantial discovery, serving and responding to requests for
production, serving interrogatories and requests for admission, reviewing Defendant's
production consisting of hundreds of thousands of pages, deposing two J&JCC employees, and
defending each Plaintiff's deposition. Garber Decl. ¶ 5; Richman Decl. ¶ 15. Moreover, they
conferred with Plaintiffs and Dr. Dubé concerning the status of the case, the Complaint and
amendments thereto, discovery requests and responses, and the class certification motion. Garber

Decl. ¶ 5.

### 2. The Magnitude And Complexity Of The Litigation

The requested fee award is reasonable in light of the magnitude and complexity of the Litigation. The Class itself comprises millions of consumers and Defendant agreed to a nationwide settlement making available $6,750,000.00 to the Class. By any measure, the magnitude of the case is substantial, fully justifying Class Counsel's investment of time and labor, and fully merits the requested fee award. Moreover, the case is inherently complex, raising issues such as whether the alleged misrepresentations would mislead a reasonable consumer, whether damages could be measured on a class-wide basis, and if so, how. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex . . .").

### 3. The Risk Of The Litigation

The risk of litigation is "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft v. Ackermans*, No. 02-7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "Establishing liability [is] no sure thing for the plaintiffs." *Wal-Mart Stores, Inc.*, 396 F.3d at 118. "[D]espite the most vigorous and competent of efforts, success is never guaranteed." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974).

Class Counsel faced substantial obstacles in successfully prosecuting this case. For example, a jury could find that the term "Active Naturals" would likely not mislead a reasonable consumer into believing that the Product consists only of naturally derived ingredients. *See, e.g., Ries v. Arizona Beverages USA LLC*, No. 10-1139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)

(granting summary judgment for defendant in case involving "natural" beverage labeling); *but see Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531 (9th Cir. 2016) (unpublished) (reversing summary judgment for defendant on claim that "All Natural Fruit" representation was likely to deceive reasonable consumers). Moreover, although Class Counsel defeated Defendant's *Daubert* Motion, Defendant insists that Plaintiffs cannot establish the existence of injury by class-wide proof.

Moreover, there was a real risk Class Counsel would not recover anything for all the time and efforts invested in the case -- because they accepted the case on contingency. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6 ("[T]he risk of non-payment in complex cases, such as this one, is very real. There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery.") (collecting cases). Thus, this *Goldberger* factor recognizes that cases taken on contingency entail risk of non-payment for the attorneys prosecuting them, and embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 592; *In re Lloyd's Am. Tr. Fund Litig.*, No. 96-1262, 2002 WL 31663577, at *1 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier[.]"). As the Second Circuit has observed:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*In re Hi-Crush Partners L.P. Securities Litig.*, No. 12-8557, 2014 WL 7323417, at *15

(S.D.N.Y. Dec. 19, 2014) (quoting *Grinnell Corp.,* 495 F.2d at 470).

Class Counsel incurred 100% of the risk, devoting their time and labor to gather evidence

of Defendant's suspected wrongdoing, evaluating Defendant's potential liability, analyzing

potential legal theories, drafting and revising the complaint, and engaging in substantial motion

practice and discovery. Throughout, there was no assurance of success or compensation.[3] The

requested fee award is entirely reasonable in light of the risks incurred by Class Counsel.

**4.    The Quality Of Representation**

"To determine the quality of the representation, courts review, among other things, the

recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v.*

*Ackermans*, 2007 WL 414493, at *10 (citation and internal quotations omitted).

The Settlement negotiated with Defendant is a highly favorable outcome for the Class.

Plaintiffs filed the lawsuit to obtain compensation for each Class Member willing to pay more

---

[3] Indeed, numerous courts have either dismissed outright similar "natural" claims or denied class certification. *See, e.g.*, *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 67 (S.D.N.Y. 2015) (denying class certification in part because plaintiff's damages model was not "consistent with [plaintiff's] liability case . . . because it ma[de] no attempt to calculate the amount that consumers actually overpaid due to the 'All Natural' label"); *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 230 (N.D. Cal. 2015) (denying class certification in part because plaintiffs "offer[ed] no method of classwide proof to show that a 'reasonable consumer' would find the challenged statements deceptive and material to their purchasing decision"); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 (S.D. Fla. 2014) (denying class certification in part because individualized issues of fact predominated as to whether a reasonable consumer "believes a product labelled as 'All Natural' derived from GMOs is indeed not 'all natural,' and whether the class member actually purchased a product containing the challenged label."); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) (finding that the label "all natural flavors" on defendant's soda's packaging was consistent with the statement of ingredients on the soda can because there were no artificial flavors in the soda); *Hairston v. South Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (dismissing complaint in part because the "all natural" language was clarified by the detailed information contained in the ingredient list); *Rooney v. Cumberland Packing Corp.*, No. 12-33, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (dismissing complaint because no reasonable consumer could be deceived by the label "Sugar in the Raw" because the package stated that the sugar was turbinado-sugar (a processed sugar)). The risk that Class Counsel would not receive any fee in this case was very real.

