# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHAEL GOLDEMBERG, ANNIE LE, and HOWARD PETLACK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>Defendant. | Civil Action No. 7:13-cv-3073-NSR-LMS<br><br>Hon. Nelson S. Román |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE OBJECTIONS OF ASHLEY HAMMACK AND PAMELA SWEENEY TO FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

ARGUMENT ........................................................................................................... 4

I.      The Settlement Is Fair And Reasonable............................................................ 4

II.     The Notice To The Class Satisfied Fed. R. Civ. P. 23(c)(2)(B). ......................... 5

III.    Disbursement Of Residual Settlement Funds *Cy Pres* Is Fair And Reasonable.................. 7

        A.   The Proposed Scheme For Disbursement Of Residual
             Funds Does Not Require Additional Rounds Of Disbursements To Class Members.... 8

        B.   The Rose Foundation For Communities
             And The Environment Is An Appropriate *Cy Pres* Recipient. .................................... 10

IV.     Objectors Have Sufficient Time To
        Assess And Object To Class Counsel's Fee Request. ...................................... 12

V.      Class Counsel's Fee Request Is Reasonable. .................................................... 14

        A.   The Agreed Upon Attorneys' Fees Are
             Within The Parameters Of Similar Settlements. ........................................... 14

        B.   The Second Circuit Bases Awards Of Attorneys' Fees On The Entire Fund............... 16

VI.     Class Members' Right To Object Was Not Burdened....................................... 18

VII.    The Objectors Are Serial Professional
        Objectors Whose Objections Should Be Given Less Weight. .......................... 20

CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. FleetBoston Fin. Corp.,*
  No. 01–10395, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) .................................................. 20

*Beckman v. KeyBank, N.A.,*
  No. 12-7836, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) .................................................... 14

*Carlson v. Xerox Corp.,*
  355 F. App'x 523 (2d Cir. 2009) ............................................................................................ 12

*Cassese v. Williams,*
  503 F. App'x 55 (2d Cir. 2012) ........................................................................................ 12, 13

*City of Providence v. Aeropostale, Inc.,*
  No. 11-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................................................... 20

*Dennis v. Kellogg Co.,*
  No. 09-1786, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .................................................. 22

*Diana Miloro v. Van's International Foods, Inc.,*
  No. 15-PH-CV00642 (Cir. Ct. Phelps Cnty., Mo.) .................................................. 21

*Edwards v. National Milk Producers Federation,*
  No. 11-4766, Dkt. No. 449 (N.D. Ca. Nov. 1, 2016) ............................................................. 22

*Ferrara et al. v. Snyder's-Lance, Inc.,*
  No. 13-62496, Dkt. No. 213 (S.D. Fla. June 10, 2016) ............................................................ 9

*Frohberg v. Cumberland Packing Corp.,*
  No. 14-748, Dkt. No. 61 (E.D.N.Y. Apr. 5, 2016) ................................................................... 9

*Gascho v. Global Fitness Holdings, LLC,*
  No. 11-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) ..................................................... 13

*Gay et al. v. Tom's of Maine, Inc.,*
  No. 14-60604, Dkt. No. 43 (S.D. Fla. Mar. 11, 2016) .............................................................. 9

*Gilliam v. Addicts Rehab. Ctr. Fund,*
  No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .................................................... 15

*Hayes v. Harmony Gold Mining Co.,*
  No. 08-3653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) .................................................... 14

*Hernandez v. Merrill Lynch & Co., Inc.,*
  No. 11-8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ..................................... 14

*In re Airline Ticket Comm'n Antitrust Litig.,*
  307 F.3d 679 (8th Cir. 2002)................................................................................. 8

*In re Capital One Telephone Consumer Protection Act Litig.,*
  No. 12-10064, Dkt. No. 327 (N.D. Ill. Feb. 4, 2015) ............................................ 22

*In re CertainTeed Fiber Cement Siding Litig.,*
  303 F.R.D. 199 (E.D. Pa. 2014) ........................................................................... 13

*In re Checking Account Overdraft Litig.,*
  No. 09-2036, Dkt. No. 3698 (S.D. Fla. Nov. 13, 2013) ........................................ 22

*In re Holocaust Victim Assets Litig.,*
  311 F. Supp. 2d 407 (E.D.N.Y. 2004).................................................................... 7

*In re Holocaust Victim Assets Litig.,*
  424 F.3d 158 (2d Cir. 2005)............................................................................. 7, 8

*In re Law Office of Jonathan E. Fortman, LLC,*
  No. 13-42, 2013 WL 414476 (E.D. Mo. Feb. 1, 2013)......................................... 22

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.,*
  847 F.3d 619 (8th Cir. 2017)............................................................................... 17

*In re Marsh Erisa Litig.,*
  265 F.R.D. 128 (S.D.N.Y. 2010).......................................................................... 14

*In re Mercury Interactive Corp. Sec. Litig.,*
  618 F.3d 988 (9th Cir. 2010)............................................................................... 13

*In re Motor Fuel Temperature Sales Practices Litig.,*
  No. 07-1840, 2015 WL 5010048 (D. Kan. Aug. 21, 2015) .................................. 13

*In re Motorsports Merchandise Antitrust Litig.,*
  160 F. Supp. 2d 1392 (N.D. Ga. 2001) .................................................................. 9

*In re "Agent Orange" Prod. Liab. Litig.,*
  611 F. Supp. 1396 (E.D.N.Y. 1985)....................................................................... 7

*Initial Pub. Offering Sec. Litig.,*
  728 F.2d 289 (S.D.N.Y. 2010) ............................................................................. 20

*Klein v. Robert's American Gourmet Food, Inc.,*
  28 A.D.3d 63, 808 N.Y.S.2d 766 (2d Dept. 2006)..................................................... 7, 8

*Knapp v. Badger Techs., Inc.,*
  No. 12-6637, 2015 WL 3745303 (W.D.N.Y. June 15, 2015).................................. 14

*Kolinek v. Walgreen Co.,*
  No. 13-4806, Dkt. No. 115 (N.D. Ill. Jul. 16, 2015) ............................................ 22

*Kumar v. Salov North America,*
  No. 14-2411, Dkt. No. 155 (N.D. Ca. May 1, 2017) ............................................. 22

*Larsen et al v. Trader Joe's Company,*
  No. 11-5188, Dkt. No. 99 (N.D. Cal. Jun. 6, 2014) .............................................. 22