for Defendant's "Active Naturals" brand Products on the mistaken assumption they were devoid of ingredients not naturally derived, and to enjoin Defendant from engaging in false labeling and marketing its Products. The Settlement achieved these goals. Under the Settlement, each Class Member is eligible to receive $2.50 for each purchase of a Covered Product for up to 20 Covered Products purchased during the Class Period, without any proof of purchase. Valid proof of purchase is, however, required for additional purchases. There is no limit to the number of purchases a Class Member may claim for with a valid proof of purchase. Defendant also agreed to remove the term "Active Naturals" from the front label of all in-market Covered Products and, if the term "Active Naturals" remains on the back or side labels of Products containing ingredients naturally derived and non-naturally derived, to include specific language noting that fact on the back or side labels.

These goals would not have been met without the creativity, diligence, hard work, and skill brought to bear by Class Counsel at every stage of the proceedings. Notably, prior to settlement negotiations, Class Counsel defeated Defendant's motion to dismiss and *Daubert* motion, and obtained class certification which Defendant tried to appeal to the Second Circuit to no avail. Without a doubt, these developments influenced Defendant's decision to explore settlement with Plaintiffs. Class Counsel also engaged in substantial discovery and investigation to further inform their negotiation strategy. Garber Decl. ¶ 5; Richman Decl. ¶ 15. Their experience litigating consumer class actions also helped in the prosecution and settlement of the case. Class Counsel have successfully litigated other cases involving "Natural" claims. Garber Decl. ¶ 11; Richman Decl. ¶ 6. They enjoy strong reputations in the area of complex and class action litigation. *See* Garber Decl. ¶¶ 9-11; Richman Decl. ¶¶ 5-6. In fact, as demonstrated by

their respective declarations, Class Counsel have been appointed class counsel in numerous other cases. Garber Decl. ¶ 11 (Exhibit 1); Richman Decl. ¶ 6.

The high quality of the opposition that Class Counsel faced also attests to the quality of their representation. Defendant is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. Courts have repeatedly recognized that the caliber of the opposing counsel should be considered in assessing the quality of the plaintiffs' counsel's performance, and here, it supports approval of the requested fee. *See, e.g., In re Marsh Erisa Litig.*, 265 F.R.D. at 148 (reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations").

### 5. The Requested Fee In Relation To The Settlement

Courts consider the size of the settlement to ensure the percentage award does not constitute a "windfall." *In re Gilat Satellite Networks, Ltd.*, No. 02-1510, 2007 WL 2743675, at *16 (E.D.N.Y. Sept. 18, 2007).

Class Counsel's fee request of $2,121,117.07, or 31.42% of the Settlement Fund, is "fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere." *In re Marsh ERISA Litig.*, 265 F.R.D. at 149 (awarding $11,665,500 out of $35,000,000 settlement). In fact, courts in this Circuit have routinely granted fee requests for one-third of comparable or substantially larger settlement funds. *See, e.g.*, *Hernandez*, 2013 WL 1209563, at *8 (awarding "$2,310,000 which is 33% of the settlement fund," plus costs); *Hayes*, 2011 WL 6019219, at *1 (awarding attorneys' fees equal to 33.3% of $9,000,000 settlement fund); *Maley*, 186 F. Supp. 2d at 370-71 (awarding $3,832,950 out of $11,500,000 settlement fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp.

2d 174, 182 (E.D.N.Y. 1999) (awarding $2,583,333 out of $7,750,000 settlement fund); *In re Crazy Eddie Securities Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding $14,200,000 out of $45,000,000 common fund).[4] Thus, this factor also weighs in favor of granting the fee request.

### 6.    Public Policy Considerations

Strong public policy supports rewarding counsel for bringing successful consumer protection litigation. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29 (holding that if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

The Settlement promotes compliance with consumer protection laws by enjoining the false labeling and marketing of Defendant's products. Moreover, where, as here, "relatively small claims can only be prosecuted through aggregate litigation, and the law relied on prosecution by 'private attorney generals,' attorneys who fill the private attorney general role must be adequately compensated for their efforts." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-4216, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014).