*Leiner v. Johnson & Johnson Consumer Companies, Inc.,*
  No. 15-5876, Dkt. No. 83 (N.D. Ill. Dec. 5, 2016) .............................................. 21

*Lerma v. Schiff Nutrition International, Inc.,*
  No. 11-1056, Dkt. No. 183 (S.D. Cal. Feb. 29, 2016) ......................................... 21

*Lerma v. Schiff Nutrition International, Inc.,*
  No. 11-1056, Dkt. No. 183 (S.D. Cal. Mar. 1, 2016) .......................................... 21

*Masters v. Wilhelmina Model Agency, Inc.,*
  473 F.3d 423 (2d Cir. 2007).................................................................... 16, 17

*Mehigan et al. v. Ascena Retail Group, Inc. et al.,*
  No. 15-724 (E.D. Pa. Apr. 15, 2016) ................................................................. 22

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
  No. 06-4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ................................. 14

*Ortiz v. Chop't Creative Salad Co. LLC,*
  89 F. Supp. 3d 573 (S.D.N.Y. Jan. 15, 2015)................................................... 15

*Rapoport-Hecht et al. v. Seventh Generation, Inc.,*
  No. 14-9087 (S.D.N.Y. Jan. 26, 2017) ......................................................... 16, 17

*Saccoccio v. JP Morgan Chase Bank, N.A.,*
  297 F.R.D. 683 (S.D. Fla. 2014) ................................................................. 13

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003)..................................................................... 17

*Torres v. Bank of Am. (In re Checking Account)*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................................... 20

*Vincent et al. v. People Against Dirty, PBC et al.*,
  No. 16-6936, Dkt. No. 39 (S.D.N.Y. Jan. 9, 2017) ............................................ 18, 19

*Vincent et al. v. People Against Dirty, PBC et al.*,
  No. 16-6936 (S.D.N.Y. May 12, 2017) ............................................................... 18, 21

*Vincent et al. v. People Against Dirty, PBC et al.*,
  No. 16-6936, Dkt. No. 55 (S.D.N.Y. June 20, 2017) ............................... 7, 10, 11, 18

*W. Va. v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970) ............................................................................ 7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..................................................................................... 15

*Zeltser v. Merrill Lynch & Co.*,
  No. 13-1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) .................................... 14

**Rules**

Fed. R. Civ. P. 23(e)(1) ................................................................................... 5, 12, 13

**Other Authorities**

7B Fed. Prac. & Proc. Civ. § 1797.6 ........................................................................ 5

Principles of the Law of Aggregate Litigation § 3.07(b) ............................................. 7

*Rapoport-Hecht et al. v. Seventh Generation, Inc.*,
  No. 14-9087, Settlement Agreement, Dkt. No. 48-1 (S.D.N.Y. July 5, 2016) .................. 16, 17

*Rapoport-Hecht et al. v. Seventh Generation, Inc.*,
  No. 14-9087, Objection to Settlement, Dkt. No. 56 (S.D.N.Y. Dec. 30, 2016) ....... 9, 10, 17, 21

*Vincent et al. v. People Against Dirty, PBC et al.*,
  No. 16-6936, Objection to Settlement, Dkt. No. 44 (S.D.N.Y. Mar. 27, 2017) ........ 6, 10, 11, 17

Plaintiffs Michael Goldemberg, Annie Le, and Howard Petlack ("Plaintiffs"), individually and on behalf of the class (the "Class"), submit this memorandum of law in opposition to the objections of Ashley Hammack ("Hammack Obj.," Dkt. No. 116) and Pamela Sweeney ("Sweeney Obj.," Dkt. No. 118) to final approval of Plaintiffs' Joint Stipulation of Settlement (the "Settlement Agreement") with Defendant Johnson & Johnson Consumer Companies, Inc. ("Defendant" or "J&JCC") (Plaintiffs and Defendant, collectively, the "Parties") in the above-captioned action (the "Litigation").

## INTRODUCTION

After aggressively prosecuting the Litigation, the Parties executed a Settlement Agreement providing for a $6,750,000 non-reversionary common fund (the "Settlement Fund") and substantial injunctive relief. This significant result, obtained despite several obstacles and a long path to recovery, is a credit to the skill, tenacity, and effective advocacy of Class Counsel, who prosecuted the Litigation on a fully contingent fee basis against highly skilled defense counsel. Indeed, the Settlement Agreement compares favorably to one recently approved by this Court in *Vincent et al. v. People Against Dirty, PBC et al.*, No. 16-6936 (S.D.N.Y.) ("*People Against Dirty*"), a similar consumer class action alleging, *inter alia*, deceptive use of the term "Natural."

Nonetheless, two objectors -- Ashley Hammack and Pamela Sweeney (the "Objectors") -- seek to derail the Settlement, which encompasses more than 195,000 Class members who have submitted claims evidencing their approval. The Objectors argue (i) that the Settlement is unfair because the Notice Plan was inadvertently omitted from the website, (ii) that the notice did not make use of Johnson & Johnson's internal corporate communication channels, (iii) that the *cy pres* scheme and recipient are inappropriate, (iv) that the objectors have insufficient time to review Class Counsel's fee request prior to final approval, (v) that the percentage of the

1

Settlement fund that Class Counsel will seek in fees is too high and includes the cost of administering the claims, and (vi) the Court imposed burdensome requirements on objectors.

None of the objections have merit. As outlined below, (i) the propriety of the Notice Plan was a determination solely for the Court to make, (ii) the notice employed was the best practicable under the circumstances, (iii) the proposed *cy pres* process and *cy pres* recipient are reasonable and appropriate, (iv) the Objectors have more than sufficient time to review and object to Class Counsel's fee request, (v) Class Counsel's fee request and method of calculation are in accordance with the law and practice of the Second Circuit, and (v) potential objectors' right to object has not been unduly burdened. In addition, the Objectors are both serial professional objectors to class settlements, raising serious concerns as to the legitimacy of both their arguments and their motives. Indeed, Ms. Hammack recently raised the many of the same objections before courts in the Southern District of New York, including this Court. The courts summarily rejected her objections.

Because the Objectors' objections do not withstand scrutiny, this Court should grant Class Counsel's motion for final approval of settlement and for an award of attorneys' fees, costs, and service awards.