Simply put, there is no reason to deny the fee request, which falls squarely within the range of fees normally approved within this Circuit under either the percentage of the fund or

---

[4] *See also Hageman v. AT & T Mobility LLC*, No. 13-50, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding $15,000,000 out of $45,000,000 common fund); *Desai v. ADT Sec. Sys., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013), Dkt. No. 243 (awarding one-third of $15,000,000 fund).

lodestar methodology, and any reduction would be against public policy as it would only discourage future class counsel from bringing similar cases.

Taking into account all the *Goldberger* factors, a fee award to Class Counsel of 31.42% of the Settlement Fund is reasonable, and should be approved.

### C.      The Fee Is Justified Under The Lodestar/Multiplier Method.

Application of the lodestar method confirms the reasonableness of Class Counsel's request. Despite its criticism of the lodestar method, the Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method. *Goldberger*, 209 F.3d at 50. "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized." *Id.* (citation omitted).

Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rates, and then the court adjusts that lodestar figure (by applying a multiplier) "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23. *See also Maley*, 186 F. Supp. 2d at 370 (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted). "In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court." *In re Telik*, 576 F. Supp. 2d at 590 (a multiplier of 4.65 was "well within the range awarded by courts in this Circuit and courts throughout the country") (citing *Maley*, 186 F. Supp. 2d at 369).[5]

---

[5] *See, e.g., Zeltser v. Merrill Lynch & Co., Inc.*, No. 13-1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Hernandez,* 2013 WL 1209563, at *9 (awarding lodestar multiplier of 3.8, holding it "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and

The fee requested for these cases is more than justified under the lodestar method. Class Counsel reasonably devoted in excess of 3,200 hours to this action, including time spent researching the facts and the law and reviewing documents produced by Defendant, drafting and revising the complaint, conducting discovery and motion practice, conferring with Plaintiffs and the expert, negotiating the settlement, and drafting settlement papers. Applying Class Counsel's hourly rates, which are reasonable and well within the range typically charged by similarly well qualified counsel in this District, yields a lodestar of 1.15.[6]

There is no question that Class Counsel spent their time efficiently. Garber Decl. ¶ 14; Richman Decl. ¶ 23. Moreover, Class Counsel have already factored potential inefficiencies into the lodestar, cutting hours for which Class Counsel actually billed. Garber Decl. ¶ 14. Class Counsel also have written off time for timekeepers, including a partner, three associate attorneys, and four paralegals who billed less than 30 hours. *Id*. Class Counsel's use of billing judgment recommends against any further deduction in the lodestar used for the purposes of performing a cross-check.

Moreover, the hourly rates charged by counsel are reasonable, indeed modest, by comparison with other firms in this District. "[T]he American Lawyer recently reported that the

---

noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); *Spicer v. Pier Sixty LLC,* No. 08-10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting *In re Telik*, 576 F. Supp. 2d at 590); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11-520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting 6.8 multiplier); *deMunecas v. Bold Food, LLC*, No. 09-440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *Maley,* 186 F. Supp. 2d at 371 ("modest multiplier of 4.65 is fair and reasonable").

[6] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). *See also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n. 25 (S.D.N.Y. 1998); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases).

median billing rate for partners at many leading law firms exceeds $900/hour. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26.[7] Not surprisingly, Class Counsel's more modest hourly rates have been approved by courts across the country. *See, e.g., Villanueva v. Wells Fargo Bank, N.A.*, No. 13-5429 (S.D.N.Y. Feb. 13, 2017) (Smith, J.), Dkt. No. 116; *Bowman v. Wells Fargo Bank, N.A.*, No. 14-648 (S.D.N.Y. Feb. 13, 2017) (Smith, J.), Dkt. No. 126; *Whittenburg v. Bank of America, N.A.*, No. 14-947 (S.D.N.Y. July 20, 2016) (Briccetti, J.), Dkt. No. 119; *In re HIKO Energy LLC Litigation*, No. 14-1771 (S.D.N.Y. May 9, 2016) (Briccetti, J.), Dkt. No. 93; *Adler v. Bank of America, N.A.*, No. 13-4866 (S.D.N.Y. Jan. 29, 2016) (Briccetti, J.), Dkt. No. 89-1; *Reed v. Friendly's Ice Cream, LLC*, No. 15-298 (M.D. Pa. Jan. 31, 2017), Dkt. No. 105; *Yoeckel v. Marriott International, Inc.*, No. 703387/2015 (N.Y. Sup. Ct. May 3, 2017), Order and Judgment, attached as Exhibit 2 to the Garber Decl.; *St. Joseph Health System Medical Information Cases*, JCCP No. 4716 (Cal. Sup. Ct. Feb. 3, 2016), Order Granting an Award of Attorneys' Fees and Litigation Expenses, Settlement Administration Costs, and Class Representative Incentive Awards, attached as Exhibit 3 to the Garber Decl.