## **BACKGROUND**

As outlined more fully in Plaintiffs' memoranda of law in support of final approval of the Settlement Agreement ("Final Approval Brief," filed herewith) and for an award of attorneys' fees, expenses, and service awards ("Plaintiffs' Fee Brief," filed herewith), Plaintiffs allege -- and Defendant denies -- that Defendant falsely labels, markets, and advertises its personal care products (the "Products") by, *inter alia*, using the term "Active Naturals" to depict the Products as comprised entirely of natural ingredients, when the Products actually contain synthetic,

unnatural ingredients, thereby causing Plaintiffs and the other members of the Class damages. *See* Final Approval Brief at 1; Plaintiffs' Fee Brief at 1.

The Litigation was hard-fought, but the Parties eventually executed a Joint Stipulation of Settlement (the "Settlement Agreement," Dkt. No. 110-1), pursuant to which Defendant will establish a non-reversionary Settlement Fund in the amount of $6,750,000.00 and, among other label changes, cease use of the term "Naturals" on the front label of the Products. *See* Settlement Agreement at 16-21 (Section IV). Pursuant to the Settlement Agreement, a Class member would be eligible to receive $2.50 for each purchase (up to 20 without proof of purchase), with the final amount paid to individual claimants dependent upon the number of valid claims made. *Id.* at 15 (Section IV.A.5). Defendant also agreed to take no position on an application by Plaintiffs' counsel to the Court for an award of fees and costs up to 33% of the Settlement Fund and for service awards to Plaintiffs of $10,000 each in recognition of their time and effort in this Litigation. *Id.* at 33-34 (Section X).

On June 7, 2017, the Court preliminarily approved the Settlement Agreement, preliminarily certified the Class, and directed the dissemination of class notice. *See* Dkt. No. 112. On June 13, 2017, the Court amended its preliminary approval to reschedule the final approval hearing for October 27, 2017. *See* Dkt. No. 113 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, all objections to the Settlement needed to be filed by September 27, 2017. *Id.* ¶ 13.

Pursuant to the Preliminary Approval Order, the Settlement Administrator created a settlement website (www.aveenoactivenaturalssettlement.com) which "contains general information about the Settlement, including important dates and deadlines pertinent to this matter, and copies of important documents including the Long Form Notice in English and

Spanish, Claim Form, Order Preliminarily Approving Class Action Settlement, Joint Stipulation of Settlement, and Second Amended Class Action Complaint" and provides contact information and a claims form submission portal. *See* Notice Declaration of Steven Weisbrot, Esq. ("Weisbrot Decl.") ¶¶ 12-14. The Long Form Notice provided a detailed description of the Settlement, the requests by Class Counsel and the Class Representatives for an award of fees and expenses and service awards, respectively, and Class members' various rights and options in respect thereto. *See* Declaration of Todd S. Garber ("Garber Decl."), Exhibit 4, Long Form Notice. The Settlement Administrator also set up a toll-free number through which Settlement information could be obtained by potential members of the Class. *See* Weisbrot Decl. ¶ 16.

The Settlement Administrator ran print advertisements and an online banner ad campaign to notify potential members of the Class of the Settlement and direct them to the Settlement website and toll-free number. *Id.* ¶¶ 9-10. Based on the results of the banner ad campaign alone, the notice campaign reached over 82% of the Class. *Id.* ¶ 11.

As of October 11, 2017, the Settlement Administrator has received over 195,000 claim form submissions. *Id.* ¶ 20. Of the hundreds of thousands of potential Class members notified of the Settlement, only one timely opted to be excluded from the Settlement, and only two filed timely objections. *Id.* ¶¶ 18-19; *see also* Hammack Obj.; Sweeney Obj. For the reasons outlined below, Objector Hammack and Objector Sweeney's objections to final approval are without merit.

## ARGUMENT

### I.    The Settlement Is Fair And Reasonable.

Objector Hammack argues that the Settlement is "unfair and unreasonable to class members" because potential Class members who do not have a PACER account "[had] no way of evaluating whether the Notice is adequate," as the Notice Plan approved by the Court was

unavailable on the Settlement website. *See* Hammack Obj. at 2. However, the Court -- not potential Class members -- determines whether a notice plan proposed by the parties comports with due process. *See* Fed. R. Civ. P. 23(e)(1) ("*The court* must direct notice in a reasonable manner to all class members who would be bound by the proposal." (emphasis added)); Settlement, Voluntary Dismissal, or Compromise of Class Actions—Settlement Notice, 7B Fed. Prac. & Proc. Civ. § 1797.6 (3d ed.) ("The court has complete discretion in determining what constitutes a reasonable notice scheme, both in terms of how notice is given and what it contains."). Indeed, the plain language of Rule 23 limits the scope of a class member's objection to the substance of the settlement, not the means by which a court directs notice. *See* Fed. R. Civ. P. 23(e)(5) ("Any class member may object *to the proposal* if it requires court approval under this subdivision (e)." (emphasis added)).

Thus, the inadvertent omission of the proposed notice plan from the Settlement website did not prejudice potential Class members, nor render the Settlement either unfair or unreasonable to Class members.[1] In fact as it relates to the Notice Plan, the proof is in the pudding as the Notice Plan has resulted in a reach of more than 82% and resulted in a claims rate that the Settlement Administrator describes as "excellent." *See* Weisbrot Decl. ¶ 11 & 20. Accordingly, Ms. Hammock's objection is without merit and should be overruled.

## II.   The Notice To The Class Satisfied Fed. R. Civ. P. 23(c)(2)(B).

Objector Hammack argues that "the notice plan . . . is not the best practicable notice," and that "[t]he Court *must* order additional notice to attempt to reach more class members." Hammack Obj. at 2-3 (emphasis added). Not so. As outlined more fully in Plaintiffs'

---

[1] Indeed, the Settlement website provided potential Class members the Long Form Notice, which contained all relevant information. *See* Garber Decl., Exhibit 4.

memorandum of law in support of final approval of settlement, the method used to notify the Class constituted the best practicable notice pursuant Federal Rule of Civil Procedure 23(c)(2)(B). *See* Final Approval Brief at 21-23. Indeed, the Settlement Administrator reports that over 82% of the Class received notice. *See* Weisbrot Decl. ¶ 11. The Federal Judicial Center states that a notice plan that reaches a mere 70% of class members is one that reaches a "high percentage" and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d Ed. 2010).[2]

Objector Hammack suggests, without example or authority, that the best practicable notice would necessarily include the use of Johnson & Johnson's internal channels of communication. *See* Hammack Obj. at 2. However, it is standard for Courts to approve settlement notification through the use of a third-party settlement administrator, and third party settlement administrators "do not have typically have access to a corporate defendant's internal channels of communication, such as social media accounts or corporate websites." Weisbrot Decl. ¶ 17.