Comparing the lodestar with the requested fee yields a multiplier of 1.15. That multiplier is unquestionably within the range of multipliers found reasonable by courts in this Circuit, and is fully justified in light of the effort undertaken, the recovery achieved, the risks involved, and

---

[7] *See, e.g., In re Hi-Crush Partners L.P. Securities Litig.*, 2014 WL 7323417, at *14 (approving hourly billing rates ranging from $425 to $825 for attorneys); *In re Nissan Radiator/Transmission Cooler Litig.,* No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from $750 (partner) to $650 (associate)); *Chin v. RCN Corp.*, No. 08-7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (hourly rates up to $880 were "not extraordinary for top New York law firms"); *In re Telik*, 576 F. Supp. 2d at 589-90 (noting that hourly rates of $700-$750 for partners were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work).

the efficiency with which these cases were litigated. In sum, the 1.15 multiplier sought here is reasonable and within the range approved in past cases.

**D.      The Reaction Of The Class Is Overwhelmingly Favorable.**

Courts give "great weight" to the reaction by members of the Class to a class action settlement. *Maley*, 186 F. Supp. 2d at 374 (citation omitted). "The court considers both the number and quality of objections when determining how a class has reacted to an attorney fee request." *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005).

Here, the Class consists of millions of consumers. As directed by the Court, the Settlement Administrator disseminated class notice through the Internet and the widely read *People* magazine. Although such notice reached 82.26% of the Class, only two class members objected to the fee request. This speaks to the reasonableness of the fee request. *See, e.g.*, *In re Telik,* 576 F. Supp. 2d at 593–94 ("That only one objection [after dissemination of 54,000 copies of the class notice] to the fee request was received is powerful evidence that the requested fee is fair and reasonable."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 912 F. Supp. 97, 103 (S.D.N.Y. 1996) (holding that an "isolated expression of opinion" should be considered "in the context of thousands of class members who have not expressed themselves similarly"); *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d at 996 ("Here, of the over 265,000 notices sent, only seven of the thirteen objections received concern the attorney fee award"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("Notice of the fee request and the terms of the settlement were mailed to 300,000 class members, and only two objected. We agree with the District Court such a low level of objection is a 'rare phenomenon.'"). Moreover, as shown in the contemporaneously-filed Plaintiffs' Response to

Objections, the objections lack merit.

Thus, the "overwhelmingly positive response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29.

## III. THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of this action. *See* Garber Dec. ¶ 19. These expenses are properly recovered by counsel. *See In re China Sunergy Sec. Litig.*, No. 07-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

As set forth in detail in the declarations filed herewith, Class Counsel incurred $128,882.93 in litigation expenses (as of October 9, 2017) on behalf of the Class to prosecute the case. Garber Dec. ¶ 19. Awarding one-third of the Settlement Fund will also serve to reimburse Class Counsel for these expenses. *See, e.g., In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.*, No. 09-2102, 2010 WL 3422722, at *8-9 (S.D.N.Y. Aug. 24, 2010) (approving flat payment covering fees and expenses).

All of the expenses were reasonable and necessary to the prosecution of this action, and are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement.[8] Garber Decl. ¶ 19; Richman Decl. ¶ 25. Moreover, having accepted the case on

---

[8] *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-1484, 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery,

contingency basis, Class Counsel "made a concerted effort to avoid unnecessary expenses and economized where possible." *In re Hi-Crush Partners L.P. Securities Litig.*, 2014 WL 7323417, at *19 ("Because the expenses here were incurred with no guarantee of recovery, Lead Counsel had a strong incentive to keep them at a reasonable level, and did so."); *see* Garber Decl. ¶ 19.

## IV.   <u>PLAINTIFFS ARE ENTITLED TO THE REQUESTED SERVICE AWARD</u>

Providing service awards to consumers who come forward to represent a class is a necessary and important component of any class action settlement. *See Viafara v. MCIZ Corp.*, No. 12 7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. It is important to compensate plaintiffs for the time they spend and the risks they take. The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted). "Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risk incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Sukhnandan*, 2014 WL 3778173, at *16.