Indeed, in *People Against Dirty*, a similar consumer fraud class action, Ms. Hammack made essentially the same argument to this Court in her objections to final approval of the settlement. *See* No. 16-6936 (S.D.N.Y. March 27, 2017), Dkt. No. 44, Objection to Class Settlement at 2 ("Defendants maintain an email database. The Defendants could easily and cost-efficiently send notice to everyone in the email database as they likely have purchased Defendants' products."). This Court correctly overruled this and Objector Hammack's other

---

[2] Objector Hammack provides no support whatsoever for her claim that the percentage of Class members that need to receive notice "should be closer to 95-100%." Hammack Obj. at 3.

objections and finally approved the settlement. *See People Against Dirty*, No. 16-6936 (S.D.N.Y. June 20, 2017), Dkt. No. 55, Order Granting Final Approval of Class Action Settlement, Certifying Class, Awarding Attorneys' Fees and Service Awards, and Final Judgment ¶ 12 ("Having carefully considered Objector's Hammack's objection, the Court hereby overrules Ms. Hammack's objection on the merits in its entirety."). The Court should likewise overrule her objection in this case.

## III.   Disbursement Of Residual Settlement Funds *Cy Pres* Is Fair And Reasonable.

Objector Hammack argues that "the settlement is unfair and unreasonable . . . because funds will go to a *cy pres* recipient." *See* Hammack Obj. at 3. But this is a non-issue, because the Settlement Administrator anticipates the entire fund will be exhausted with the issuance of the benefits. *See* Weisbrot Decl. ¶ 21 ("Although final claim numbers and claim administration costs are not yet final," the Settlement Administrator "preliminarily projects that . . . the entire $6.75 million settlement fund will be exhausted.").

Moreover, even if there were residual funds to be distributed, the objection is without merit as *cy pres* awards are favored "when direct distribution to class members [is] not feasible . . . because distribution would involve such small amounts that, because of the administrative costs involve[d], such distributions would not be economically viable." Principles of the Law of Aggregate Litigation § 3.07(b), p.221 (Proposed Final Draft 2009). Indeed, courts recognize that a *cy pres* payment, as an adjunct to a payment by other means to some members of the class, is appropriate where the amount to be distributed to the remaining class members is small relative to the administrative costs of a direct distribution. *See In re Holocaust Victim Assets Litig.*, 311 F. Supp. 2d 407 (E.D.N.Y. 2004), *aff'd*, 424 F.3d 158 (2d Cir. 2005); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1403 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 179, 181-82 (2d Cir. 1987); *W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970),

*aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Klein v. Robert's American Gourmet Food, Inc.*, 28 A.D.3d 63, 73-74, 808 N.Y.S.2d 766, 775 (2d Dept. 2006). Such would have been the case here.

> **A.      The Proposed Scheme For Disbursement Of Residual Funds**
> **Does Not Require Additional Rounds Of Disbursements To Class Members.**

Here, because of the way the Settlement is designed, all of Settlement funds will likely be distributed to Settlement Class members, meaning any funds sent to *cy pres* will be those resulting from uncashed checks. *See* Settlement Agreement at p.21 (Section IV.C.5). Specifically, should there be -- after the calculation of all valid Claims, Notice and Administration costs, Attorneys' Fees and Expenses, Incentive Awards, and any other claim, cost, or fee specified by the Settlement Agreement -- any remaining funds, such remaining funds will be used to increase eligible Settlement Members' relief on a *pro rata* basis. *See* Settlement Agreement at p.20 (Section IV.C.3). Accordingly, residual funds potentially subject to *cy pres* would consist solely of those checks that were uncashed by Class members who submitted a claim.

As a result of this structure, the Settlement Administrator expects that the entire fund will be exhausted with the issuance of the benefits. *See* Weisbrot Decl. ¶ 21 ("Although final claim numbers and claim administration costs are not yet final," the Settlement Administrator "preliminarily projects that . . . the entire $6.75 settlement million fund will be exhausted"). Thus, "there will be no Cy Pres award in this matter," *id.*, and Hammack's objection is moot.

Nevertheless, even if funds remain and a *cy pres* distribution is necessary, the *cy pres* program is fair and reasonable, and primarily seeks to distribute only unclaimed funds. *See In re Holocaust Victim Assets Litig.*, 424 F.3d 158, 161 (2d Cir. 2005) (appropriate for a court to use *cy pres* principles to distribute unclaimed funds); *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682-83 (8th Cir. 2002) (providing for the distribution of unclaimed funds in class

action settlement); *See, e.g.*, *In re Motorsports Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394 (N.D. Ga. 2001) (approving *cy pres* distributions of settlement residue); *see also Ferrara et al. v. Snyder's-Lance, Inc.*, No. 13-62496 (S.D. Fla. June 10, 2016) (Dkt. No. 213) (granting final approval to settlement with nearly identical *cy pres* program); *Frohberg v. Cumberland Packing Corp.*, No. 14-748 (E.D.N.Y. Apr. 5, 2016) (Dkt. No. 61) (granting final approval to settlement with nearly identical *cy pres* program); *Gay et al. v. Tom's of Maine, Inc.*, No. 14-60604 (S.D. Fla. Mar. 11, 2016) (Dkt. No. 43) (granting final approval to settlement with nearly identical *cy pres* program).

Objector Hammack argues that the Residual Settlement Amount described in the Settlement Agreement, regardless of its size and likely constitution solely of distributed, but uncashed Settlement checks, should be "distributed pro rata to the class members who previously cashed the settlement checks" over as many rounds as needed to make the distribution "truly unfeasible." *See* Hammack Obj. at 4. However, redistribution is unfeasible at the outset because the number of claims is so high. For example, even assuming that as many 5% of 196,997 claimants failed to cash their Settlement checks, there would only be $223,500 for redistribution (approximately 5% of the Settlement proceeds, net of the approximately one-third Class Counsel seeks for attorneys' fees, expenses, and service awards). If you divide that amount by the 187,147 claimants who did cash a check, the additional amount per claimant would amount to approximately $1.20, even without including the cost of administration in determining these amounts and the costs of the physical checks and mailing.