In examining the reasonableness of service awards, courts consider (1) the time and effort expended by the class representatives during the litigation; (2) any burdens sustained by the class

---

local transportation/meals, filing fees and attorney services") (internal quotations omitted); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (same).

representatives, including personal risk; and (3) the ultimate recovery. *See Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

Here, Class Counsel respectfully request that the Court approve the payment of a service award to Plaintiffs in the amount of $10,000 each for the time and effort they spent assisting the prosecution of the action on behalf of the Class. Plaintiffs demonstrated an understanding of both the basis of the claims and the role of Class representatives. Garber Decl. ¶ 7. They conferred with Class Counsel concerning the status of the case, the Complaint and amendments thereto, discovery responses, the class certification motion, and the Settlement. *Id.* They also responded to written discovery requests, produced documents relating to their purchases of Defendant's Products, provided crucial declarations in support of the class certification motion, and prepared and sat for lengthy depositions. *Id.*; Richman Decl. ¶ 15. Defendant has agreed not to contest the service award requested.

The requested payments are well deserved and fall well within the range of incentive awards approved in prior cases. *Yuzary v. HSBC Bank USA, N.A.*, No. 12-3693, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) (awarding $10,000 each to named plaintiffs); *Guippone v. BH S & B Holdings, LLC*, No. 09-1029, 2011 WL 5148650, at *8 (S.D.N.Y. Oct. 28, 2011) (awarding class representative $10,000 because he "assisted with the preparation of the complaints, provided counsel with relevant documents in their possession and assisted counsel in the investigation of his claims[, and] was deposed by defendant Holdco"); *Torres v. Gristede's Operating Corp.*, No. 04-3316, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 Fed. Appx. 1 (2d Cir. 2013) (unpublished) (approving service awards of $15,000 each for 15 named plaintiffs, comprising 6.4% of the $3.5 million settlement); *Clark v. Ecolab Inc.*, No. 04-4488, 2010 WL 1948198, at *6 (S.D.N.Y. May 11, 2010) (granting service awards of $10,000 to

each of the seven named plaintiffs); *Polaroid*, 2007 WL 2116398, at *3 (citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions). They also amount to a mere 0.44% of the $6.75 million Settlement Fund, and are, therefore, reasonable.[9]

Finally, the service award request was disclosed in the notice and did not garner a single objection.

For these reasons, the Court should order service award payments to Plaintiffs in the amount requested.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the request for attorneys' fees and costs and service awards in the amounts indicated.

---

[9] *See Asare v. Change Grp. of New York, Inc.*, No. 12-3371, 2013 WL 6144764, at *3 (S.D.N.Y. Nov. 18, 2013) (service awards totaling $16,000 or 9.6% of the $165,000 settlement); *Matheson v. T-Bone Rest., LLC*, No. 09-4214, 2011 WL 6268216, at *10 (S.D.N.Y. Dec. 13, 2011) (approving service awards of $45,000 and $5,000 for each of two named plaintiffs which totaled roughly 10% of the $495,000 fund); *Johnson v. Brennan*, No. 10-4712, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (approving $10,000 service awards to four named plaintiffs from a $440,000 settlement fund); *Reyes v. Altamarea Grp., LLC*, No. 10-6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to each three plaintiffs and a service award of $5,000 to one plaintiff, totaling $50,000, or roughly 17% of the $300,000 fund); *Reyes v. Buddha-Bar NYC*, No. 08-2494, 2009 WL 5841177, at *5 (S.D.N.Y. May 28, 2009) (awarding payments of $7,500 to three named plaintiffs from $710,000 fund); *Wright v. Stern*, 553 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (approving $50,000 awards to each of 11 named plaintiffs in $11.8 million employment discrimination settlement).

Dated:     White Plains, New York
             October 13, 2017

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

By:    */s/ Todd S. Garber*
        Todd S. Garber
        D. Greg Blankinship
        Jeremiah Frei-Pearson
        Antonino B. Roman
        445 Hamilton Avenue, Suite 605
        White Plains, New York 10601
        Tel: (914) 298-3281
        tgarber@fbfglaw.com
        gblankinship@fbfglaw.com
        jfrei-pearson@fbfglaw.com
        aroman@fbfglaw.com

        Kim E. Richman
        **RICHMAN LAW GROUP**
        81 Prospect Street
        Brooklyn, New York 11201
        Telephone: (212) 687-8291
        Facsimile: (212) 687-8292
        krichman@richmanlawgroup.com

        *Attorneys for Plaintiffs and the Settlement Class*