In both *People v. Dirty* and in another prior consumer fraud class action, *Rapoport-Hecht et al. v. Seventh Generation, Inc.*, No. 14-9087 (S.D.N.Y.) ("*Seventh Generation*"), Objector Hammack similarly challenged the provision for *cy pres*, arguing that "only when additional

distributions to class members become less than a minimum amount, *perhaps $3*, should any funds go to a third-party beneficiary." *Seventh Generation*, No. 14-9087 (S.D.N.Y. Dec. 30, 2016), Dkt. No. 56, Objection to Proposed Class Action Settlement at 2-3 (emphasis added); *see also People Against Dirty*, No. 16-6936 (S.D.N.Y. March 27, 2017), Dkt. No. 44, Objection to Class Settlement at 2. However, after considering the structure of the settlement distribution and *cy pres* process, which mirrored in substance the process in this case, *see Seventh Generation*, No. 14-9087, Dkt. No. 48-1, Class Settlement Agreement at 23-24 (Section 4.4), District Judge Karas rejected this argument as utterly meritless. *See Seventh Generation*, No. 14-9087, Tr. of Fairness Hearing at 67:20-24 (S.D.N.Y. Jan. 26, 2017) ("She says that the residual fund should not be distributed to a cy-pres beneficiary until it's financially infeasible to distribute to class members. For all the reasons that Ms. Wolchansky went through regarding the process here, how that's all going to be handled, that objection just has no merit whatsoever.") (relevant excerpts of the hearing transcript annexed to the Garber Decl. at Exhibit 5); *see also People Against Dirty*, No. 16-6936 (S.D.N.Y. June 20, 2017), Dkt. No. 55, Order Granting Final Approval of Class Action Settlement, Certifying Class, Awarding Attorneys' Fees and Service Awards, and Final Judgment ¶ 12 (overruling Hammack's objection "on the merits in its entirety").

### B. The Rose Foundation For Communities And The Environment Is An Appropriate *Cy Pres* Recipient.

Objector Hammack argues that the proposed *cy pres* recipient, Rose Foundation for Communities and the Environment (the "Rose Foundation"), is inappropriate because it is a grant-making organization and thus, "[b]y sending it to this organization, the Court is essentially delegating its responsibility" to decide who should receive the *cy pres*. *See* Hammack Obj. at 4-5. Hammack suggests that a more appropriate organization would be "a national organization devoted to fighting against false advertising." *Id.* at 5.

10

The Rose Foundation, however, has been "appointed [by state and federal courts] as trustee over 300 restitution and cy pres funds related to consumer and environmental issues" and "entrusted with over $20 million in cy pres and restitution funds." *See* https://rosefdn.org/restitution-and-cy-pres-fund-trustee (last visited Oct. 9, 2017). Moreover, the Rose Foundation accepts any restrictions or specified allowable uses accompanying the *cy pres* distribution. *Id.* ("In accordance with charitable law, each settlement document assumes the force of a deed of gift *and specifies the allowable uses for any restitution funds*. In accepting a settlement payment, *the Foundation accepts any associated instructions that are expressed in the settlement document, and these funds are accounted for as restricted funds* as required by accounting standards promulgated by the Financial Accounting Standards Board." (emphasis added)) (last visited Oct. 9, 2017).

In *People Against Dirty*, Objector Hammack similarly argued that the proposed *cy pres* recipient was inappropriate. *See People Against Dirty*, No. 16-6936 (S.D.N.Y. March 27, 2017), Dkt. No. 44, Objection to Class Settlement at 3 ("This class action is about deceptive advertising. The cy pres beneficiaries should be devoted to eradicating deceptive advertising in consumer products. The Sierra Club, Earth Echo International, and the Conservation Alliance are organizations that have an environmental and political focus, so they are unsuitable beneficiaries for this class action."). This Court rejected her objection on its merits. *People Against Dirty*, No. 16-6936 (S.D.N.Y. June 20, 2017), Dkt. No. 55, Order Granting Final Approval of Class Action Settlement, Certifying Class, Awarding Attorneys' Fees and Service Awards, and Final Judgment ¶ 12 ("Having carefully considered Objector's Hammack's objection, the Court hereby overrules Ms. Hammack's objection on the merits in its entirety."). The Rose Foundation is

certainly a more appropriate *cy pres* recipient than the political and environmental recipients approved in other actions. The Court should likewise overrule her objection in this case.

**IV.    Objectors Have Sufficient Time To Assess**
**And Object To Class Counsel's Fee Request.**

Objector Hammack argues that this Court "must extend the deadline for objection and opt-outs to a reasonable time after the fee motion is filed," Hammack Obj. at 6, because "the fee motion must be submitted on or before October 13, 2017, which is well after the objection deadline of September 27, 2017." *Id.* at 5. However, Class Counsel need not file a motion for an award of attorneys' fees and expenses in advance of deadline for objections to the Settlement in order to satisfy the requirements of Fed. R. Civ. P. 23(h)(1). *See Cassese v. Williams*, 503 F. App'x 55, 57-58 (2d Cir. 2012).

In *Cassese*, the Second Circuit recognized "that at least one court has accepted the due process argument advanced by the objectors here," but concluded "that notice of class counsel's fee request was reasonable . . . under the circumstances and sufficient to satisfy due process" where (i) the notice provided the total settlement amount and maximum amount that class counsel would seek in attorneys' fees and expenses and (ii) class members could object to any aspect of the proposed settlement prior to the fairness hearing. *See* 503 F. App'x 55 at 57-58.

> In its ensuing fee motion, class counsel requested fees and costs in the precise amounts specified in the settlement notice and divulged additional information regarding counsel's billing rates, hours worked, and tasks performed. Any objectors then had two weeks to crystallize their objections and request further information before attending the fairness hearing. With the objectors here having availed themselves of those opportunities, we identify no abuse of discretion or due process denial in that portion of the district court's scheduling order relating to the fee motion. *See Carlson v. Xerox Corp.*, 355 F. App'x 523, 525 (2d Cir. 2009) (summary order) (concluding under similar circumstances that notice of class counsel's fee motion "was reasonably directed to class members as required by Rule 23").

12

*Cassese*, 503 F. App'x at 58.[3]

Accordingly, potential objectors to the Settlement are not prejudiced by having to file their objection prior to the filing of the Class Counsel's motion for attorneys' fees and expenses and incentive awards. As in *Cassese*, the notice here provided Class members with both the full amount of the Settlement ($6,750,000) and the maximum amount that Class Counsel would seek for attorneys' fees and expenses ($2,250,000). *See* Garber Decl., Exhibit 4, Long Form Notice at 3 & 6. Moreover, as in *Cassese*, there is a significant window of time during which objectors can "crystallize" their objections prior to the final fairness hearing. Indeed, the schedule in the Preliminary Approval Order provides that objections must be filed a month prior to the fairness hearing, that motions for final approval and for fees must be filed two weeks prior to the fairness hearing, and that reply papers, if any, could be served five days prior the fairness hearing. *See* Preliminary Approval Order ¶¶ 13 & 25. Thus, the Objectors to this Settlement will have up to nine days during which they can review Class Counsel's motion for fees, expenses, and service awards and inform this Court of any revisions or additions to their objections in response to the specifics thereof.

---

[3] *See also In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-1840, 2015 WL 5010048, at *27 (D. Kan. Aug. 21, 2015) (finding that "the general notice to class members provided sufficient information regarding attorney's fees to allow class members a fair opportunity to lodge general objections to the settlements and fee request" where fee request was filed "[t]wo months after objections were due and 11 days before the settlement fairness hearing"), *aff'd*, 868 F.3d 1122 (10th Cir. 2017); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014) (citing *Cassese* and overruling objection to final approval of class settlement under same circumstances); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 221-22 (E.D. Pa. 2014) (declining to follow *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010), which held that Rule 23(h) "requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed"; notice of fee request reasonable even though motion filed after objections due); *Gascho v. Global Fitness Holdings, LLC*, No. 11-436, 2014 WL 1350509, at *32 (S.D. Ohio Apr. 4, 2014) (class notice provided information regarding potential for attorneys' fees and opportunity to object and appear and fairness hearing).

In *Seventh Generation*, Objector Hammack was before Judge Karas under a similar schedule (requiring the filing of objections to final approval prior to the deadline for the filing of a motion for attorneys' fees, expenses, and service awards) and opted not to make this argument.

**V.      Class Counsel's Fee Request Is Reasonable.**

        **A.      The Agreed Upon Attorneys' Fees**
                  **Are Within The Parameters Of Similar Settlements.**

Both Objector Hammack and Objector Sweeney argue that that the Settlement is unreasonable because Class Counsel will seek attorneys' fees and expenses of one-third of the total settlement fund. *See* Hammack Obj. at 6; Sweeney Obj. at 3-5. However, Class Counsel's fee and expense request is reasonable and consistent with practice in the Second Circuit. *See Knapp v. Badger Techs., Inc.*, No. 12-6637, 2015 WL 3745303, at *6 (W.D.N.Y. June 15, 2015) ("In class settlement funds like this one, a one-third award of the settlement proceeds is considered typical and reasonable.") (citation omitted); *Zeltser v. Merrill Lynch & Co.*, No. 13-1531, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'"); *Beckman v. KeyBank, N.A.*, No. 12-7836, 2013 WL 1803736, at *12 (S.D.N.Y. Apr. 29, 2013) (awarding attorneys' fees equal to 33% of $4.9 million settlement fund, plus costs); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-8472, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (awarding attorneys' fees in the amount of "$2,310,000 which is 33% of the settlement fund," plus costs); *Hayes v. Harmony Gold Mining Co.*, No. 08-3653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding attorneys' fees equal to 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *In re Marsh Erisa Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (awarding attorneys' fees equal to 33.33% of $35 million settlement, plus costs); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-4270, 2009 WL 5851465, at *5

14

(S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452, 2008 WL 782596, at \*5 (S.D.N.Y. Mar. 24, 2008) (finding one-third award to be reasonable and "consistent with the norms of class litigation in this circuit").[4]

Plaintiffs' Fee Brief addressed each of the *Goldberger* factors[5] and explained why Class Counsel's attorneys' fee request is reasonable under either the percentage of the fund or the lodestar method.[6] Moreover, when expenses are deducted, the actual percentage for attorneys' fees is reduced to 31.42%, less than the one third that is typically awarded separate and apart from expenses.

Contrary to Objector Hammack's contention that "[t]hese lawsuits have become routine, and there is nothing difficult or novel about pursuing them," Hammack Obj. at 6, this Litigation was, as noted above, hard fought by both Parties, lasting several years and requiring multiple rounds of briefing on a variety of issues, including a complex *Daubert* motion and a successful motion for class certification. *See, e.g.*, Dkt. Nos. 80-85 & 98 (the *Daubert* motion) and Dkt. Nos. 69-79, 98 (the class certification motion). Moreover, as outlined more fully in Plaintiffs'

---

[4] Objector Sweeney's reliance on *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573 (S.D.N.Y. Jan. 15, 2015), is misplaced. In *Ortiz*, a wage-and-hour class and collective action, unlike here, the court reduced the requested percentage based, *inter alia*, on its finding that the action was "simple and straightforward." *Id.* at 591

[5] Plaintiffs respectfully refer the Court to Plaintiffs' Fee Brief for their analysis of the *Goldberger* factors in and for the sake of judicial economy do not repeat that analysis here.

[6] District courts in the Second Circuit are permitted to award attorney's fees to prevailing class counsel using either a "percentage of the fund" or a "lodestar" method to compute fees in common fund cases. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

Fee Brief, the lodestar multiplier in this action is 1.15, confirming the reasonableness of the fee requested. *See* Plaintiffs' Fee Brief at 14-17.

In *Seventh Generation, Inc.*, Objector Hammack similarly argued that class counsel's attorneys' fees should be capped at 25%, rather than 33%. *See Seventh Generation*, No. 14-9087 (S.D.N.Y. Dec. 30, 2016), Dkt. No. 56, Objection to Proposed Class Action Settlement at 2. Judge Karas disagreed, however, finding that the class counsel's requested fee of one-third the settlement fund to be reasonable and appropriate. *Seventh Generation*, No. 14-9087 (S.D.N.Y. Jan. 26, 2017), Tr. of Fairness Hearing at 67:20-24 ("The requested fee in relation to the settlement, as I said, it's one-third. We talked about the multiplier. All that is within the range of what's entirely appropriate. So, the bottom line is, the Court finds that the fee -- the attorney's fees here are reasonable and appropriate."). This Court should likewise overrule her objection in this case.

**B.      The Second Circuit Bases Awards Of Attorneys' Fees On The Entire Fund.**

Objector Hammack argues that "[t]he money spent on notice or the claims administrator should not be included" in the amount on which Class Counsel's one-third fee request will be based. *See* Hammack Obj. at 6. However, the law in the Second Circuit is clear that an award of attorneys' fees is based on the entire settlement amount, not simply the amount recovered by the class. Ms. Hammack's suggested method for calculating the value of the Settlement by only counting the amount distributed to Class members has been held to be reversible error by the Second Circuit. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) ("In this case, the District Court calculated the percentage of the Fund on the basis of the

claims made against the Fund, rather than on the entire Fund created by the efforts of counsel. We hold that this was error.").[7]

In both *Seventh Generation* and in *People Against Dirty*, Objector Hammack raised this exact argument, using the exact same language. *See Seventh Generation*, No. 14-9087 (S.D.N.Y. Dec. 30, 2016), Dkt. No. 56, Objection to Proposed Class Action Settlement at 3  ("[Class counsel] should not get attorney's fees for [the] amount that is paid to the settlement administrator."); *People Against Dirty*, No. 16-6936 (S.D.N.Y. March 27, 2017), Dkt. No. 44, Objection to Class Settlement at 4 ("They should not get attorney's fees for [the] amount that is paid to the settlement administrator.")

Judge Karas, in *Seventh Generation*, overruled Ms. Hammack's objection on this exact point, stating that Ms. Hammack's argument was "just wrong" (citing *Masters*) and finding that one-third of the total common fund was a reasonable and appropriate attorney fee award. *See Seventh Generation*, No. 14-9087 (S.D.N.Y. Jan. 26, 2017), Tr. of Fairness Hearing at 67:20-24 ("And then there is a complaint about the attorney's fee being too high, because the attorney's [sic] shouldn't be compensated for the amounts that are to be paid to the settlement administrator or for money paid to *cy-pres* beneficiaries. That's just wrong according to the Second Circuit. *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423, at 437.").

---

[7] The Eight and Ninth Circuits agree. *See In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017) (citing *Staton v. Boeing Co.* and holding that, since the objector "[made] no showing that the administrative costs were unjustifiable, the district court did not abuse its discretion by including them as part of the benefit."); *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) (leaving inclusion of administrative costs to the district courts' discretion, reasoning that "where the defendant pays the justifiable cost of notice to the class[,] . . . it is reasonable (although certainly not required) to include that cost in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees.").

**VI.   Class Members' Right To Object Was Not Burdened.**

Objector Hammack argues that the Settlement "[has] artificially burdened the right of objection." Hammack Obj. at 6. First, Objector Hammack complains that "an objector who has retained counsel must still sign the objection personally." Hammack Obj. at 8. However, being required to sign a court document filed on your behalf hardly qualifies as burdensome, and a district court can, as this Court has in this case, require that objectors to a preliminarily approved class settlement personally sign their objections. *See, e.g.*, *People Against Dirty*, No. 16-6936 (S.D.N.Y. Jan. 9, 2017), Dkt. No. 39, Order Preliminarily Approving Class Action Settlement, Certifying Settlement Class, Approving Notice Plan, and Scheduling Date for Final Fairness Hearing at 9 (requiring that an objection must be "signed by the Settlement Class Member"). Indeed, in *People Against Dirty*, this Court rejected Ms. Hammack's objections based on, among other things, her failure to sign the objection pursuant to the preliminary approval order.

> THE COURT: Let's address Ms. Hammack's contentions. First of all, I don't believe that it's signed, the objections.
>
> MR. GONNELLI: That's true, your Honor.
>
> THE COURT: And it looks like it was a cut-and-paste from some other application that she may have had in another case.
>
> MR. GONNELLI: I believe so, your Honor.
>
> THE COURT: So her objections are irrelevant. So I'm not even going to consider them. So you don't have to keep referencing her objections.

*People Against Dirty*, No. 16-6936 (S.D.N.Y. May 12, 2017), Tr. of Fairness Hearing at 17:25-18:9 (copy annexed as Exhibit 6 to the Garber Decl.); *see also People Against Dirty*, No. 16-6936 (S.D.N.Y. June. 20, 2017), Dkt. No. 55, Order Granting Final Approval of Class Action Settlement, Certifying Class, Awarding Attorneys' Fees and Service Awards, and Final Judgment ¶ 13 ("As a preliminary matter, Ms. Hammack failed to comply with the Court's Order

Granting Preliminary Approval by failing to sign her objection."). Here, the burden cannot have been so great, given that Ms. Hammack successfully managed, at least in this case, to sign her objection, even though she is represented by counsel. *See* Hammack Obj. at 8-9.

Second, Objector Hammack complains that this Court's requirement that an objector list "the name and case number of all objections to class action settlements made by you and/or your counsel in the past five (5) years." *See* Hammack Obj. at 7. However, listing cases in which one has appeared as an objector is not a burden; any potential objector presumably possesses this information. Accordingly, a district court can, as this Court has in this case, require that objectors to a preliminarily approved class settlement list other objections they have submitted in other actions. *See, e.g.*, *People Against Dirty*, No. 16-6936 (S.D.N.Y. Jan. 9, 2017), Dkt. No. 39, Order Preliminarily Approving Class Action Settlement, Certifying Settlement Class, Approving Notice Plan, and Scheduling Date for Final Fairness Hearing at 9 (requiring that an objection must "include a detailed list of any other objections submitted by the Settlement Class member, or his or her counsel, to any class action submitted in any court, whether state or otherwise, in the United States in the previous five (5) years"). Moreover, Ms. Hammack's claim that "[i]n literally no other type of case does an attorney have to report its past work as a requirement to participate in the legal process," Hammack Obj. at 7, is without merit. Attorneys who would seek to be appointed lead counsel for a class routinely submit resumes detailing past litigations and experience, as was done so in this case at the class certification and preliminary approval stage. *See, e.g.*, Dkt. Nos. 30 & 31 (declarations of Todd S. Garber and Kim E. Richman in support of motion for appointment of interim lead plaintiff and co-lead class counsel, listing prior class action cases litigated by their respective firms); Dkt. Nos. 110-8 & 111-1 (firm resumes of co-

lead class counsel submitted in support of preliminary approval of class settlement and listing

prior class action cases litigated by their respective firms).

Altogether, Objector's Hammack's strenuous objection to these "burdens" reflects

nothing more than her fear that the answers will cause the Court to recognize her objection for

what it is, an attempt to extort a payoff from the Parties.

## VII.   The Objectors Are Serial Professional Objectors
         Whose Objections Should Be Given Less Weight.

Unfortunately, the purpose behind these objections is not the improvement of the

Settlement or the best interests of the Class. Rather, the Objectors only seek to gain standing to

appeal if and when the objection is overruled, and then, by delaying payments to the Settlement

Class and Class Counsel for the pendency of an appeal, extract a payment from Class Counsel.[8]

Serial objectors generally interpose objections that they hope would be of interest to an appellate

court, and do so in a veiled attempt to maximize the chance of extracting a payment from the

parties in order to drop (or to persuade their client to drop) their objection. *See, e.g.*, *Torres v.*

*Bank of Am. (In re Checking Account Overdraft Litig.)*, 830 F.Supp.2d 1330, 1361, n.30 (S.D.

Fla. 2011) ("[P]rofessional objectors can levy what is effectively a tax on class action

settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is

---

[8] *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 728 F.2d 289, 295 (S.D.N.Y. 2010)
(serial/professional objectors "undermine the administration of justice by disrupting settlement in
the hopes of extorting a greater share of the settlement for themselves and their clients."); *City of*
*Providence v. Aeropostale, Inc.*, No. 11-7132, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014)
(to same effect); *Barnes v. FleetBoston Fin. Corp.*, No. 01–10395, 2006 WL 6916834, at *1 (D.
Mass. Aug. 22, 2006) (goal of many objectors is to file "frivolous appeals and thereby slowing
down the execution of settlements."); *Torres v. Bank of Am. (In re Checking Account)*, 830 F.
Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) ("[M]ost if not all . . . are motivated by things other
than a concern for the welfare of the Settlement Class.").

gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing.").[9]

Here, both Objectors are serial objectors who have sought awards of fees based on their purported attempts to improve class action settlements. Objector Hammack has filed objections to final approval in at least five cases.[10] Moreover, this Court, in *People Against Dirty*, noted that Objector Hammack simply "cut and paste[d]" her objections. *See* No. 16-6936 (S.D.N.Y. May 12, 2017), Tr. of Fairness Hearing at 18:3-5. So lacking in merit were her objections in *Lerma v. Schiff Nutrition International, Inc.*, No. 11-1056 (S.D. Cal.), that the Court imposed a bond on Ms. Hammack's appeal and denied her motion for attorneys' fees. *See* No. 11-1056 (S.D. Cal. Feb. 29, 2016), Dkt. No. 183, Order Granting in Part Plaintiff's Motion for Posting of an Appeal Bond by Objector Ashley Hammack at 6-8  (finding that "a consideration of the merits of Objector's appeal . . . favors the imposition of a bond" and imposing an appeal bond of $2,500.00); No. 11-1056 (S.D. Cal. Mar. 1, 2016), Dkt. No. 183, Order Denying Objector Hammack's Motion for Attorney's Fees and Costs at 6-7 ("It takes more than a little bit of hubris to challenge the fairness of a settlement, on the one hand, and seek fees for having helped bring about the allegedly unfair result.").

---

[9] Should either of the Objectors attempt to take an appeal from an order of this Court granting final approval to the Settlement or an award of attorneys' fees, Plaintiffs will seek appeal bonds to protect against the cost of delay, and other expenses associated with what are sure to be frivolous appeals.

[10] *People Against Dirty*, No. 16-6936 (S.D.N.Y. Mar. 27, 2017), Dkt. No. 44; *Seventh Generation*, No. 14-9087 (S.D.N.Y. Dec. 30, 2016), Dkt. No. 56; *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, No. 15-5876 (N.D. Ill. Dec. 5, 2016), Dkt. No. 83; *Lerma v. Schiff Nutrition International, Inc.*, No. 11-1056 (S.D. Cal. Sept. 24, 2015), Dkt. Nos. 157 & 158; *Diana Miloro v. Van's International Foods, Inc.*, No. 15-PH-CV00642 (Cir. Ct. Phelps Cnty., Mo.).

Objector Sweeney has filed objections to final approval in at least seven cases. *See* https://www.serialobjector.com/persons/154 (listing seven actions in which Pamela Sweeney has filed an objection) (last visited Oct. 11, 2017).[11] Moreover, Ms. Sweeney's objection in this case indicates that she, like Objector Hammack, simply cuts and pastes her objections from other actions, having apparently copied the substance of her objection from an objection to class counsel fees in a Telephone Consumer Protection Act case. *See* Sweeney Obj. at 3 (claiming that the percentage of the settlement fund sought as attorneys' fees "is well beyond the typical fee granted in the 2nd Circuit *and in similar TCPA cases*" (emphasis added)).

Accordingly, Class Counsel believe both Objector Hammack and Objector Sweeney to be serial professional objectors, and, as such, the Court should afford less weight to their objections. *See, e.g.*, *In re Law Office of Jonathan E. Fortman, LLC*, No. 13-42, 2013 WL 414476, at *5 (E.D. Mo. Feb. 1, 2013) ("when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first"); *Dennis v. Kellogg Co.*, No. 09-1786, 2013 WL 6055326, at *4 n.2 (S.D. Cal. Nov. 14, 2013) (citing *In re Law Office of Jonathan E. Fortman, LLC*).

---

[11] *Kumar v. Salov North America*, No. 14-2411 (N.D. Ca. May 1, 2017), Dkt. No. 155; *Edwards v. National Milk Producers Federation*, No. 11-4766 (N.D. Ca. Nov. 1, 2016), Dkt. No. 449; *Mehigan et al. v. Ascena Retail Group, Inc. et al.*, No. 15-724 (E.D. Pa. Apr. 15, 2016), Dkt. No. 116; *Kolinek v. Walgreen Co.*, No. 13-4806 (N.D. Ill. Jul. 16, 2015), Dkt. No. 115; *In re Capital One Telephone Consumer Protection Act Litig.*, No. 12-10064 (N.D. Ill. Feb. 4, 2015), Dkt. No. 327; *Larsen et al v. Trader Joe's Company*, No. 11-5188 (N.D. Cal. Jun. 6, 2014), Dkt. No. 99; *In re Checking Account Overdraft Litig.*, No. 09-2036 (S.D. Fla. Nov. 13, 2013), Dkt. No. 3698.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court overrule the

objections of Ashley Hammack and Pamela Sweeney, finally approve the Settlement Agreement,

certify the Class, and approve Class Counsel's request for an award of attorneys' fees, costs, and

incentive awards.

Dated: White Plains, New York
       October 13, 2017

Respectfully submitted,

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/Todd S. Garber*
Todd S. Garber
D. Greg Blankinship
Jeremiah Frei-Pearson
Antonino B. Roman
455 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
gblankinship@fbfglaw.com
tgarber@fbfglaw.com
jfrei-pearson@fbfglaw.com
aroman@fbfglaw.com

Kim E. Richman
**RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
krichman@richmanlawgroup.com

*Attorneys for Plaintiffs and the Class*